1

2                                                                Honorable Robert J. Bryan

3

4

5

6

7                          UNITED STATES DISTRICT COURT
                           WESTERN DISTRICT OF WASHINGTON
8                                   AT TACOMA

9
BRIAN TINGLEY,
10                                          CASE NO.
                        Plaintiff,          3:21-cv-05359-RJB
11
       v.                                   **[PROPOSED] MOTION TO
12                                          DISMISS OF DEFENDANT-
ROBERT W. FERGUSON et al.,                  INTERVENOR EQUAL RIGHTS
13                                          WASHINGTON AND OPPOSITION
                        Defendants.         TO PLANTIFF'S MOTION FOR
14                                          PRELIMINARY INJUNCTION**

15                                          Noted for:  August 20, 2021, 1:30 pm

16

17

18

19

20

21

22

23

24

25

Skellenger Bender, P.S.
1301 Fifth Ave., Suite 3401 |
Seattle, WA 98101
Phone 206.623.6501
Fax 206.447.1973

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................1

FACTUAL BACKGROUND ...................................................................3

    A. Conversion Therapy Puts Minors At Risk Of Serious Harms. .................3

    B. Senate Bill Number 5722. ..........................................................6

ARGUMENT .......................................................................................7

    I. Pickup Requires Dismissal of Plaintiff's Free Speech Claims ...................8

    II. Nothing In NIFLA Alters Pickup's Status As Controlling Precedent In
       This Case ...................................................................................12

    III. Ninth Circuit Precedent Also Requires Dismissal Of Plaintiff's Due
        Process Claim .............................................................................13

    IV. Controlling Precedent Also Requires Dismissal Of Plaintiff's Free
        Exercise Claim ...........................................................................16

    V. SB 5722 Survives Any Level Of Review ........................................18

        A. Washington has a compelling interest in protecting children
            from harm...........................................................................19

        B. SB 5722 is narrowly tailored to advance the state's compelling
            interest..............................................................................20

    VI. Plaintiff Cannot Satisfy The Remaining Requirements For A
        Preliminary Injunction ...................................................................22

CONCLUSION ...................................................................................22

Skellenger Bender, P.S.
1301 Fifth Ave., Suite 3401 |
Seattle, WA 98101
Phone 206.623.6501
Fax 206.447.1973

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alliance for the Wild Rockies v. Cottrell*,
632 F. 3d 1127 (9th Cir. 2011) ........................................................................8

*Bostock v. Clayton County, Ga.*,
140 S. Ct. 1731 (2020) ...................................................................................15

*Brown v. Entertainment Merchants Ass'n*,
564 U.S. 786 (2011) ........................................................................................18

*Disability Rts. Montana, Inc. v. Batista*,
930 F.3d 1090 (9th Cir. 2019) .........................................................................8

*Doyle v. Hogan*,
411 F. Supp. 3d 337 (D. Md. 2019), *rev'd on other grounds,* No. 19-
2064, 2021 WL 2424800 (4th Cir. Jun. 15, 2021) ....................................2, 8

*Edmo v. Corizon, Inc.*,
935 F.3d 757 (9th Cir. 2019) .........................................................................15

*Emp't Div. v. Smith*,
494 U.S. 872 (1990)...................................................................................16, 17

*FCC v. Fox Television Stations*,
556 U.S. 502 (2009)........................................................................................19

*Fulton v. City of Philadelphia*,
No. 19-123, 2021 WL 2459253 (U.S. June 17, 2021) .................................18

*Giboney v. Empire Storage & Ice Co.*,
336 U.S. 490 (1949)........................................................................................10

*Goldfarb v. Va. State Bar*,
421 U.S. 773 (1975).........................................................................................19

*Hyman v. City of Louisville*,
132 F. Supp. 2d 528 (W.D. Ky 2001), vacated on other grounds, 53
Fed. Appx. 740 (6th Cir. 2002) (unpublished).............................................16

EQUAL RIGHTS WASHINGTON'S [PROPOSED] MOTION TO
DISMISS AND OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION
ii

Skellenger Bender, P.S.
1301 Fifth Ave., Suite 3401 |
Seattle, WA 98101
Phone 206.623.6501
Fax 206.447.1973

*Karnoski v. Trump*,
   926 F.3d 1180 ...................................................................................................15

*King v. Governor of New Jersey*,
   767 F.3d 216 (3d Cir. 2014)..................................................................................*passim*

*Kwan v. SanMedica Int'l*,
   854 F.3d 1088 (9th Cir. 2017) ................................................................................8

*N.Y. v. Ferber*,
   458 U.S. 747 (1982).................................................................................................19

*National Association for the Advancement of Psychoanalysis v. California
   Board of Psychology*,
   228 F.3d 1043 (9th Cir. 2000) .................................................................................9

*National Institute of Family and Life Advocates v. Becerra*,
   138 S. Ct. 2361 (2018)................................................................................3, 12, 13

*Obergefell v. Hodges*,
   576 U.S. 644 (2015)....................................................................................................1

*Otto v. City of Boca Raton*,
   353 F.Supp.3d 1237 (S.D. Fla. 2019), *rev'd,* 981 F.3d 854 (11th Cir.
   2020) .....................................................................................................3, 19, 20, 21

*Parents for Privacy v. Barr*,
   949 F.3d 1210 (9th Cir. 2020) ...............................................................................18

*Pickup v. Brown*,
   740 F.3d 1208 (9th Cir. 2014) ......................................................................*passim*

*Planned Parenthood of Se. Pa. v. Casey*,
   505 U.S. 833 (1992)................................................................................................12

*Reynolds v. Talberg*,
   WL 6375396, *9 (W.D. Mich.2020).......................................................................16

*Sheppard v. David Evans & Assoc.*,
   694 F.3d 1045 (9th Cir. 2012) .................................................................................8

*Smith v. Spisak*,
   558 U.S. 139 (2010).................................................................................................15

EQUAL RIGHTS WASHINGTON'S [PROPOSED] MOTION TO
DISMISS AND OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION
iii

Skellenger Bender, P.S.
1301 Fifth Ave., Suite 3401 |
Seattle, WA 98101
Phone 206.623.6501
Fax 206.447.1973

*U.S. v. Rutherford*,
   442 US 542 (1979).................................................................................................1

*United States v. Weitzenhoff*,
   35 F.3d 1275 (9th Cir. 1993) .............................................................................14

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
   455 U.S. 489 (1982)............................................................................................13

*Welch v. Brown*,
   834 F.3d 1041 (9th Cir. 2016) .................................................................2, 17, 18

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008)..................................................................................................8

**Statutes**

18 U.S.C. § 249 (c)(4)......................................................................................15

34 U.S.C. § 10441 (b)(19) ...............................................................................15

34 U.S.C. § 12291 (a)(39) ...............................................................................15

34 U.S.C. § 30503 (a)(1)(C) ............................................................................15

34 U.S.C. § 41305 (b)(1) .................................................................................15

42 U.S.C. § 2000e............................................................................................15

50 U.S.C. § 3334b (f)(3)...................................................................................15

Wash. Rev. Code § 9A.08.040.........................................................................14

Wash. Rev. Code § 9A.16.025.........................................................................14

Wash. Rev. Code § 9A.36.078.........................................................................14

Wash. Rev. Code § 9A.36.080.........................................................................14

Wash. Rev. Code § 18.130.010..........................................................................7

Wash. Rev. Code § 18.130.020...............................................................1, 7, 14

Wash. Rev. Code § 18.130.180(27)................................................................1, 7

Wash. Rev. Code § 28A.405.170......................................................................14

Skellenger Bender, P.S.
1301 Fifth Ave., Suite 3401 |
Seattle, WA 98101
Phone 206.623.6501
Fax 206.447.1973

Wash. Rev. Code § 28A.642.010 ................................................................14

Wash. Rev. Code § 28A.642.080 ................................................................14

Wash. Rev. Code § 28B.15.012 .................................................................14

Wash. Rev. Code § 28B.112.050 ................................................................14

Wash. Rev. Code § 36.28A.030 .................................................................14

Wash. Rev. Code § 48.43.072 ..............................................................14, 15

Wash. Rev. Code § 49.60.040 .................................................................15

Wash. Rev. Code § 50A.05.100 ................................................................15

Wash. Rev. Code § 74.09.875 .................................................................15

2018 Wash. Sess. Laws ch. 300, § 1 ......................................................6, 19

2018 Wash. Sess. Laws ch. 300, § 2 ........................................................7

**Other Authorities**

Am. Psychological Ass'n, *Report of the American Psychological Association Task Force on Appropriate Therapeutic Responses to Sexual Orientation* (Aug. 5, 2009), available at https://perma.cc/KX75-3KW4 ...................................................................*passim*

Amy E. Green et al., *Self-Reported Conversion Efforts and Suicidality Among US LGBTQ Youths and Young Adults, 2018,* 110 Am. J. Pub. Health 1221 (2020). ..................................................................5

APA Resolution on Gender Identity Change Efforts at 1-2 (Feb. 2021), available at https://www.apa.org/about/policy/resolution-gender-identity-change-efforts.pdf..............................................................1

Caitlin Ryan et al, *Parent-Initiated Sexual Orientation Change Efforts with LGB Adolescents: Implications for Young Adult Mental Health and Adjustment*, 67 J. Homosexuality 159 (2020), available at https://doi.org/10.1080/00918369.2018.1538407 .......................................5

*Health Impact Review of SB 5722* (Nov. 17, 2017), available at https://sboh.wa.gov/Portals/7/Doc/HealthImpactReviews/HIR-2017-18-SB5722.pdf ................................................................6, 19

Skellenger Bender, P.S.
1301 Fifth Ave., Suite 3401 |
Seattle, WA 98101
Phone 206.623.6501
Fax 206.447.1973

Jack L. Turban et al., *Association Between Recalled Exposure to Gender Identity Conversion Efforts and Psychological Distress and Suicide Attempts Among Transgender Adults*, JAMA Psychiatry (Sept. 11, 2019), available at https://doi.org/10.1001/jamapsychiatry.2019.2285.........................6

Substance Abuse and Mental Health Serv. Admin., U.S. Dep't of Health and Human Serv., *Ending Conversion Therapy: Supporting and Affirming LGBTQ Youth* (Oct. 2015), at 26, available at https://perma.cc/KAC4-BHXD..................................................................1, 4

Skellenger Bender, P.S.
1301 Fifth Ave., Suite 3401 |
Seattle, WA 98101
Phone 206.623.6501
Fax 206.447.1973

**INTRODUCTION**

Senate Bill 5722, codified at Wash. Rev. Code §§ 18.130.020(4) and 18.130.180(27) ("SB 5722"), is based on the strong medical consensus that treatments that seek to change a minor's sexual orientation or gender identity are unnecessary, dangerous, and provide no therapeutic benefit. Conversion therapy unnecessarily seeks to "treat" a condition—being lesbian, gay, bisexual, or transgender—that is not a mental illness or disorder. For decades, "psychiatrists and others [have] recognized that sexual orientation is both a normal expression of human sexuality and immutable." *Obergefell v. Hodges*, 576 U.S. 644, 661 (2015). Similarly, medical science recognizes that being transgender "is not a mental disorder" and that "diversity in gender identity and expression is part of the human experience." Am. Psycholgical Ass'n, *APA Resolution on Gender Identity Change Effort*s at 1-2 (Feb. 2021), available at https://www.apa.org/about/policy/resolution-gender-identity-change-efforts.pdf.

A treatment "is unsafe if its potential for inflicting death or physical injury is not offset by the possibility of therapeutic benefit." *U.S. v. Rutherford*, 442 US 542, 556 (1979). That principle informs the medical consensus that conversion therapy should play no role in the treatment of minors. As the federal government has explained, "[n]o research has been published in the peer-reviewed literature that demonstrates the efficacy of conversion therapy efforts with gender minority youth, nor any benefits of such interventions to children and their families." Substance Abuse and Mental Health Serv. Admin., U.S. Dep't of Health and Human Serv., *Ending Conversion Therapy: Supporting and Affirming LGBTQ Youth* (Oct. 2015), at 26, available at https://perma.cc/KAC4-BHXD (hereinafter, "SAMHSA Report").

At the same time, as described more fully below, substantial research has demonstrated that conversion therapy puts minors at risk of serious—even life-

EQUAL RIGHTS WASHINGTON'S [PROPOSED] MOTION TO DISMISS AND OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION
1

Skellenger Bender, P.S.
1301 Fifth Ave., Suite 3401 |
Seattle, WA 98101
Phone 206.623.6501
Fax 206.447.1973

threatening—harm. If any other treatment were known to put children at such high risk, its use by state-licensed providers would be prevented, as the Washington Legislature has properly done here.

In the absence of legislative action, minors have no adequate protection against these dangerous practices. Every leading medical and mental health organization in the country has issued policy statements warning against the use of conversion therapy on minors. Importantly, however, those organizations have no way to prevent providers from engaging in these practices, because the regulation of licensed mental health providers rests with the states, not with professional organizations.

For these compelling reasons, the District of Columbia and twenty states, including Washington, have enacted laws protecting minors from conversion therapy. With minor variations, these laws are virtually identical to the first such law enacted by California in 2012. In almost every case, including Washington's law, these laws were enacted with bipartisan support; they have been signed into law by both Democratic and Republican governors.

As virtually every other court to consider a challenge to a law protecting minors from conversion therapy by licensed therapists has done, this Court should conclude that SB 5722 falls squarely within the well-established authority of state legislatures to regulate the practice of medicine and to protect minors from serious harms. *See Pickup v. Brown*, 740 F.3d 1208 (9th Cir. 2014); *Welch v. Brown,* 834 F.3d 1041 (9th Cir. 2016), *King v. Governor of New Jersey,* 767 F.3d 216 (3d Cir. 2014); *Doyle v. Hogan*, 411 F. Supp. 3d 337 (D. Md. 2019), *rev'd on other grounds,* No. 19-2064, 2021 WL 2424800

EQUAL RIGHTS WASHINGTON'S [PROPOSED] MOTION TO DISMISS AND OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION
2

Skellenger Bender, P.S.
1301 Fifth Ave., Suite 3401 |
Seattle, WA 98101
Phone 206.623.6501
Fax 206.447.1973

(4th Cir. Jun. 15, 2021); *Otto v. City of Boca Raton*, 353 F.Supp.3d 1237 (S.D. Fla. 2019), *rev'd*, 981 F.3d 854 (11th Cir. 2020) (petition for rehearing en banc pending).[1]

In *Pickup* and *Welch*, the Ninth Circuit rejected the same First Amendment claims relied on by the Plaintiff in this case and upheld a California law that is virtually identical to SB 5722. Nothing in the Supreme Court's recent decision in *National Institute of Family and Life Advocates v. Becerra,* 138 S. Ct. 2361 (2018) (*"NIFLA"*), alters the controlling status of those decisions in this case. Because the Ninth Circuit has already rejected the arguments that Plaintiff raises here, Plaintiff has failed to state a valid claim or to show that a preliminary injunction is warranted.

## FACTUAL BACKGROUND

### A.  Conversion Therapy Puts Minors At Risk Of Serious Harms.

The harms associated with conversion therapy are well documented. In 2009, the American Psychological Association reviewed the scientific literature and concluded that "sexual orientation change efforts" (SOCE) are unnecessary, ineffective, and put minors at risk of serious harm. *See* Am. Psychological Ass'n, *Report of the American Psychological Association Task Force on Appropriate Therapeutic Responses to Sexual Orientation* (Aug. 5, 2009), available at https://perma.cc/KX75-3KW4 (hereinafter, "APA Report"). The APA concluded:

- **SOCE is unnecessary:** "Same-sex sexual attractions, behavior, and orientations per se are normal and positive variants of human sexuality—in other words, they are not indicators of mental or developmental disorders." APA Report at 63.

- **SOCE for minors is ineffective:** "We found no empirical evidence that providing any type of therapy in childhood can alter adult same-sex sexual orientation." APA Report at 79.

---

[1] To date, the only federal appellate court to reach a contrary result is the Eleventh Circuit in *Otto*. The Eleventh Circuit has stayed its mandate in that case pending its decision on a petition for rehearing en banc.

EQUAL RIGHTS WASHINGTON'S [PROPOSED] MOTION TO DISMISS AND OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION
3

Skellenger Bender, P.S.
1301 Fifth Ave., Suite 3401 |
Seattle, WA 98101
Phone 206.623.6501
Fax 206.447.1973

- **SOCE is harmful for minors:** "[S]cientific evidence shows that SOCE is not likely to produce its intended outcomes and can produce harm for some of its participants." APA Report at 83.

- **The harms caused by SOCE are not limited to aversive techniques:** With respect to recent studies focused on non-aversive forms of SOCE, "the reported negative social and emotional consequences include self-reports of anger, anxiety, confusion, depression, grief, guilt, hopelessness, deteriorated relationships with family, loss of social support, loss of faith, poor self-image, social isolation, intimacy difficulties, intrusive imagery, suicidal ideation, self-hatred, and sexual dysfunction." APA Report at 42.

- **Licensed mental health providers should not engage in sexual orientation change efforts with minors under any circumstances,  including with "children and adolescents who present a desire to change their sexual orientation"**: "We recommend that LMHP provide multiculturally competent and client-centered therapies to children, adolescents, and their families *rather than SOCE*. . . .  These approaches would support children and youth in identity exploration and development *without seeking predetermined outcomes*." APA Report at 79-80 (emphasis added).

- **SOCE offers no unique benefits.** "The positive experiences [some] clients report in SOCE are not unique, and "the benefits reported by participants in SOCE may be achieved through treatment approaches that do not attempt to change sexual orientation." APA Report at 68; *see also id*. at 53 (same).

- **SOCE cannot be justified by invoking client autonomy or self-determination.** "[S]mply providing SOCE to clients who request it does not necessarily increase self-determination but rather abdicates the responsibility of LMHP [licensed mental health professionals] to provide competent assessment and interventions that have the potential for benefit with a limited risk of harm." APA Report at 70.

In 2015, the Substance Abuse and Mental Health Services Administration of the U.S. Department of Health and Human Services conducted an updated review of the scientific literature. *See* SAMHSA Report at 1. The report found "none of the existing research supports the premise that mental or behavioral health interventions can alter gender identity or sexual orientation." *Id.* It concluded: "Interventions aimed at a fixed outcome, such as gender conformity or heterosexual orientation, including those aimed at changing gender identity, gender expression, and sexual orientation are coercive, can be harmful, and should not be part of behavioral health treatment." *Id.*

EQUAL RIGHTS WASHINGTON'S [PROPOSED] MOTION TO
DISMISS AND OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION
4

Skellenger Bender, P.S.
1301 Fifth Ave., Suite 3401 |
Seattle, WA 98101
Phone 206.623.6501
Fax 206.447.1973

Other medical and mental health organizations that have reached similar conclusions include: the American Medical Association, the American Psychiatric Association, the American Academy of Child and Adolescent Psychiatry, the American Academy of Pediatrics, the American College of Physicians, the National Association of Social Workers, the American Association for Marriage and Family Therapy, the American Psychoanalytic Association, the American Counseling Association, and the American School Counselor Association. *See* State of Washington Defendants' Motion to Dismiss and Opposition to Plaintiff's Motion for Preliminary Injunction, Appendix A.

Since Washington's law was enacted, additional research has corroborated that efforts by therapists to change a child's sexual orientation or gender identity result in greatly increased rates of suicidality, as well as other serious harms. A 2018 study found that more than 60 percent of young adults who had been subjected to conversion therapy as minors reported attempting suicide.  See Caitlin Ryan et al, *Parent-Initiated Sexual Orientation Change Efforts with LGB Adolescents: Implications for Young Adult Mental Health and Adjustment*, 67 J. Homosexuality 159 (2020), available at https://doi.org/10.1080/00918369.2018.1538407.

A 2020 study found that youth who underwent conversion therapy were "more than twice as likely to report having attempted suicide" and more than 2.5 times as likely to report multiple suicide attempts in the past year compared to those who did not. Amy E. Green et al., *Self-Reported Conversion Efforts and Suicidality Among US LGBTQ Youths and Young Adults, 2018*, 110 Am. J. Pub. Health 1221, 1224 (2020).

A 2019 study documented an even higher risk of suicidality for transgender youth exposed to conversion therapy. Based on a cross-section of 27,715 transgender adults, the study found that "recalled exposure to gender identity conversion efforts was significantly associated with increased odds of severe psychological distress during the previous month

EQUAL RIGHTS WASHINGTON'S [PROPOSED] MOTION TO DISMISS AND OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION
5

Skellenger Bender, P.S.
1301 Fifth Ave., Suite 3401 |
Seattle, WA 98101
Phone 206.623.6501
Fax 206.447.1973

and lifetime suicide attempts compared with transgender adults who had discussed gender identity with a professional but who were not exposed to conversion efforts." Jack L. Turban et al., *Association Between Recalled Exposure to Gender Identity Conversion Efforts and Psychological Distress and Suicide Attempts Among Transgender Adults*, JAMA Psychiatry (Sept. 11, 2019), available at https://doi.org/10.1001/jamapsychiatry.2019.2285. Transgender adults reporting gender identity conversion efforts before the age of 10 were four times more likely to experience suicide attempts than other transgender individuals. *See id.*

**B. Senate Bill Number 5722.**

When the Washington Legislature enacted SB 5722, it found and declared that "Washington has a compelling interest in protecting the physical and psychological well-being of minors, including lesbian, gay, bisexual, and transgender youth, and in protecting its minors against exposure to serious harms caused by conversion therapy." 2018 Wash. Sess. Laws ch. 300, § 1.

A health impact report was prepared in connection with the introduction of SB 5722. *See Health Impact Review of SB 5722* (Nov. 17, 2017), available at https://sboh.wa.gov/Portals/7/Doc/HealthImpactReviews/HIR-2017-18-SB5722.pdf.   The report concluded that "SB 5722 has potential to mitigate harms and improve health outcomes among lesbian, gay, bisexual, transgender, queer, and questioning (LGBTQ) individuals, a population that is disproportionally impacted by poor health outcomes." *Id.* at 2. The report further found that "the literature indicates that large proportions of surveyed individuals who have been a part of conversion therapy report adverse health effects associated with these efforts." *Id.* at 3.

SB 5722 amended Washington's Uniform Disciplinary Act, Wash. Rev. Code §§ 18.130.010 et seq., which the Legislature established as "a uniform disciplinary act

EQUAL RIGHTS WASHINGTON'S [PROPOSED] MOTION TO
DISMISS AND OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION
6

Skellenger Bender, P.S.
1301 Fifth Ave., Suite 3401 |
Seattle, WA 98101
Phone 206.623.6501
Fax 206.447.1973

with standardized procedures for the licensure of health care professionals and the enforcement of laws the purpose of which is to assure the public of the adequacy of professional competence and conduct in the healing arts." Wash. Rev. Code § 18.130.010. SB 5722 added "performing conversion therapy on a patient under age eighteen" to the list of acts constituting unprofessional conduct for any license holder subject to the Uniform Disciplinary Act. *Id.* § 18.130.180(27).

The statute defines "conversion therapy" as "a regime that seeks to change an individual's sexual orientation or gender identity. The term includes efforts to change behaviors or gender expressions, or to eliminate or reduce sexual or romantic attractions or feelings toward individuals of the same sex. The term includes, but is not limited to, practices commonly referred to as 'reparative therapy.'" *Id.* § 18.130.020(4)(a). Importantly, SB 5722's definition of "conversion therapy" excludes "counseling or psychotherapies that provide acceptance, support, and understanding of clients or the facilitation of clients' coping, social support, and identity exploration and development that do not seek to change sexual orientation or gender identity." *Id.* § 18.130.020(4)(b).

The statute provides that it may not be construed to apply to "[r]eligious practices or counseling under the auspices of a religious denomination, church, or organization that do not constitute performing conversion therapy by licensed health care providers on patients under age eighteen" or to "[n]onlicensed counselors acting under the auspices of a religious denomination, church, or organization." 2018 Wash. Sess. Laws ch. 300, § 2. The statute also does not prohibit licensed mental health providers from engaging in sexual orientation change efforts with persons 18 years of age and older. *Id.*

## ARGUMENT

For a complaint to survive a motion to dismiss, "the plaintiff must provide 'a short and plain statement of the claim showing the pleader is entitled to relief' which 'contain[s]

EQUAL RIGHTS WASHINGTON'S [PROPOSED] MOTION TO
DISMISS AND OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION
7

Skellenger Bender, P.S.
1301 Fifth Ave., Suite 3401 |
Seattle, WA 98101
Phone 206.623.6501
Fax 206.447.1973

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Disability Rts. Montana, Inc. v. Batista*, 930 F.3d 1090, 1096 (9th Cir. 2019) (quoting *Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1048 (9th Cir. 2012)). "A dismissal under rule 12(b)(6) may be based on either a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1093 (9th Cir. 2017) (citations and internal quotation marks omitted).

A party seeking a preliminary injunction bears the burden of establishing that he (a) is "likely to succeed on the merits," (b) is "likely to suffer irreparable harm in the absence of preliminary relief," (c) "the balance of equities tips in [his] favor," and (d) "an injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F. 3d 1127, 1131 (9th Cir. 2011); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Here, application of these standards requires dismissal of Plaintiff's complaint and denial of his motion for preliminary injunction.[2]

## I.   *PICKUP* REQUIRES DISMISSAL OF PLAINTIFF'S FREE SPEECH CLAIMS

This case is controlled by *Pickup*, which rejected the same free speech claims raised by the Plaintiff here. Washington's law is virtually identical to the California law upheld in *Pickup*. Both laws protect minors from harmful treatments that seek to change a person's sexual orientation or gender identity. Both apply only to the actual provision of these treatments to minors by licensed mental health professionals, while imposing no restrictions on therapists' ability to express their views about sexual orientation or gender

---

[2] Equal Rights Washington agrees with the State of Washington defendants that Plaintiff's complaint must be dismissed for lack of standing and ripeness and incorporates those arguments in full by reference. Plaintiff has not alleged neither a sufficiently concrete plan to violate SB 5722 nor a sufficient threat of enforcement, and he has no standing to assert on a third party basis claims on behalf on minor patients. *See King*, 767 F.3d at 244; *Doyle v. Hogan,* No. CV DKC 19-0190, 2019 WL 3500924, at *9 (D. Md. Aug. 1, 2019).

EQUAL RIGHTS WASHINGTON'S [PROPOSED] MOTION TO
DISMISS AND OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION
8

Skellenger Bender, P.S.
1301 Fifth Ave., Suite 3401 |
Seattle, WA 98101
Phone 206.623.6501
Fax 206.447.1973

identity (or any other topic) to patients or anyone else. Plaintiff has identified no differences between California's and Washington's law that would alter the Ninth Circuit's analysis of California's law in *Pickup*, nor do any exist. As such, *Pickup*'s holding that California's law regulates professional conduct, not speech, is controlling and mandates dismissal of Plaintiff's free speech claims in this case.

Plaintiff's free speech claims rest entirely on his contention that because the therapy he provides is carried out through words, Washington's law restricts his right to free speech and may be upheld only if it survives strict scrutiny. But the Ninth Circuit squarely rejected that argument in *Pickup*. As *Pickup* held, the argument that psychotherapy is entitled to special First Amendment protection and may not be regulated like other medical treatments conflicts with established law. That holding is controlling here and requires dismissal of Plaintiff's free speech claims.

Plaintiff's argument ignores that psychotherapy is a *treatment* intended to effect a change in a patient's mental health, not expressive speech. In *Pickup*, the Ninth Circuit affirmed its prior decision in *National Association for the Advancement of Psychoanalysis v. California Board of Psychology* ("*NAAP*"), 228 F.3d 1043 (9th Cir. 2000), which rejected the argument that "because psychoanalysis is the 'talking cure,' it deserves special First Amendment protection." *Id*. at 1054. As the court held in that case: "[T]he key component of psychoanalysis is the treatment of emotional suffering and depression, *not* speech. That psychoanalysts employ speech to treat their clients does not entitle them, or their profession, to special First Amendment protection." *Id.* (internal quotation marks and ellipsis omitted) (emphasis in original). Plaintiff's argument runs directly afoul of that clear holding, which *Pickup* affirmed: "psychotherapists are not entitled to special First Amendment protection merely because the mechanism used to deliver mental health treatment is the spoken word." 740 F.3d at 1227. Rather, as *Pickup*

EQUAL RIGHTS WASHINGTON'S [PROPOSED] MOTION TO DISMISS AND OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION
9

Skellenger Bender, P.S.
1301 Fifth Ave., Suite 3401 |
Seattle, WA 98101
Phone 206.623.6501
Fax 206.447.1973

1   held, "California has authority to regulate licensed mental health providers' administration

2   of therapies that the legislature has deemed harmful." *Id*. at 1229.

3         As *Pickup* explained, Plaintiff's contrary argument "would be inconsistent with the

4   principle that 'it has never been deemed an abridgement of freedom of speech or press to

5   make a course of conduct illegal merely because the conduct was in part initiated,

6   evidenced, or carried out by means of language, either spoken, written, or printed.'" *Id.*

7   (quoting *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949)). *Pickup* held

8   that conversion therapy is just such a "course of conduct"; the mere fact that it is "carried

9   out by means of language" does not alter its status as a medical treatment that may be

10  regulated by the state. "Under *Giboney*, . . . the fact that speech may be used to carry out

11  those therapies does not turn the regulation of conduct into a regulation of speech." *Id*.

12        In sum, "to the extent that talk therapy implicates speech, it stands on the same

13  First Amendment footing as other forms of medical or mental health treatment. Senate

14  Bill 1172 is subject to deferential review just as are other regulations of the practice of

15  medicine." *Pickup,* 740 F.3d at 1231. Plaintiff makes no attempt to reconcile his argument

16  with this controlling precedent, nor could he.

17        Plaintiff's invocation of *Conant*, 309 F.3d 629, also misses the mark. *Pickup*

18  distinguished the law struck down in *Conant*, which penalized doctors merely for

19  recommending marijuana to their patients, from California's law barring therapists from

20  using SOCE on minors. The law in *Conant* ran afoul of the First Amendment because it

21  went beyond prohibiting doctors from *treating* patients with marijuana and limited what

22  doctors could say *about* medical marijuana to their patients. As *Pickup* explained, "doctor-

23  patient communications *about* medical treatment receive substantial First Amendment

24  protection, but the government has more leeway to regulate the conduct necessary to

25  administering treatment itself."  740 F.3d at 1227.

Skellenger Bender, P.S.
1301 Fifth Ave., Suite 3401 |
Seattle, WA 98101
Phone 206.623.6501
Fax 206.447.1973

In contrast to the law struck down in *Conant*, *Pickup* held that California's law banning the use of SOCE on minors "regulates conduct. It bans a form of treatment for minors; it does nothing to prevent licensed therapists from discussing the pros and cons of SOCE with their patients." *Id.* at 1229. The same is true of the law challenged here. "It is the limited reach of [Washington's law] that distinguishes the present cases from *Conant*, in which the government's policy prohibited speech *wholly apart* from the actual provision of treatment. Pursuant to its police power, [Washington] has authority to regulate licensed mental health providers' administration of therapies that the legislature has deemed harmful." *Id.*

Plaintiff makes no attempt to distinguish *Pickup*'s analysis of why *Conant* has no application to a law barring SOCE for minors, nor is there any basis for doing so. *Pickup*'s analysis of *Conant* is controlling and requires dismissal of the Plaintiff's free speech claim.

Contrary to Plaintiff's claims, *Pickup* did not rely on the proposition that "the law censors only a less protected category of 'professional speech.'" Dkt. No. 2 (Mot.) at 10. *Pickup* discussed case law holding that regulations of professional speech are subject to intermediate rather than strict scrutiny, but that discussion was clearly identified as dicta and played no role in the panel's holding. *Pickup* relied on the proposition that the law "regulates only treatment, while leaving mental health providers free to discuss and recommend, or recommend against, SOCE." 740 F.3d at 1231. As a result, the *Pickup* panel concluded "that any effect it may have on free speech interests is merely incidental." *Id.*

EQUAL RIGHTS WASHINGTON'S [PROPOSED] MOTION TO
DISMISS AND OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION
11

Skellenger Bender, P.S.
1301 Fifth Ave., Suite 3401 |
Seattle, WA 98101
Phone 206.623.6501
Fax 206.447.1973

## II.   NOTHING IN *NIFLA* ALTERS *PICKUP*'S STATUS AS CONTROLLING PRECEDENT IN THIS CASE

Plaintiff asserts that *NIFLA* "effectively superseded" *Pickup*, but he offers no analysis to support that claim. In fact, nothing in *NIFLA* alters *Pickup*'s status as controlling precedent in this case. Both *NIFLA* and *Pickup* mandate dismissal of Plaintiff's free speech claims.

*NIFLA* affirmed that "States may regulate professional conduct, even though that conduct incidentally involves speech." 138 S. Ct. at 2372. The Court expressly rejected the argument—relied on by Plaintiff here—that whether a law regulates conduct turns on whether the law restricts any speech at all. "[T]he First Amendment does not prevent restrictions directed at . . . conduct from imposing incidental burdens on speech." *Id*. at 2373 (internal citations and quotation marks omitted).

Instead, *NIFLA* affirmed the longstanding precedent that states may regulate a medical treatment even when doing so restricts speech, not because of its expressive content, but because it is being used to carry out a treatment. As the Court had previously held, the First Amendment is not offended by a "law that regulated speech only as part of the practice of medicine, subject to reasonable licensing and regulation by the State." *Id*. at 2373 (citing *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 884 (1992) (internal quotation marks omitted). The law upheld in *Casey* required doctors to provide information to patients obtaining abortions. *Id*. In contrast, *NIFLA* invalidated a California law requiring pregnancy clinics to provide information to women even when they were not seeking or undergoing any medical treatment. 138 S. Ct. at 2368. The Court explained that the pregnancy clinic law violated the First Amendment because—unlike the law in *Casey*—its notice requirement was "not tied to a [medical] procedure." 138 S. Ct. at 2373. The clinics were required to convey certain information "regardless of whether a medical

EQUAL RIGHTS WASHINGTON'S [PROPOSED] MOTION TO DISMISS AND OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION
12

Skellenger Bender, P.S.
1301 Fifth Ave., Suite 3401 |
Seattle, WA 98101
Phone 206.623.6501
Fax 206.447.1973

1    procedure [was] ever sought, offered, or performed." The law therefore regulated "speech

2    as speech." *Id*. at 2374.

3        The Ninth Circuit's holding in *Pickup* is consistent with *NIFLA. Pickup* held that,

4    California's SOCE law "regulates only . . . therapeutic treatment, not expressive speech."

5    740 F.3d at 1229. To the extent it restricts any speech, it does so only incidentally, in

6    order to prohibit the administration of a dangerous treatment, not to prevent the expression

7    of ideas.

8        The same analysis applies here. Washington's law is firmly tethered to a specific

9    medical treatment—the practice by licensed therapists of conversion therapy on minors. It

10   is narrow, applying only to the actual provision of that dangerous and discredited

11   treatment. Under Washington's law, Plaintiff and other licensed therapists remain free to

12   communicate to their patients (or others), publicly or privately, any information or views

13   they may hold about the morality of same-sex attraction, altering sexual orientation,

14   conversion therapy, or anything else. The only thing they may not do is subject minor

15   patients to a specific course of medical treatment that has been rejected by the medical

16   community as unnecessary, ineffective, and unsafe. Accordingly, "any effect [SB 5722]

17   may have on free speech interests is merely incidental" and warrants no heightened

18   scrutiny. 740 F.3d at 1231.

19   **III.    NINTH CIRCUIT PRECEDENT ALSO REQUIRES DISMISSAL OF
             PLAINTIFF'S DUE PROCESS CLAIM**

20
21       *Pickup* and other controlling precedent also requires dismissal of Plaintiff's

21   argument that Washington's law is unconstitutionally vague. As an initial matter,

22   Plaintiff's facial challenge fails because he does not even attempt to show that the statute

23   "is impermissibly vague in all of its applications." *Village of Hoffman Estates v. Flipside,*

24
25

EQUAL RIGHTS WASHINGTON'S [PROPOSED] MOTION TO
DISMISS AND OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION
13

Skellenger Bender, P.S.
1301 Fifth Ave., Suite 3401 |
Seattle, WA 98101
Phone 206.623.6501
Fax 206.447.1973

*Hoffman Estates, Inc.*, 455 U.S. 489, 494-95 (1982); *see also Pickup*, 740 F.3d at 1234. Plaintiff's other arguments are equally without merit.

In *Pickup*, the plaintiffs "argue[d] that they cannot ascertain where the line is between what is prohibited and what is permitted." *Id.* at 1234. In this case, Plaintiff likewise contends that he cannot ascertain the line between treatment that "seeks to change an individual's sexual orientation or gender identity" and "identity exploration." Dkt. No. 2 (Mot.) at 17–18. But as the Ninth Circuit held regarding California's virtually identical statute, the text of the Law "is clear to a reasonable person." *Pickup*, 740 F.3d at 1234.

Moreover, "if the statutory prohibition involves conduct of a select group of persons having specialized knowledge, and the challenged phraseology is indigenous to the idiom of that class, *the standard is lowered* and a court may uphold a statute which uses words or phrases having a technical or other special meaning, well enough known to enable those within its reach to correctly apply them." *United States v. Weitzenhoff*, 35 F.3d 1275, 1289 (9th Cir. 1993) (emphasis added). Here, "considering that [Washington's law] regulates licensed mental health providers, who constitute 'a select group of persons having specialized knowledge,' the standard for clarity is lower." *Pickup* (citing *Weitzenhoff*, 35 F.3d at 1289). "Identity exploration and "identity development" are well-established concepts in adolescent psychiatry, as are "sexual orientation," "gender identity" and "gender expression." Declaration of Judith Glassgold, Psy.D. ¶¶ 13, 15, 18.

The terms "gender identity" and "gender expression" are also common legal terms. Multiple provisions of Washington law use the terms "gender identity" and "gender expression."[3] In addition, Wash. Rev. Code Ann. § 48.43.072 defines both terms. *See*

---

[3] *See, e.g.*, Wash. Rev. Code § 9A.08.040; Wash. Rev. Code § 9A.16.025; Wash. Rev. Code § 9A.36.078; Wash. Rev. Code § 9A.36.080; Wash. Rev. Code § 18.130.020; Wash. Rev. Code § 28A.642.010; Wash. Rev. Code § 28A.642.080; Wash. Rev. Code

EQUAL RIGHTS WASHINGTON'S [PROPOSED] MOTION TO DISMISS AND OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION
14

Skellenger Bender, P.S.
1301 Fifth Ave., Suite 3401 |
Seattle, WA 98101
Phone 206.623.6501
Fax 206.447.1973

48.43.072(8)(b) ("'Gender identity' means person's internal sense of the person's own gender, regardless of the person's gender assigned at birth"); 48.43.072(8)(a) ("'Gender expression' means a person's gender-related appearance and behavior, whether or not stereotypically associated with the person's gender assigned at birth.").

The term "gender identity" also appears in many federal statutes. *See*, *e.g.*, 18 U.S.C. § 249 (c)(4) ("gender identity" is a protected characteristic under the federal hate crimes act); 34 U.S.C. § 10441 (b)(19) ("gender identity" is included as a relevant factor for programs and grants aimed at increasing law enforcement to combat domestic violence); 34 U.S.C. § 12291 (a)(39) ("gender identity" is included as a relevant characteristic for defining an "underserved population" that faces barriers to accessing victim services); 34 U.S.C. § 30503 (a)(1)(C) (the Attorney General may provide assistance in the criminal investigation or prosecution of any crime that is motivated by "gender identity"); 34 U.S.C. § 41305 (b)(1) (providing that data shall be collected on crimes that manifest evidence of prejudice based on "gender identity"); 42 U.S.C. § 2000e ("gender identity" is included in Executive Order No. 11246 regarding Equal Opportunity in Federal Employment); 50 U.S.C. § 3334b (f)(3) ("gender identity" is incorporated into the definition of "diversity" for the purposes of workforce data collection).

Many federal court decisions also use the terms "gender identity" and "gender expression." *See, e.g.*, *Bostock v. Clayton County, Ga.*, 140 S. Ct. 1731, 1739 (2020) (gender identity); *Smith v. Spisak*, 558 U.S. 139, 154 (2010) (gender identity); *Karnoski v. Trump*, 926 F.3d 1180, 1199 et passim (9th Cir. 2020) (gender identity); *Edmo v. Corizon, Inc.*, 935 F.3d 757, 770 (9th Cir. 2019) (gender identity and gender expression)

---

§ 28A.405.170; Wash. Rev. Code § 28B.15.012; Wash. Rev. Code § 28B.112.050; Wash. Rev. Code § 36.28A.030; Wash. Rev. Code § 48.43.072; Wash. Rev. Code § 49.60.040; Wash. Rev. Code § 50A.05.100; Wash. Rev. Code § 74.09.875.

EQUAL RIGHTS WASHINGTON'S [PROPOSED] MOTION TO DISMISS AND OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION
15

Skellenger Bender, P.S.
1301 Fifth Ave., Suite 3401 |
Seattle, WA 98101
Phone 206.623.6501
Fax 206.447.1973

Given this well-established meaning, courts have repeatedly rejected vagueness challenges to the term "gender identity." *See*, *e.g.*, *Hyman v. City of Louisville*, 132 F. Supp. 2d 528, 546 (W.D. Ky 2001), vacated on other grounds, 53 Fed. Appx. 740 (6th Cir. 2002) (unpublished); *Reynolds v. Talberg*, WL 6375396, *9 (W.D. Mich.2020).

Finally, Plaintiff's argument that the law is unconstitutionally vague because it does not indicate whether the prohibition on any "regime that seeks to change . . . "sexual orientation or gender identity refers to the subjective intent of the client, or that of the counselor" has no merit. Under its plain terms, the law prohibits treatments that seek to change a minor's sexual orientation or gender identity, regardless of whether a minor client purportedly seeks out such change or whether that goal is imposed by the therapist. The statute simply protects minors from being subjected to such treatments, consistent with the American Psychological Association's clear directive that licensed mental health providers should not engage in SOCE with minors under any circumstances, including with "children and adolescents who present a desire to change their sexual orientation." APA Report at 79-80.

## IV.   CONTROLLING PRECEDENT ALSO REQUIRES DISMISSAL OF PLAINTIFF'S FREE EXERCISE CLAIM

Plaintiff's claim under the Free Exercise Clause is also foreclosed by controlling Ninth Circuit precedent. The right to free exercise of religion "does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." *Emp't Div. v. Smith*, 494 U.S. 872, 879 (1990).

In *Welch*, 834 F.3d at 1044, the Ninth Circuit applied this standard and upheld California's virtually identical law prohibiting the use of conversion therapy on minors against a challenge by mental health providers who argued that the law violated their

EQUAL RIGHTS WASHINGTON'S [PROPOSED] MOTION TO DISMISS AND OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION
16

Skellenger Bender, P.S.
1301 Fifth Ave., Suite 3401 |
Seattle, WA 98101
Phone 206.623.6501
Fax 206.447.1973

rights under the First Amendment's religion clauses. The Court of Appeals held that the California statute was subject only to rational basis review, which it easily satisfied. *See id.  See also King*, 767 F.3d at 241-43 (rejecting free exercise challenge to virtually identical New Jersey law).

Plaintiff identifies no relevant legal or factual difference between this case and *Welch* that would warrant a different result. To the contrary, the arguments Plaintiff offers here were considered and expressly rejected by the Ninth Circuit.

First, Plaintiff argues that SB 5722 is not neutral because conversion therapy is "principally sought by religiously motivated clients [and] provided by counselors who share similar religious convictions." Dkt. No. 2 (Mot.) at 19. The Ninth Circuit rejected the same argument in *Welch*:

> The object of SB 1172 is the prevention of harm to minors, regardless of the motivations for seeking SOCE. As we have explained, many persons seek SOCE for secular reasons. Moreover, even if we assume that persons with certain religious beliefs are more likely to seek SOCE, the "Free Exercise Clause is not violated even if a particular group, motivated by religion, may be more likely to engage in the proscribed conduct."

*Welch*, 834 F.3d at 1047 (quoting *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1077 (9th Cir. 2015)).

Second, Plaintiff points to various statements in the APA Report and other materials from mental health organizations and academics indicating that conversion therapy is frequently sought by individuals with religious convictions. This argument, too, was rejected by the Ninth Circuit: "Even viewing the APA Task Force's report in isolation does not support a conclusion that only those with religious views sought SOCE. Although the report concluded that those who seek SOCE 'tend' to have strong religious

EQUAL RIGHTS WASHINGTON'S [PROPOSED] MOTION TO DISMISS AND OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION
17

Skellenger Bender, P.S.
1301 Fifth Ave., Suite 3401 |
Seattle, WA 98101
Phone 206.623.6501
Fax 206.447.1973

1 views, the report is replete with references to non-religious motivations, such as social

2 stigma and the desire to live in accordance with 'personal' values." *Id.* at 1046.

3    Third, Plaintiff asserts that some unspecified legal test other than the one

4 established in *Employment Division v. Smith* should apply to his free exercise claim.

5 Plaintiff offers no basis for this Court to depart from the well-established legal standards

6 articulated in *Smith* and *Welch*, and the Supreme Court has continued to apply the *Smith*

7 standard. *See Fulton v. City of Philadelphia*, No. 19-123, 2021 WL 2459253, at *7 (U.S.

8 June 17, 2021) (holding that nondiscrimination provision in a city contract was not

9 "generally applicable" because it allowed city officials to provide exemptions to city

10 contractors on a purely discretionary basis).

11    Finally, Plaintiff argues that the "hybrid rights exception" requires application of

12 strict scrutiny even if SB 5722 is a neutral and generally applicable law because it

13 implicates both his free speech and free exercise rights. The Ninth Circuit has questioned

14 whether the hybrid rights doctrine even exists, but assuming it does, "alleging multiple

15 failing constitutional claims that do not have a likelihood of success on the merits cannot

16 be enough to invoke a hybrid rights exception and require strict scrutiny." *Parents for

17 Privacy v. Barr*, 949 F.3d 1210, 1237 (9th Cir. 2020).  Because Plaintiff's free speech

18 claims must be dismissed for the reasons stated above, his hybrid rights claim fails as

19 well.

20        **V.    SB 5722 SURVIVES ANY LEVEL OF REVIEW**

21    Even if Plaintiff could establish that SB 5722 significantly restricts constitutionally

22 protected speech—which he cannot—it is constitutional. Washington's law "is justified by

23 a compelling government interest and is narrowly drawn to serve that interest"; it would

24 satisfy even strict scrutiny, if it applied. *See Brown v. Entertainment Merchants Ass'n*, 564

25 U.S. 786, 799 (2011).

EQUAL RIGHTS WASHINGTON'S [PROPOSED] MOTION TO
DISMISS AND OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION
18

Skellenger Bender, P.S.
1301 Fifth Ave., Suite 3401 |
Seattle, WA 98101
Phone 206.623.6501
Fax 206.447.1973

## A. Washington Has A Compelling Interest in Protecting Children From Harm.

Washington enacted SB 5722 to carry out its "compelling interest in protecting the physical and psychological well-being of minors" and "in protecting its minors against exposure to serious harms caused by conversion therapy." 2018 Wash. Sess. Laws ch. 300, § 1. Governments have a compelling interest in the health and well-being of their citizens. *See Goldfarb v. Va. State Bar*, 421 U.S. 773, 792 (1975). The Supreme Court "ha[s] sustained legislation aimed at protecting the physical and emotional well-being of youth even when the laws have operated in the sensitive area of constitutionality protected rights." *N.Y. v. Ferber*, 458 U.S. 747, 757 (1982). That interest is plainly served here, where the government seeks to protect minors who are "especially vulnerable to [the] practices" barred by the law. *King*, 767 F.3d at 238.

In enacting SB 5722, the Legislature relied on substantial evidence that conversion therapy puts minors at risk of serious harms. Plaintiff complains that the research showing the harms of conversion therapy is not sufficiently conclusive. But the First Amendment does not require the government to delay action to protect children from serious threats of harm until it possesses absolute certainty, particularly when acquiring such proof would produce the very harm the government seeks to avoid. *See FCC v. Fox Television Stations*, 556 U.S. 502, 519 (2009). Responsible professionals stopped conducting double-blind studies on conversion therapy precisely because it was harmful, particularly to minors, and therefore would be unethical to attempt. *See* Health Impact Review of SB 5722 at 2 ("Research ethics make it difficult to rigorously study a practice associated with harm."); APA Report at 91; *Otto*, 353 F.Supp.3d at 1260 & n.12.

EQUAL RIGHTS WASHINGTON'S [PROPOSED] MOTION TO DISMISS AND OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION
19

Skellenger Bender, P.S.
1301 Fifth Ave., Suite 3401 |
Seattle, WA 98101
Phone 206.623.6501
Fax 206.447.1973

**B. SB 5722 Is Narrowly Tailored To Advance The State's Compelling Interest.**

Plaintiff contends that there are less restrictive alternatives to protect the mental health and well-being of Washington youth than a prohibition of conversion therapy for minors. But because there are inherent, potentially deadly, dangers when a therapist subjects a minor to conversion therapy, there are no practical alternatives to a prohibition on licensed mental health professionals performing such treatments on minors. The "less restrictive alternatives" Plaintiff proposes would still allow minors to be exposed to the very physical and mental harms that are the subject of the medical literature cited by the Legislature and that the law seeks to prevent. *See Otto*, 353 F.Supp.3d at 1266–67.

Plaintiff contends that the law is "overbroad" because it prohibits conversion therapy even if treatment is entirely carried out through talk therapy that is requested by the minor patient, as opposed to restricting only involuntary and/or aversive treatments. As an initial matter, relying on a distinction between voluntary and involuntary treatment would provide little protection for minors, who are under the legal control of parents or guardians. As such, "[m]inors constitute an 'especially vulnerable population,' and may feel pressured to receive [conversion therapy] counseling by their families and their communities despite their fear of being harmed." *King*, 767 F.3d at 240 (quoting APA Report at 121). Indeed, Plaintiff himself states that "[i]n most cases a minor will initially come to my office brought by and at the prompting of his or her parent or parents." Dkt. No. 2-1 (Declaration of Brian Tingley) at ¶ 18. The fact that minor patients may agree to continue in therapy does not eliminate their ongoing vulnerability or the fact that their participation may be influenced by such pressures.

In addition, even for adults, there are many treatments a therapist cannot provide, even when requested by clients to do so, because they are harmful. "For example, if an anorexic patient asks for help in losing more weight, competent psychologists do not defer

EQUAL RIGHTS WASHINGTON'S [PROPOSED] MOTION TO DISMISS AND OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION
20

Skellenger Bender, P.S.
1301 Fifth Ave., Suite 3401 |
Seattle, WA 98101
Phone 206.623.6501
Fax 206.447.1973

to this goal out of respect for the patient's self-determination due to the known harm in doing so." Declaration of Douglas C. Haldeman, Ph.D. ¶ 30.

Restricting the statute only to so-called "aversive" treatments such as electroshock therapy would be equally ineffective. As the APA and many other professional organizations have warned, being subjected to non-aversive conversion therapy also puts minors at high risk of depression, suicide, and other serious harms. *See* APA Report at 42, 79-80; Glassgold Decl. ¶ 50; *Otto*, 353 F.Supp.3d. at 1267. The government has a compelling interest in protecting minors from that harm.

Plaintiff also contends that the law is "underinclusive" because the state has not banned other forms of "what the State deems to be misguided counsel," such as "recommendations to use hallucinogenic drugs, websites or YouTube videos that encourage minors to adopt transgender identities, or promotion of extreme diets." Dkt. No. 2 (Mot.) at 14–15. But when licensed mental health providers subject minor patients to conversion therapy, they are providing medical treatment, not simply engaging in "conversations." Plaintiff's argument conflates the provision of mental health care with "the dissemination of ideas concerning personal, philosophical, scientific, and religious topics." Dkt. No. 2 (Mot.) at 12. As the Ninth Circuit held in *Pickup*, a law prohibiting the use of conversion therapy on minors "regulates only (1) therapeutic treatment, not expressive speech, by (2) licensed mental health professionals acting within the confines of the counselor-client relationship. The statute does not restrain Plaintiffs from imparting information or disseminating opinions; the regulated activities are therapeutic, not symbolic." 740 F.3d at 1229–30. That holding is controlling here.

In sum, even if intermediate or strict scrutiny applied, Washington's law is narrowly tailored to protect minors from treatments that are unnecessary, ineffective, and

EQUAL RIGHTS WASHINGTON'S [PROPOSED] MOTION TO DISMISS AND OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION
21

Skellenger Bender, P.S.
1301 Fifth Ave., Suite 3401 |
Seattle, WA 98101
Phone 206.623.6501
Fax 206.447.1973

potentially devastating to their physical and mental health—an interest that is sufficiently compelling to pass muster any standard of review.

## VI.   PLAINTIFF CANNOT SATISFY THE REMAINING REQUIREMENTS FOR A PRELIMINARY INJUNCTION

For the reasons stated above, Plaintiff cannot show that Washington's law violates either the free speech or religion clauses of the First Amendment and thus cannot show a likelihood of success on any of his claims. The other preliminary injunction factors, which Plaintiff only briefly addresses, also weigh strongly against granting a preliminary injunction. Plaintiff alleges no irreparable harm other than the alleged violation of First Amendment rights, which he cannot establish under the precedents controlling this case. Apart from that asserted constitutional injury, Plaintiff has no legitimate interest as a licensed mental health provider in subjecting minor patients to unnecessary treatments that provide no demonstrable benefit and put them at risk of serious harm. In contrast, granting Plaintiff's preliminary injunction would severely impair the State of Washington's compelling interest in preventing state-licensed therapists from harming their minor patients. For the same reason, the public interest also weighs heavily in favor of leaving this protective law in place.

## CONCLUSION

For the foregoing reasons, Equal Rights Washington respectfully requests that the Court dismiss Plaintiff's Complaint with prejudice and deny his motion for preliminary injunction.

Respectfully submitted this 25th day of June, 2021.

SKELLENGER BENDER, P.S.

By s/ Raegen Rasnic
Raegen Rasnic, WSBA # 25480
Skellenger Bender, P.S.

Skellenger Bender, P.S.
1301 Fifth Ave., Suite 3401 |
Seattle, WA 98101
Phone 206.623.6501
Fax 206.447.1973

1301 Fifth Ave., Suite 3401
Seattle, WA 98101
Phone: (206) 623-6501
Fax: (206) 447-1973
Email: RRasnic@skellengerbender.com
Attorneys for [Proposed] Defendant-
Intervenor
Equal Rights Washington

NATIONAL CENTER FOR LESBIAN
RIGHTS

<u>By s/ Christopher Stoll</u>
Christopher Stoll (*pro hac vice*)
Shannon Minter (*pro hac vice*)
870 Market Street, Suite 370
San Francisco, CA 94102
Telephone: (415) 392-6257
E-mail: cstoll@nclrights.org
E-mail: sminter@nclrights.org
Attorneys for [Proposed] Defendant-Intervenor
Equal Rights Washington

EQUAL RIGHTS WASHINGTON'S [PROPOSED] MOTION TO
DISMISS AND OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION
23

Skellenger Bender, P.S.
1301 Fifth Ave., Suite 3401 |
Seattle, WA 98101
Phone 206.623.6501
Fax 206.447.1973

1

## CERTIFICATE OF SERVICE

2          I, Jule Freeman, certify that on June 25, 2021, I electronically filed Equal Rights

3   Washington's [Proposed] Motion to Dismiss and Opposition to Motion for Preliminary

4   Injunction with the Clerk of the Court using the CM/ECF system, which will send

5   notification of such filing to all attorneys of record.

6          DATED this 25th day of June, 2021.

7                                                    s/ Jule Freeman
                                          Jule Freeman
8                                          SKELLENGER BENDER, P.S.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

EQUAL RIGHTS WASHINGTON'S [PROPOSED] MOTION TO
DISMISS AND OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION
24

Skellenger Bender, P.S.
1301 Fifth Ave., Suite 3401 |
Seattle, WA 98101
Phone 206.623.6501
Fax 206.447.1973