The Honorable Robert J. Bryan

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT TACOMA

BRIAN TINGLEY,

                 Plaintiff,

    v.

ROBERT W. FERGUSON et al.,

                 Defendant.

NO.  3:21-cv-05359-RJB

DEFENDANTS' MOTION TO DISMISS AND OPPOSITION TO PLANTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Noted for: August 20, 2021 at 1:30pm

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLANTIFF'S
MOTION FOR PRELIMINARY
INJUNCTION
NO.  3:21-cv-05359-RJB

i

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

# TABLE OF CONTENTS

I.   INTRODUCTION ..................................................................................................... 1

II.  BACKGROUND ..................................................................................................... 1

   A.   Sexual Orientation and Gender Identity Change Efforts ........................... 1

   B.   Washington's SOGICE Law ...................................................................... 3

   C.   This Lawsuit .............................................................................................. 7

III. LEGAL STANDARD .............................................................................................. 7

IV.  ARGUMENT ........................................................................................................... 8

   A.   This Court Lacks Jurisdiction .................................................................... 8

      1.   Plaintiff Fails to Establish Constitutional Standing and Ripeness .................... 8

      2.   Plaintiff Lacks Third-Party Standing ................................................ 10

      3.   Plaintiff's Claims Do Not Satisfy Prudential Ripeness, Either ...................... 12

   B.   Plaintiff Fails to State a Claim on Which Relief Can be Granted ........................... 13

      1.   Plaintiff's Free Speech Claims Fail ................................................... 13

         a.   The Ninth Circuit's *Pickup* Decision Controls ........................... 13

         b.   The Supreme Court Has Not Altered *Pickup*'s Controlling Status .......... 15

            (1)   *Nat'l Inst. of Fam. & Life Advocs. (NIFLA) v. Becerra* ................ 15

            (2)   *NIFLA* is Not "Clearly Irreconcilable" with *Pickup* ................. 16

         c.   In the Alternative, the SOGICE Law Meets Intermediate Scrutiny ......... 20

         d.   In the Alternative, the SOGICE Law Meets Strict Scrutiny ................ 22

      2.   Plaintiff's Due Process Claim Fails ................................................... 24

      3.   Plaintiff's Free Exercise Claims Fail ................................................. 26

      4.   Plaintiffs' Third-Party Claims Fail ................................................... 29

   C.   Plaintiff Is Not Entitled to a Preliminary Injunction ............................... 29

      1.   Plaintiff Has Not Established a Likelihood of Success on the Merits ............ 29

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLANTIFF'S
MOTION FOR PRELIMINARY
INJUNCTION
NO.  3:21-cv-05359-RJB

ii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

2.     Plaintiff Has Not Established the Other Requisites for a Preliminary
       Injunction ........................................................................................ 29

V.    CONCLUSION ............................................................................................ 30

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLANTIFF'S
MOTION FOR PRELIMINARY
INJUNCTION
NO.  3:21-cv-05359-RJB

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

## I.      INTRODUCTION

Exercising the State's unquestioned authority to regulate licensed health professionals, in 2018 the Washington Legislature identified the practice of conversion therapy on minors by such professionals as "unprofessional conduct." Conversion therapy—the attempt to change a person's sexual orientation or gender identity—originated as a treatment for what health professionals once considered a disorder—a position these professions have long since abandoned. Conversion therapy has been thoroughly discredited by leading medical and mental health organizations, providers, and academic researchers. Available research overwhelmingly concludes it is both ineffective and particularly harmful to minors.

Plaintiff Brian Tingley is a Washington-licensed marriage and family counselor who objects to Washington's professional regulation of conversion therapy on minors. Each of his claims fails as a matter of law and must be dismissed. *First*, Plaintiff lacks standing, and his claims are not ripe. *Second*, controlling Ninth Circuit authority precludes Plaintiff's free speech and free exercise claims. *Finally*, Plaintiff cannot mount a facial vagueness challenge under the Due Process Clause, and, even if he could, the law is reasonably clear as a matter of law.

Plaintiff's Motion for Preliminary Injunction, Dkt. 2 (PI Motion), also fails. In addition to showing no likelihood of success on the merits, he cannot show irreparable harm in this belated legal challenge, and Washington's interest in preventing serious harms to minors, including a greatly increased risk of depression and suicide attempts, far outweighs his limited interest in practicing conversion therapy in a licensed context.

Defendants Umair Shah, Kristin Peterson, and Robert Ferguson (collectively, the State), respectfully request that the Court dismiss this lawsuit and deny Plaintiff's PI Motion.

## II.      BACKGROUND

### A.      Sexual Orientation and Gender Identity Change Efforts

Conversion therapy, also commonly known as Sexual Orientation and Gender Identity Change Efforts (SOGICE), encompasses a range of interventions directed at changing a patient's

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLANTIFF'S
MOTION FOR PRELIMINARY
INJUNCTION
NO.  3:21-cv-05359-RJB

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

sexual orientation or gender identity. These interventions include aversive physical therapies, such as electric shock treatment or the use of nausea-inducing drugs, as well as non-aversive therapies, which may incorporate approaches such as psychoanalysis and counseling. *See, e.g.*, Am. Psych. Ass'n, *Report of the American Psychological Association Task Force on Appropriate Therapeutic Responses to Sexual Orientation* (2009) (APA Report) (attached as Declaration of Judith M. Glassgold, Psy.D., Ex. B) at 22, 31. The "overwhelming consensus" is that such interventions are ineffective and harmful. *Pickup v. Brown*, 740 F.3d 1208, 1232 (9th Cir. 2014), *cert. denied*, 134 S. Ct. 2871 (2014). Even non-aversive, non-physical SOGICE can cause serious harms including emotional trauma, depression, anxiety, suicidality, and self-hatred. *See, e.g.*, Glassgold Decl.[1] ¶¶ 50–51, 55–66; Declaration of Douglas C. Haldeman Ph.D. ¶¶ 20–28.

A significant body of recent peer-reviewed research confirms the pernicious effects of SOGICE on minors. *See, e.g.*, Joint Declaration of Lisa M. Diamond and Clifford J. Rosky, Exs. D–F; Glassgold Decl., Exs. B–E. For example, a 2020 study found that exposure to conversion therapy doubled the odds of lifetime suicidal ideation, increased the odds of planning to attempt suicide by 75 percent, and increased the odds of a suicide attempt with no or minor injury by 88 percent in comparison to a control group. *See* Glassgold Decl., Ex. D. Another study involving minors found that exposure to SOGICE was the strongest predictor of multiple suicide attempts. *Id.*, Ex. E. And a 2018 study of young adults found that over half who had undergone external conversion efforts were depressed—a rate over three times higher than those who had not—and almost two thirds had attempted suicide—a rate nearly three times higher than those who had

---

[1] When considering its Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), the State respectfully requests the Court not to rely on any materials, the consideration of which would result in the conversion of the State's Motion to Dismiss to a Motion for Summary Judgment. But the Court may properly consider some of the non-legislative materials cited herein, either because they were considered by the Legislature, or because the Court may take judicial notice of the existence of materials, such as peer-reviewed studies and official positions of well-known professional organizations that support the rational basis for the SOGICE Law. *See, e.g.*, *Mack v. S. Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991); *United States v. W.R. Grace*, 504 F.3d 745, 766 (9th Cir. 2007); 5A Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1357 (1990).

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLANTIFF'S
MOTION FOR PRELIMINARY
INJUNCTION
NO. 3:21-cv-05359-RJB

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

not. Diamond and Rosky Decl., Ex. D. Conversion therapy may compound psychological pain and trauma. Glassgold Decl. ¶¶ 55–66; *id.*, Ex. C at 2–3. Conversion therapy also prevents or delays access to more efficacious mental health care the patient may need. *Id.* ¶ 74.

Conversion therapy is also ineffective. Medical interventions should be proven effective through scientific and medical research. *Id.* ¶¶ 37, 76; Haldeman Decl. ¶ 32. But methodologically sound scientific and medical studies offer no support for conversion therapy's reliability or effectiveness in reducing same-sex attraction, increasing heterosexual attraction, or changing gender identity, even in patients who desire those outcomes. *See, e.g.*, Glassgold Decl. ¶¶ 49, 53–54; *id.*, Ex B at 27–34; Substance Abuse and Mental Health Servs. Admin., *Ending Conversion Therapy* (2015) (SAMHSA Report) (attached as Glassgold Decl., Ex. C) at 11. There is no peer-reviewed literature supporting the efficacy of conversion therapy with any population. *See id.* ¶ 49, 53–55; *id.*, Ex. C at 26.

Thus, the professional consensus is that "conversion therapy efforts are inappropriate," *Id.*, Ex. C at 3, and that "[i]interventions aimed at a fixed outcome, such as gender conformity or heterosexual orientation, including those aimed at changing gender identity, gender expression, and sexual orientation are coercive, can be harmful, and should not be part of behavioral health treatments." *Id.* at 11. Every major medical, psychiatric, psychological, and professional mental health organization, including the American Psychological Association, the American Psychiatric Association, the National Association for Social Workers, the Pan American Health Organization, and the American Academy of Child and Adolescent Psychiatry, has repudiated conversion therapy. *See* App'x A.

At present, 20 states and the District of Columbia have prohibited or restricted the practice of conversion therapy on minors. *See* App'x B.

**B.    Washington's SOGICE Law**

The Legislature has recognized that the regulation of health professions is a traditional state function, *cf., e.g.*, *Barsky v. Bd. of Regents of Univ.*, 347 U.S. 442, 451 (1954), and

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLANTIFF'S
MOTION FOR PRELIMINARY
INJUNCTION
NO. 3:21-cv-05359-RJB

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

proclaimed its intent "to promote quality" for residents. Notes following Wash. Rev. Code § 18.130.020: 2008 ch. 134 § 1. Thus, specific categories of health care providers are required to be licensed before they can practice in Washington. This requirement helps ensure they are able to safely practice and do not present a risk of patient harm. *Id.* § 18.130.010. Chapter 18.130 Wash. Rev. Code, the Uniform Disciplinary Act (UDA), provides uniform regulations for licensed health care professionals, including a list of grounds on which disciplinary action may be taken against their licenses. *Id.* § 18.130.180.

The DOH Secretary is the disciplining authority for marriage and family counselor licensees. *Id.* § 18.130.040. The range of disciplinary actions for unprofessional conduct is broad and may include corrective action, payment of a fine, censure/reprimand, practice monitoring, remedial education, and suspension or revocation of the license, among other sanctions. *See id.* § 18.130.160. The statute does not authorize either criminal penalties or civil liability, other than disciplinary action and injunctive relief, for unprofessional conduct. *See id.*; *id.* § 18.130.185.

In its 2018 session, the Washington State Legislature passed Senate Bill 5722 (attached as Declaration of Brendan Selby, Ex. A) (codified at Wash. Rev. Code § 18.130.020(4) and .080(27) (SOGICE Law)). The bill amended the UDA by adding a definition of "conversion therapy" as follows:

> (a) "Conversion therapy" means a regime that seeks to change an individual's sexual orientation or gender identity. The term includes efforts to change behaviors or gender expressions, or to eliminate or reduce sexual or romantic attractions or feelings toward individuals of the same sex. The term includes, but is not limited to, practices commonly referred to as "reparative therapy."
>
> (b) "Conversion therapy" does not include counseling or psychotherapies that provide acceptance, support, and understanding of clients or the facilitation of clients' coping, social support, and identity exploration and development that do not seek to change sexual orientation or gender identity.

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLANTIFF'S
MOTION FOR PRELIMINARY
INJUNCTION
NO. 3:21-cv-05359-RJB

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

*Id.* § 18.130.020(4). The bill also added a new ground for a finding of unprofessional conduct by a licensee: "Performing conversion therapy on a patient under age eighteen." *Id.* § 18.130.180(27).

The Legislature's stated intent was to regulate "the professional conduct of licensed health care providers." SB 5722, 2018 Wash. Sess. Laws, ch. 300, § 1(1).[2] It found that "Washington has a compelling interest in protecting the physical and psychological well-being of minors, including lesbian, gay, bisexual, and transgender youth, and in protecting its minors against exposure to serious harms caused by conversion therapy." *Id.* Both the House and Senate heard public testimony on the harms caused by SOGICE, including testimony from the Director of Professional Affairs for the Washington State Psychological Association, who described the consensus of leading professional organizations that "[a]vailable literature shows that conversion therapy is tied to negative self-image, depression, and other issues, in youth who receive it." S. B. Rep. H. Amend. 65-5722, Reg. Sess., at 3 (Wash. 2018) (attached as Selby Decl., Ex. B); *see Senate Health & Long Term Care Comm.*, Jan. 11, 2018 Public Hearing: SB 5722, SB 6026, SB 5700, https://www.tvw.org/watch/?eventID=2018011104 (video at 1:31:12–1:42:04) (testimony to Legislature on harms); *House Health Care & Wellness Comm.*, Feb. 7, 2018 Public Hearing: SB 5722, SSB 6218, https://www.tvw.org/watch/?eventID=2018021058 (video at 0:18:25–00:30:20) (same). The Legislature was presented with both the 2009 APA Report and the 2015 SAMHSA Report. *See* Selby Decl., Ex. D at 7 (summarizing the APA Report); *id.*, Ex. C at 3 (discussing the SAMHSA Report).

SB 5722 was accompanied by a report, *Health Impact Review of SB 5722*, from the Washington State Board of Health, dated November 20, 2017.[3] *See* Selby Decl., Ex. D. The

---

[2] The SOGICE Law is consistent with and complements the Washington Law Against Discrimination (WLAD), which declares freedom from discrimination based on sexual orientation in places of public accommodation to be a civil right. Wash. Rev. Code § 49.60.030(1). Since 2006, the definition of "sexual orientation" includes heterosexuality, homosexuality, bisexuality, and gender expression or identity. *Id.* § 49.60.040(27). The definition of "public accommodation" includes "any place" where health, medical, or other "personal" services are provided. *Id.* § 49.60.040(2).

[3] The *Health Impact Review of 5722* is also publicly available from the State at https://sboh.wa.gov/Portals/7/Doc/HealthImpactReviews/HIR-2017-18-SB5722.pdf. It was presented to the

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY
INJUNCTION
NO. 3:21-cv-05359-RJB

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

report found evidence that prohibiting conversion therapy on minors would decrease health risks and improve outcomes for this group. *Id.* at 1. It cited "very strong evidence" that LGBTQ adults and youths are already at heightened risk for many negative health outcomes, and "therefore mitigating any emotional, mental, and physical harm among this population has potential to decrease health disparities." *Id.* It cited and summarized numerous studies and reports, including the 2009 APA Report, the 2012 Report of the American Psychiatric Association Task Force on Treatment of Gender Identity Disorder (attached as Selby Decl., Ex. F), and numerous academic articles. *See id.* at 5–12. In addition, the legislative findings in SB 6449, a 2014 bill that proposed very similar language to SB 5722, cited other articles, statements, and reports of medical and health organizations, including the 2009 APA report, on the harms posed by conversion therapy. SB 6449, 63rd Leg., Reg. Sess. § 1 (Wash. 2014) (attached at Selby Decl., Ex. E).

Importantly, the Legislature provided that SB 5722 "may not be construed to apply to":

> (1) Speech that does not constitute performing conversion therapy by licensed health care providers on patients under age eighteen;
>
> (2) Religious practices or counseling under the auspices of a religious denomination, church, or organization that do not constitute performing conversion therapy by licensed health care providers on patients under age eighteen; and
>
> (3) Nonlicensed counselors acting under the auspices of a religious denomination, church, or organization.

SB 5722 § 2. The State interprets the first two exceptions to apply to religious practices or counseling by *licensed* counselors, if they are not acting or representing themselves as acting in their licensed capacity, and not collecting a fee. *Cf.* Wash. Rev. Code § 18.225.030(4) (providing exemption from licensing requirement for "[t]he practice of marriage and family therapy, mental health counseling, or social work under the auspices of a religious denomination, church, or religious organization.").

---

Legislature as part of its consideration of SB 5722. *See* Senate Committee Hearing, https://www.tvw.org/watch/?eventID=2018011104 (video at 1:57:57). The Court may consider the *Review* in the context of the State's Motion to Dismiss as part of the legislative history in this case. *See, e.g.*, *Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012).

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLANTIFF'S
MOTION FOR PRELIMINARY
INJUNCTION
NO.  3:21-cv-05359-RJB

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    DOH intends to enforce the SOGICE Law as it enforces other restrictions on

2    unprofessional conduct. DOH typically does not conduct investigations unless a complaint has

3    been filed against a licensee's practice. The complaint must allege conduct in violation of Wash.

4    Rev. Code § 18.130.180. Declaration of Marlee O'Neill ¶ 10. No complaint has ever been filed

5    alleging a violation of subsection (27), including none filed against Plaintiff. *Id.* ¶ 9. Therefore,

6    no investigation or enforcement action has yet been taken under the SOGICE Law. *Id.* If a health

7    care provider is unsure whether conduct might violate § 18.130.180, he or she may contact DOH

8    for generalized guidance, or consult an attorney or professional association. *See Id.* ¶ 14.

9    **C.      This Lawsuit**

10    Plaintiff Brian Tingley filed a Verified Complaint and PI Motion on May 13, 2021,

11    challenging the constitutionality of the SOGICE Law. The Complaint asserts five claims. Counts

12    I and II allege violations, facially and as applied, of his personal free speech right under the First

13    Amendment, and the free speech rights of his clients, respectively. Dkt. 1 (Compl.) ¶¶ 188-215,

14    *id.* at 59. Count III alleges a facial due process violation based on vagueness. *Id.* ¶¶ 216-240;

15    *id.* at 60. Counts IV and V allege violations of his personal free exercise right under the First

16    Amendment, and the free exercise rights of his clients, respectively. *Id.* ¶¶ 241–263; *id.* at 59.

17    **III.      LEGAL STANDARD**

18    Under Fed. R. Civ. P. 12(b)(1), a complaint must be dismissed if its allegations "are

19    insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d

20    1035, 1039 (9th Cir. 2004). Because Plaintiff must show standing at each stage of the litigation, the

21    Court may consider all evidence submitted by the parties on this issue. *See Yazzie v. Hobbs*, 977

22    F.3d 964, 966 (9th Cir. 2020) (requiring a "clear showing" at preliminary injunction stage).

23    Dismissal under Fed. R. Civ. P. 12(b)(6) may be based on either the lack of a cognizable

24    legal theory or the absence of sufficient facts alleging such theory. *See Davidson v.*

25    *Kimberly-Clark Corp.*, 889 F.3d 956, 965 (9th Cir. 2018). Although the Court must accept as

26    true the Complaint's well-pleaded facts, conclusory allegations of law and unwarranted

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLANTIFF'S
MOTION FOR PRELIMINARY
INJUNCTION
NO. 3:21-cv-05359-RJB

7

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

inferences will not defeat an otherwise proper Rule 12(b)(6) motion to dismiss. *Benavidez v. Cnty. of San Diego,* 993 F.3d 1134, 1145 (9th Cir. 2021). The Court "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment. *Shaw v. Hahn*, 56 F.3d 1128, 1129 n. 1 (9th Cir. 1995).

"A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right." *Munaf v. Geren,* 553 U.S. 674, 689 (2008) (cleaned up). Plaintiff must make a "clear showing" that: (1) he is likely to succeed on the merits; (2) in the absence of a PI, he would likely suffer irreparable harm; (3) the balance of equities tips in his favor; and (4) a PI is in the public interest. Fed R. Civ. P. 65(b)(1); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Where the government is a party, the balance of equities factor merges with the public interest factor. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

## IV.    ARGUMENT

### A.    This Court Lacks Jurisdiction

#### 1.    Plaintiff Fails to Establish Constitutional Standing and Ripeness

To bring a pre-enforcement challenge, Plaintiff must show a "*genuine* threat of *imminent*" enforcement. *San Diego Cnty. Gun Rts. Comm. v. Reno*, 98 F.3d 1121, 1126-27 (9th Cir. 1996) (cleaned up). The Ninth Circuit looks at three factors to evaluate whether a threat is genuine: (1) whether Plaintiff has a "concrete plan" to violate the law; (2) "whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings," and (3) "the history of past prosecution or enforcement under the challenged statute." *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc).

This case does not meet any of the three factors. *First*, Plaintiff has not alleged or attested to a concrete plan. Rather, he has asserted "some day intentions" to violate the SOGICE Law. *See Thomas*, 220 F.3d at 1140 (cleaned up). He claims he has practiced SOGICE and intends to do so in the future, but he has not provided the kind of specific details the Ninth Circuit

DEFENDANTS' MOTION TO DISMISS AND OPPOSITION TO PLANTIFF'S MOTION FOR PRELIMINARY INJUNCTION NO.  3:21-cv-05359-RJB

8

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

requires—the what, where, and when.[4] *See, e.g.*, *id.* at 1139. For example, Plaintiff claims to be providing counseling to minors with the goal of reducing or eliminating same-sex attraction. Tingley Decl. ¶ 57. In the abstract, this could constitute unprofessional conduct. But these generic representations are insufficient to show a concrete plan to actually violate the SOGICE Law. For example, Plaintiff describes an "older teen" (who may have been over 18) that he counseled, at an unspecified time in "recent years," about same-sex attraction stemming from pornography use. *Id.* ¶¶ 58–63. He implies that his counseling on same-sex attraction has generally focused on the use of pornography. *Id.* ¶ 63. Therefore, whether his counseling violated the SOGICE Law depends not only on the year(s) in which it occurred and the age(s) of the patient(s), but also on the actual goal of the therapy. If Plaintiff's practice is to counsel minor patients to reduce or eliminate pornography use regardless of their sexual orientation, such counseling would not, on its own, be an "effort[] to eliminate or reduce sexual or romantic attractions or feelings toward individuals of the same sex." Wash. Rev. Code § 18.130.020(4)(a).

Plaintiff's other assertions are similarly insufficient to establish a "concrete plan." For example, he describes counseling one patient on gender identity issues, but the facts he provides do not show that the goal was identity change. Tingley Decl. ¶¶ 38, 45 (suggesting ambiguity about how the patient identified); Compl. ¶¶ 109–16; *id.* ¶ 79 ("Mr. Tingley's approach is to support the minor in *his or her own* personal exploration and development." (emphasis added)); *cf.* Wash. Rev. Code § 18.130.020(4)(b) (facilitation of "identity exploration and development" is not conversion therapy). The problem with Plaintiff's lack of a "concrete plan" is not due to ambiguity in the law itself. Rather, Plaintiff fails to provide sufficient details about conduct he has allegedly taken, or plans to take, to concretely show an intent to violate the SOGICE Law.

Plaintiff's speculation that he once lost a client due to parental concern about the SOGICE Law, also cannot support standing. *See* Compl. ¶ 121. "[W]here a causal relation

---

[4] That information about specific minor patients of his may be confidential is of no import. Investigations of unprofessional conduct arise from specific complaints. *See* O'Neill Decl. ¶ 10. That no complaint has been filed against Plaintiff, and no investigation initiated, shows that any enforcement threat is speculative.

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLANTIFF'S
MOTION FOR PRELIMINARY
INJUNCTION
NO.  3:21-cv-05359-RJB

9

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

between injury and challenged action depends upon the decision of an independent third party . . . standing . . . is ordinarily substantially more difficult to establish" and requires a showing "that third parties will likely react in predictable ways." *California v. Texas*, No. 19-1019, 2021 WL 2459255, at *7 (U.S. June 17, 2021) (cleaned up). Plaintiff's allegations do not establish that he engaged in SOGICE, that he lost any clients due to the SOGICE Law, or, even if he had lost a single client, that other parents would react similarly to the law.

Nor is Plaintiff's generalized suggestion that his speech or conduct will be chilled sufficient to establish standing or ripeness. *See* Compl. ¶¶ 178–180. "Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *San Diego Cnty.*, 98 F.3d at 1129 (cleaned up).

*Second*, Plaintiff does not allege that any official has made a "specific threat" to enforce Washington's SOGICE Law against him or anyone else. *Thomas*, 220 F.3d at 1140. A "specific threat" means more than that a "proscriptive statute" is on the books. *Id.* at 1139-40. Plaintiff must at least allege a "specific threat of enforcement" that was "directed toward" him. *Id.* at 1140; *San Diego Cnty.*, 98 F.3d at 1127; *Gibson v. City of Vancouver*, No. 3:20-CV-06162BHS, 2020 WL 7641202, at *3 (W.D. Wash. Dec. 23, 2020). He has not done so.

*Third*, Plaintiff fails to allege a single example showing a history of enforcement against him, or anyone else, for violating Washington's SOGICE Law. The State's evidence shows that there is no past or pending enforcement action against any licensee. *See* O'Neill Decl. ¶ 9.

Plaintiff's allegations fail to establish constitutional standing or ripeness.

### 2.    Plaintiff Lacks Third-Party Standing

Plaintiff also lacks standing to raise free speech (Count II) or free exercise (Count V) claims based on the interests of minors who are not parties to this litigation. A plaintiff seeking third-party standing must demonstrate: (1) an injury-in-fact; (2) a close relationship between the litigant and the person whose right he seeks to assert; and (3) a hindrance to the third party's ability to protect his or her own interests. *Powers v. Ohio*, 499 U.S. 400, 410-11 (1991).

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLANTIFF'S
MOTION FOR PRELIMINARY
INJUNCTION
NO.  3:21-cv-05359-RJB

10

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    "[F]ederal courts must hesitate" before reaching the merits of such claims. *Coal. of Clergy,*

2    *Laws., & Professors v. Bush*, 310 F.3d 1153, 1164 (9th Cir. 2002) (cleaned up).

3          At a minimum, Plaintiff fails to meet the third prong because his clients are not hindered

4    in their ability to represent their own interests. Plaintiff argues that it is hard for his clients to

5    "step forward to protect their own constitutional rights" because the subject matter involves

6    intimate, difficult, or embarrassing concerns. Compl. ¶ 212. Courts considering similar laws

7    have denied third-party standing based on similarly conclusory allegations. *See, e.g.*, *Doyle v.*

8    *Hogan*, No. CV DKC 19-0190, 2019 WL 3500924, at *9 (D. Md. Aug. 1, 2019), *vacated on*

9    *other grounds by Doyle v. Hogan*, No. 19-2064, 2021 WL 2424800, at *1 (4th Cir.

10   June 15, 2021); *King v. Governor of the State of New Jersey*, 767 F.3d 216, 244 (3d Cir. 2014),

11   *cert. denied*, 135 S. Ct. 2048 (2015), *called into doubt on other grounds by Nat'l Inst. of Fam.*

12   *& Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2371 (2018). Like the plaintiffs in *Doyle* and *King*,

13   Plaintiff offers only generalized statements about his clients' difficulties. He fails to allege

14   specifics to establish their purported fear.

15         Moreover, as noted in the *Doyle* and *King* decisions, minor clients challenging similar

16   laws were able to file suit pseudonymously in both *Pickup*, 728 F.3d 1042, and *Doe v. Christie*,

17   33 F. Supp. 3d 518 (D.N.J. 2014). *See King*, 767 F.3d at 244; *Doyle*, 2019 WL 3500924, at *9

18   (and decisions cited therein). As relevant here, pseudonymous filing is appropriate "when

19   identification creates a risk of retaliatory or physical harm" or "when anonymity is necessary to

20   preserve privacy in a matter of sensitive and highly personal nature." *Does I thru XXIII v.*

21   *Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000). As in *Pickup*, minor clients would

22   be able to challenge the SOGICE Law under a pseudonym.

23         Plaintiff lacks third-party standing, and Counts II and V must be dismissed on this basis.

24

25

26

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLANTIFF'S
MOTION FOR PRELIMINARY
INJUNCTION
NO.  3:21-cv-05359-RJB

11

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

**3.      Plaintiff's Claims Do Not Satisfy Prudential Ripeness, Either**

Plaintiff also cannot establish prudential ripeness. *See Colwell v. Dep't of Health & Hum. Servs.*, 558 F.3d 1112, 1123 (9th Cir. 2009). The standard is whether the claims are fit for judicial decision and whether withholding consideration will cause hardship. *Id.* at 1124.

As to the first prudential ripeness prong, "[a] claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126 (9th Cir. 2009) (cleaned up). Plaintiff's claims require further factual development. They depend almost entirely on how the law might be applied to Plaintiff, and his vague and speculative allegations make this impossible to predict. *See* Compl. at 59–60; *supra* at 8–10; *see also, e.g., id.* ¶ 223 (speculating based on language pulled out of context from non-binding report issued by another agency in 2014).

As to the second prong, "[t]o meet the hardship requirement, a litigant must show that withholding review would result in direct and immediate hardship and would entail more than possible financial loss." *Stormans*, 586 F.3d at 1126 (cleaned up). *First*, Plaintiff has not established that he has actually engaged in SOGICE or that he has concrete plans to do so. Therefore, he cannot show that the law requires him to change his conduct. *See id. Second*, he has not alleged that his practice depends, even in part, on his ability to engage in SOGICE. Again, harms caused by independent third-party decisions are typically not cognizable. *See California*, 2021 WL 2459255, at *7. *Third*, given that the SOGICE Law only provides for professional sanctions, that Plaintiff has not sought any guidance from DOH about his intended conduct, and the lack of any alleged enforcement history, Plaintiff cannot establish hardship from any threat of enforcement. *See Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148-49 (1967) (ripeness protects agencies "from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties").

Plaintiff's claims are not prudentially ripe. This Court should not accept jurisdiction.

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLANTIFF'S
MOTION FOR PRELIMINARY
INJUNCTION
NO.  3:21-cv-05359-RJB

12

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

**B.      Plaintiff Fails to State a Claim on Which Relief Can be Granted[5]**

**1.      Plaintiff's Free Speech Claims Fail**

**a.      The Ninth Circuit's *Pickup* Decision Controls**

In *Pickup v. Brown*, the Ninth Circuit squarely addressed the same free speech issue raised here. *See* 740 F.3d at 1225-32. *Pickup* concerned California's professional prohibition on Sexual Orientation Change Efforts (California SOCE Law, or SOCE Law; Cal. Bus. & Prof. Code §§ 865, 865.1, and 865.2.). 740 F.3d at 1222-23, 1234. This law was—and is—functionally identical to Washington's SOGICE Law. *See id.*

California's SOCE Law states that the practice of SOCE on a patient under 18 is not permitted under California's Business and Professions Code and may subject a provider to professional discipline. Cal. Bus. & Prof. Code §§ 865.1–.2. Under that law's definitions:

> "Sexual orientation change efforts" means any practices by mental health providers that seek to change an individual's sexual orientation. This includes efforts to change behaviors or gender expressions, or to eliminate or reduce sexual or romantic attractions or feelings toward individuals of the same sex.

*Id.* § 865(b)(1).

> "Sexual orientation change efforts" does not include psychotherapies that: (A) provide acceptance, support, and understanding of clients or the facilitation of clients' coping, social support, and identity exploration and development, including sexual orientation-neutral interventions to prevent or address unlawful conduct or unsafe sexual practices; and (B) do not seek to change sexual orientation.

*Id.* § 865(b)(2).

The Ninth Circuit recognized that the California SOCE Law does not do any of the following:

- Prevent mental health providers from communicating with the public about SOCE
- Prevent mental health providers from expressing their views to patients, whether children or adults, about SOCE, homosexuality, or any other topic

---

[5] For purposes of its Motion to Dismiss, the State does not rely on any materials other than Plaintiff's filings and materials, such as legislative facts, that are properly subject to judicial notice. *See supra* n.1.

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLANTIFF'S
MOTION FOR PRELIMINARY
INJUNCTION
NO. 3:21-cv-05359-RJB

13

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

- Prevent mental health providers from recommending SOCE to patients, whether children or adults
- Prevent mental health providers from administering SOCE to any person who is 18 years of age or older
- Prevent mental health providers from referring minors to unlicensed counselors, such as religious leaders
- Prevent unlicensed providers, such as religious leaders, from administering SOCE to children or adults
- Prevent minors from seeking SOCE from mental health providers in other states

*Pickup*, 740 F.3d at 1223. Washington's SOGICE Law does not do any of these things, either.

*Pickup* held that no heightened First Amendment scrutiny applied to the SOCE Law because it regulates conduct, not speech. *Id.* at 1225, 1229. The court found that the law only "bans a form of treatment for minors; it does nothing to prevent licensed therapists from discussing the pros and cons of SOCE with their patients." *Id.* at 1229. Regulation of professional conduct is a valid exercise of police power, *id.*, and "the First Amendment does not prevent a state from regulating treatment even when that treatment is performed through speech alone." *Id.* at 1230. Thus, the SOCE Law was "subject to only rational basis review and must be upheld if it bears a rational relationship to a legitimate state interest." *Id.* at 1231. The Ninth Circuit recognized California's interest in protecting the health of minors. *Id.* And, citing evidence similar to what is on the public record here, it "[had] no trouble concluding" that the California legislature rationally relied on the professional consensus on SOCE. *See id.* at 1231-32.

*Pickup* is indistinguishable, so it controls. Because the SOGICE Law only regulates conduct, no heightened scrutiny applies. "On rational basis review, the State carries a light burden, as '[l]egislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data.'" *Erotic Serv. Provider Legal Educ. & Rsch. Project v. Gascon*, 880 F.3d 450, 457 (9th Cir. 2018), *amended*, 881 F.3d 792 (9th Cir. 2018) (quoting *F.C.C. v. Beach Communications*, 508 U.S. 307, 315 (1993)). Because the SOGICE Law is not meaningfully different from California's law, *Pickup*'s application of

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLANTIFF'S
MOTION FOR PRELIMINARY
INJUNCTION
NO.  3:21-cv-05359-RJB

14

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

rational basis review controls as well. But the Washington Legislature also considered evidence of "scientifically credible proof of harm" on minors from SOGICE, *cf. Pickup*, 740 F.3d at 1223, including numerous academic studies and professional reports. *See supra* at pp. 5–6; Selby Decl., Exs. B–E. These legislative materials overwhelming support the law.

**b.   The Supreme Court Has Not Altered *Pickup*'s Controlling Status**

**(1)   *Nat'l Inst. of Fam. & Life Advocs. (NIFLA) v. Becerra***

Plaintiff argues that "the logic of *Pickup* has since been rejected by the Supreme Court" in the 5-to-4 decision in *NIFLA*, 138 S. Ct. 2361 (2018). PI Mot. at 7–8. He is wrong.

*NIFLA* addressed a First Amendment challenge to a California law ("Notice Law") requiring that licensed facilities offering pregnancy or family planning services post affirmative notices informing patients that subsidized reproductive health care services were available from the state. 138 S. Ct. at 2368-69. The Ninth Circuit upheld the law, but the Supreme Court reversed. *Id.* at 2370. In contrast to the SOCE Law examined by *Pickup*, the Ninth Circuit's opinion in *NIFLA* did *not* determine that the Notice Law only regulated conduct as opposed to speech. *See Nat'l Inst. of Fam. & Life Advocs. v. Harris*, 839 F.3d 823, 834 (9th Cir. 2016). Instead, the Ninth Circuit held that the Notice Law regulated—indeed, compelled—the content of speech. *Id.* at 835-36. The Ninth Circuit held that, as a viewpoint neutral regulation of professional speech, intermediate scrutiny applied. *Id.* at 834-35.

The Supreme Court reversed the Ninth Circuit's holding and questioned its application of lesser scrutiny to "professional speech." *NIFLA*, 138 S. Ct. at 2371-76. Notably, it agreed with the Ninth Circuit that the Notice Law was not a regulation of professional *conduct*, reasoning that the required notice was "not tied to a [medical] procedure at all." *Id.* at 2373. But, under the particular facts of the case, the Supreme Court held that the Notice Law's content-based

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLANTIFF'S
MOTION FOR PRELIMINARY
INJUNCTION
NO. 3:21-cv-05359-RJB

15

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

regulation could not survive even intermediate scrutiny because it was not sufficiently tailored to achieve California's asserted interest. *Id.* at 2375.[6]

*NIFLA* did question some of the dicta in *Pickup*. In particular, the Court rejected the Ninth Circuit's conclusion that there was "a persuasive reason"—at that time—"for treating professional *speech* as a unique category that is exempt from ordinary First Amendment principles." 138 S. Ct. at 2375 (emphasis added); *see id.* at 2371-72. *But see id.* at 2375 ("We do not foreclose the possibility that some such reason exists"). But the Court did not alter—rather, it recognized and upheld—the central legal principle relied upon by *Pickup*: that "States may regulate professional *conduct*, even though that conduct incidentally involves speech." *NIFLA*, 138 S. Ct. at 2372 (emphasis added); *see Pickup*, 740 F.3d at 1229; *Doyle*, 411 F. Supp. 3d at 345 n.1 (recognizing that *NIFLA* did not affect *Pickup* on this point).[7] The Supreme Court cited some of the same authorities as the Ninth Circuit in support of this principle, including the joint opinion in *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 884 (joint opinion of O'Connor, Kennedy, and Souter, JJ.). *See NIFLA*, 138 S. Ct. at 2372; *Pickup*, 740 F.3d at 1231. *Casey* upheld an informed consent requirement in the context of abortions. 505 U.S. at 885. *NIFLA* distinguished *Casey* on the ground that California's Notice Law was not tied to any particular treatment and instead "applie[d] to all interactions between a covered facility and its clients." 138 S. Ct. at 2373.

### (2)   *NIFLA* is Not "Clearly Irreconcilable" with *Pickup*

*NIFLA* did not overrule the central holding of *Pickup*: that the California SOCE Law is constitutionally sound because it regulates professional conduct, not speech. To the contrary,

---

[6] *NIFLA* also considered a separate requirement that *unlicensed* facilities providing pregnancy-related services post a notice regarding their lack of a license. 138 S. Ct. at 2370. The Ninth Circuit decision below had not decided whether this requirement regulated professional speech, because the court concluded that the requirement would satisfy strict scrutiny. *Harris*, 839 F.3d at 843. But the Supreme Court reversed, holding that the unlicensed notice requirement did not satisfy even the deferential standard applicable to commercial disclosures required under *Zauderer v. Off. of Disciplinary Couns. of Supreme Ct. of Ohio*, 471 U.S. 626 (1985). *NIFLA*, 138 S. Ct. at 2370. The instant case does not implicate compelled commercial speech, and so the part of *NIFLA* concerning the unlicensed notice requirement is not relevant here.

[7] *Doyle* held that Maryland's analogous minor conversion therapy law was a regulation of conduct. 411 F. Supp. 3d at 345. It applied intermediate scrutiny based on circuit precedent. *See id.* at 346.

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLANTIFF'S
MOTION FOR PRELIMINARY
INJUNCTION
NO. 3:21-cv-05359-RJB

16

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    *NIFLA* reinforced the doctrinal basis for *Pickup*'s result. *See id.* at 2372 ("States may regulate

2    professional conduct, even though that conduct incidentally involves speech."). As in *Casey*,

3    both the California SOCE Law and Washington's SOGICE Law apply to particular *treatments*

4    performed by licensed professionals. Neither "applies to all interactions between a covered

5    facility and its clients." *See id.* at 2373; *Pickup*, 740 F.3d at 1223 (listing all the areas the SOCE

6    Law does not regulate). Because there is no relevant distinction between the SOCE Law and

7    Washington's SOGICE Law, *Pickup* controls.

8           Binding Ninth Circuit authority dictates "when, if ever, a district court or a three-judge

9    panel is free to reexamine the holding of a prior panel in light of an inconsistent decision by a

10   court of last resort on a closely related, but not identical issue." *Miller v. Gammie*, 335 F.3d 889,

11   899 (9th Cir. 2003); *Lair v. Bullock,* 697 F.3d 1200, 1206 (9th Cir. 2012). Under this authority,

12   *Pickup* may only be reexamined by this Court if *NIFLA* "undercut the theory or reasoning

13   underlying [it] in such a way that the cases are clearly irreconcilable." *Miller*, 335 F.3d at 900.

14   This is a "high standard." *Lair*, 697 F.3d at 1207 (cleaned up). "It is not enough for there to be

15   'some tension' between the intervening higher authority and prior circuit precedent, or for the

16   intervening higher authority to 'cast doubt' on the prior circuit precedent." *Id.* (cleaned up). This

17   Court remains bound by "prior [Ninth Circuit] precedent if it can be reasonably harmonized with

18   the intervening authority." *Id.* at 1206; *cf. Murray v. Mayo Clinic*, 934 F.3d 1101, 1106 (9th Cir.

19   2019), *cert. denied*, 140 S. Ct. 2720 (2020) *(Miller*'s *"*clearly irreconcilable" standard satisfied

20   where Supreme Court "directly contradict[ed] the textual reasoning" underlying prior holding).

21   Significant analytical or factual distinctions between a prior panel decision and an intervening

22   decision weigh against a "clearly irreconcilable" finding. *Gresham v. Picker*, 214 F. Supp. 3d

23   922, 933 (E.D. Cal. 2016), *aff'd*, 705 F. App'x 554 (9th Cir. 2017). Taken together, these

24   authorities recognize that, absent a direct and clear contradiction going to the specific holding at

25   issue, it is up to the Ninth Circuit to overrule its own precedents, through en banc proceedings

26   or after direct reversal by the U.S. Supreme Court.

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLANTIFF'S
MOTION FOR PRELIMINARY
INJUNCTION
NO.  3:21-cv-05359-RJB

17

1    Plaintiff has not met the *Miller* standard. There is a major analytic difference between

2    the cases: *NIFLA* examined a regulation of professional speech; *Pickup*, professional conduct.

3    With respect to the latter, the Supreme Court did not shift its jurisprudence in *NIFLA*; instead it

4    reinforced the same line of cases relied upon by *Pickup*. *See NIFLA*, 138 S. Ct. at 2373 ("While

5    drawing the line between speech and conduct can be difficult, this Court's precedents have long

6    drawn it[.]"). *Pickup* easily harmonizes with *NIFLA*. The Supreme Court merely questioned the

7    Ninth Circuit's dicta that professional *speech* receives less First Amendment protection; it did

8    not alter the law concerning the regulation of professional *conduct*. Finally, the cases obviously

9    present different factual scenarios. Therefore, not only is *Pickup*'s central holding with respect

10   to the SOCE Law not irreconcilable with *NIFLA*, it is not even in tension.

11   This point is underscored by the result of *Pickup* plaintiff's motion to recall the Ninth

12   Circuit's mandate in light of *NIFLA*. The *Pickup* panel denied the motion and implied that the

13   standard for recall was not met. Case No. 12-17681, 2018 WL 11226270 (9th Cir. Nov. 6,

14   2018).[8] The *Pickup* plaintiff then petitioned the Supreme Court for certiorari, arguing that *NIFLA*

15   abrogated the panel's decision. *See* Pet. for Writ of Cert. at i., *Pickup v. Newsom*, No. 18-1244,

16   2019 WL 1380186 (U.S. Mar. 21, 2019). The Supreme Court denied certiorari with no noted

17   dissent. *Pickup v. Newsom*, 139 S. Ct. 2622 (2019). Less than a month earlier, the Supreme Court

18   denied certiorari in a challenge to the Third Circuit's refusal to recall the mandate in a similar

19   case involving the regulation of SOCE, *King*, 767 F.3d at 222. *See King v. Murphy*, 139 S. Ct.

20   1567 (Apr. 15, 2019). In short, if the Ninth Circuit believed *Pickup* required reconsideration, it

21   could have recalled the mandate in that case. That it did not do so strengthens the conclusion that

22   its holding remains controlling precedent.

23   Finally, Plaintiff cites the Eleventh Circuit's split decision in *Otto v. City of Boca Raton,*

24   *Fla.*, 981 F.3d 854 (11th Cir. 2020). Unlike *Pickup*, *Otto* is not binding. In *Otto*, the

25

26   [8] The Ninth Circuit had previously recalled a mandate where the panel decision conflicted with a subsequent decision of the Supreme Court. *See, e.g.*, *Zipfel v. Halliburton Co.*, 861 F.2d 565, 567 (9th Cir. 1988).

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLANTIFF'S
MOTION FOR PRELIMINARY
INJUNCTION
NO. 3:21-cv-05359-RJB                                    18                    ATTORNEY GENERAL OF WASHINGTON
                                                                                Complex Litigation Division
                                                                                800 5th Avenue, Suite 2000
                                                                                Seattle, WA 98104-3188
                                                                                (206) 464-7744

1    Eleventh Circuit held that local prohibitions on minor conversion therapy directly regulated

2    speech and not merely conduct. *Id.* at 865. *But cf. id.* ("The local governments are not entirely

3    wrong when they characterize speech-based SOCE as a course of conduct."). The Eleventh

4    Circuit conducted its own analysis of that issue, demonstrating that it did not believe it was

5    bound by *NIFLA*, which further underscores that *Pickup* controls in this case. *See Otto*, at 862-65;

6    *cf. id.* at 867-68.

7         But *Otto* was also wrongly decided and a petition for en banc review is pending, *See id.*,

8    *petition for reh'g en banc filed*, (Dec. 11, 2020). SOGICE laws regulate a *practice* defined by

9    specific intended outcomes. Those outcomes are not in the realm of abstract ideas: they are

10   essentially health-related treatments—many involving invasive physical tactics, such as

11   revulsion therapy and electro-shock therapy, *see supra* § II.A—designed to induce concrete

12   changes in mental health and behaviors, including, but not limited to, gender expression or sexual

13   attraction. It is well within a state's authority to regulate conduct—including conduct that could

14   occur through speech—that aims to produce a medical-behavioral outcome, as opposed to a mere

15   change in ideas. *See, e.g.*, *Branom v. State*, 974 P.2d 335, 339 (1999) (term "health care" in

16   Washington statute includes "medical advice regarding the diagnosis and recommended course

17   of treatment"). And regulation of conduct that affects public health, in particular, is a core area

18   of traditional state concern. *See, e.g.*, *Gonzales v. Oregon*, 546 U.S. 243, 270-71 (2006).

19        The *Otto* majority attempted a slippery slope argument, suggesting that events like

20   protests, debates, or book clubs cannot be distinguished.[9] *Otto*, 981 F.3d at 865. But they can,

21   easily. Those activities are "inherently expressive." *See, e.g.*, *Rumsfeld v. F. for Acad. &*

22   *Institutional Rts., Inc.*, 547 U.S. 47, 66 (2006). That is, they are intrinsically directed toward the

23   expression of ideas, in contrast to the treatment of a disease or condition by a state-licensed

24   _____

25        [9] *Otto* also suggests that there is no distinction with "teaching." 981 F.3d at 865. For one thing, regulation
     of teaching implicates the First Amendment much more directly than public health regulations. *See, e.g.*, *Regents
     of the Univ. of Cal. v. Bakke*, 438 U.S. 265, 312 (1978). For another, state regulation of teaching, even in private

26   schools, is permitted under the Constitution, if done in a reasonable and viewpoint-neutral manner. *See, e.g.*, *Pierce
     v. Soc'y of the Sisters*, 268 U.S. 510 (1925); *Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1204 (9th Cir. 2005).

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLANTIFF'S
MOTION FOR PRELIMINARY
INJUNCTION
NO.  3:21-cv-05359-RJB

19

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

practitioner. Of course, inherently expressive activities may be oriented to concrete changes (an anti-war protest seeking to end a war, for example), but this occurs in the context of a free exchange of ideas in which no speaker's viewpoint is given the imprimatur of a state license. By contrast, the regulation of health professions takes place in an entirely different context, one in which a desired *outcome*—behavioral or physical—strongly predominates over any expressive element, and in which a state-licensed expert occupies a position of trust and verified proficiency. *Cf. Pickup*, 740 F.3d at 1228 ("When professionals, by means of their state-issued licenses, form relationships with clients, the purpose of those relationships is to advance the welfare of the clients, rather than to contribute to public debate.").

Ultimately, if a licensed professional such as Plaintiff represents himself as a health care provider and benefits from the State's regulatory regime, the State may seek to ensure that he is offering therapies aimed at actually promoting "health," rather than ones that cause harms to minors according to available research and relevant professional organizations.

*Pickup* was correctly decided, and it controls. Plaintiff's allegations fail to show that the SOGICE Law does not meet rational basis review.

        **c.**      **In the Alternative, the SOGICE Law Meets Intermediate Scrutiny**

Should the Court conclude that *Pickup* is not controlling and that some form of heightened scrutiny is appropriate, the Court should apply intermediate scrutiny to Plaintiff's free speech claim. Under this standard, the defendant must show "a substantial state interest," that the law is "sufficiently drawn" to protect. *See Becerra*, 138 S. Ct. at 2375.

The Third Circuit in *King* applied intermediate scrutiny to uphold New Jersey's statute prohibiting licensed counselors from engaging in SOCE on minors (N.J. Stat. Ann. § 45:1–55). *See* 767 F.3d at 238-40.[10] This standard would also be consistent with the district court's post-

---

[10] The Third Circuit reasoned that a licensed professional's speech warranted lesser First Amendment protection "when it is used to provide personalized services to a client based on the professional's expert knowledge and judgment." 767 F.3d at 232. At this point, the State does not express an opinion on how *NIFLA* affects the Third Circuit's path to intermediate scrutiny, though the State acknowledges that *NIFLA* cast doubt on that reasoning.

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLANTIFF'S
MOTION FOR PRELIMINARY
INJUNCTION
NO.  3:21-cv-05359-RJB

20

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

*NIFLA* decision in *Doyle v. Hogan*, 411 F. Supp. 3d 337, *vacated on other grounds by Doyle v. Hogan*, No. 19-2064, 2021 WL 2424800, at *1 (4th Cir. June 15, 2021)[11], which addressed Maryland's law prohibiting professional conversion therapy on a minor. *See* Md. Code Ann., Health Occ. § 1–212.1. Unlike *King*, which determined that New Jersey's law directly regulated professional speech, *Doyle* held that Maryland's SOGICE law "land[ed] on the conduct end of the sliding scale" between speech and conduct. *Doyle*, 411 F. Supp. 3d at 345. Further, under Fourth Circuit precedent, intermediate scrutiny was the appropriate standard of review for "conduct regulations that incidentally impact speech." *Id.* at 346 (cleaned up).[12] Applying this standard, *Doyle* upheld Maryland's law on a record similar to the one presented in this case. *Id.* at 346-48. (As noted, the court's decision was recently vacated on jurisdictional grounds.)

The SOGICE Law easily meets intermediate scrutiny. *See, e.g.*, *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557, 563-64 (1980). *First*, the Supreme Court has recognized that states have a compelling interest in protecting the health and safety of minors, as well as broad power to regulate the practice of professions. *Sable Commc'ns of Cal., Inc. v. F.C.C.*, 492 U.S. 115, 126 (1989)); *New York v. Ferber*, 458 U.S. 747, 756–57 (1982); *Goldfarb v. Va. State Bar*, 421 U.S. 773, 792 (1975). The State has a separate "weighty" interest in affirming the dignity and equal worth and treatment of LGBT people. *Fulton v. City of Philadelphia, Pa.*, No. 19-123, 2021 WL 2459253, at *9 (U.S. June 17, 2021) (quoting *Masterpiece Cakeshop, Ltd. v. Colorado C.R. Comm'n*, 138 S. Ct. 1719, 1727 (2018).

*Second*, the SOGICE Law advances these interests. As in Maryland, the Washington Legislature relied on the robust findings and statements of credible research and professional organizations "to conclude that conversion therapy has negative effects on minors." *Doyle*, 411 F. Supp. 3d at 346; *see supra* at pp. 5–6. Practicing conversion therapy on minors could seriously

---

[11] The Fourth Circuit held that the plaintiff in *Doyle* sued the wrong defendants and therefore did not reach the First Amendment issues. 2021 WL 2424800, at *1.

[12] The plaintiff in *Doyle* also made a similar argument that *NIFLA* abrogated *Pickup*. The *Doyle* court rejected this argument, explaining that the Supreme Court's decision in *NIFLA* "did not proscribe a finding that conversion therapy qualifies as professional conduct." 411 F. Supp. 3d at 345 n.1.

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLANTIFF'S
MOTION FOR PRELIMINARY
INJUNCTION
NO. 3:21-cv-05359-RJB

21

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1   harm their emotional and physical health. Thus, "prohibiting the practice of conversion therapy

2   on minors would abate the harmful outcomes caused by conversion therapy." *Doyle*, 411

3   F. Supp. 3d at 346, and the "[the SOGICE Law] directly advances [Washington]'s goal of

4   protecting minors." *Id.* at 347.

5        *Finally*, the SOGICE Law is not broader than necessary to serve the State's interests. As

6   in *Pickup*, *King*, and *Doyle*, the law prohibits only professional conduct that the Legislature

7   found to be harmful. It affects only licensed providers who treat minors. It does not limit

8   Plaintiff's right to advocate for SOGICE or for the repeal of any statute. Nor does it limit his

9   ability to engage in SOGICE with adults, his right to discuss his personal opinions with clients,

10  or his right to engage in counseling solely in a pastoral or religious capacity.

11               **d.     In the Alternative, the SOGICE Law Meets Strict Scrutiny**

12       The law would also meet strict scrutiny because it addresses a compelling interest, is

13  neither content nor viewpoint based, is narrowly tailored, and is the least-restrictive alternative.

14  *See Sable Commc'ns*, 492 U.S. at 126.

15       *First*, the SOGICE Law identifies the State's compelling interest in "protecting the

16  physical and psychological well-being of minors" and "protecting its minors against exposure to

17  serious harms caused by conversion therapy." SB 5722 § 1(2). The Supreme Court has

18  repeatedly recognized that "[t]here is a compelling interest in protecting the physical and

19  psychological well-being of minors." *Sable Comm'ns*, 492 U.S. at 126; *see, e.g.*, *Ferber*, 458

20  U.S. at 757; *FCC v. Pacifica Found.*, 438 U.S. 726, 749-50 (1978). The State also has a

21  "compelling interest in the practice of professions within their boundaries." *Goldfarb*, 421 U.S.

22  at 792. The law reflects research findings showing that the practice is ineffective and harmful to

23  children. *See supra* at pp. 5–6. In addition to its consideration of public health authorities and

24  professional consensus, the Legislature was aware that many other states and cities have

25  restricted SOGICE, and that courts recognize that such prohibitions protect public health. *See*

26  Selby Decl., Ex. C at 3; *see also Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 628 (1995) (noting

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLANTIFF'S
MOTION FOR PRELIMINARY
INJUNCTION
NO.  3:21-cv-05359-RJB

22

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

that the Court has "permitted litigants to justify speech restrictions by reference to studies and anecdotes pertaining to different locales altogether" or even "based solely on history, consensus, and simple common sense" (cleaned up)); *King*, 767 F.3d at 238 (legislatures may "rely on the empirical judgments of independent professional organizations that possess specialized knowledge and experience concerning the professional practice under review, particularly when this community has spoken with such urgency and solidarity on the subject"). The Legislature reasonably restricted professional SOGICE to protect youth from serious harms, including a significantly increased risk of depression and suicide.

*Second*, the SOGICE Law is narrowly tailored. It regulates the practice of conversion therapy on minors and only applies to licensed practitioners. As demonstrated by its careful exceptions and limitations for speech and religious activity, the law is targeted squarely at a professional health therapy known to be ineffective and dangerous. *See Pickup*, 740 F.3d at 1223-24.

*Third*, the law is the least-restrictive alternative. Limiting the law to aversive therapy would not adequately protect minors. Research and reports considered and cited by the Legislature emphasized the importance of supportive therapy without a predetermined outcome to avoid the risk of harm from conversion therapy. *See* Glassgold Decl., Ex. B at v, 80; *id.*, Ex. C at 11; Selby Decl., Ex. D at 7; *id.*, Ex. C at 3. The restriction on all minor SOGICE by licensees furthers the State's compelling interest in protecting minors. *See supra*, pp. 5–6.

*Finally*, and relatedly, Plaintiff makes the conclusory allegation that the law is unconstitutionally overbroad because it extends beyond "particular physical or pharmaceutical practices." Compl. ¶ 202. This argument fails for the reason given in the preceding paragraph. Any facial overbreadth challenge would be particularly inappropriate as Plaintiff alleges no factual scenario showing how the scope of the law "threatens others not before the court." *Bd. of Airport Comm'rs v. Jews for Jesus, Inc.*, 482 U.S. 569, 574 (1987) (cleaned up).

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLANTIFF'S
MOTION FOR PRELIMINARY
INJUNCTION
NO. 3:21-cv-05359-RJB

23

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1

### 2.    Plaintiff's Due Process Claim Fails

2

The SOGICE Law is also not impermissibly vague, as a matter of law.

3

*First*, Plaintiff's due process claim is a facial, not as-applied, challenge. *See, e.g.*, Compl.

4

at 58. But he cannot make this challenge because, as a general rule, "[v]agueness challenges to

5

statutes that do not involve First Amendment violations must be examined as applied to the

6

defendant." *Kashem v. Barr*, 941 F.3d 358, 375 (9th Cir. 2019) (cleaned up). Here, as discussed

7

above, binding authority holds that the SOGICE Law does not significantly implicate the First

8

Amendment. An exception to rule described in *Kashem* only exists in rare cases—for example,

9

where the statute might be vague as applied to the challenger, or where the statute does not lend

10

itself to an as-applied challenge. *Id.* at 376-77. Neither circumstance is present here. Plaintiff has

11

expressly indicated he is not making an as-applied challenge. And Plaintiff's "straightforward

12

vagueness challenge" does not present any "exceptional circumstances" that might preclude an

13

as-applied challenge. *See id.* at 377. Therefore, this claim fails at the first step.[13]

14

*Second*, even if Plaintiff could make a facial challenge to the law, it would be directly

15

precluded by *Pickup*, which held that California's indistinguishable SOCE Law is not vague as

16

a matter of law. 740 F.3d at 1233-34.

17

*Third*, even if *Pickup* somehow did not control, the claim still fails. To succeed on a facial

18

vagueness challenge to a business regulation, "the complainant must demonstrate that the law is

19

impermissibly vague in all of its applications." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests.,*

20

*Inc.*, 455 U.S. 489, 497 (1982); *see Monarch Content Mgmt. LLC v. Arizona Dep't of Gaming*,

21

971 F.3d 1021, 1030-31 (9th Cir. 2020) (upholding definition of "anticompetitive or deceptive

22

practice" that used standards-based language). The SOGICE Law is not vague in all of its

23

applications. For example, exposing a minor to heterosexual pornography in order to change

24

25

26

---

[13] Even if Plaintiff's Complaint could be construed to raise an as-applied challenge, the claim still fails. Though it is possible Plaintiff may be violating the SOGICE Law, an as-applied challenge is not yet ripe, for the reasons explained above. *See supra* at pp. 10, 12. Even if it were, the Court should conclude that the law is not vague because it only prohibits, in terms that are at least "reasonably clear," *see Hoffman Ests.*, 455 U.S. at 505, those therapies directly aimed at *changing* a minor's gender identity or sexual orientation.

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLANTIFF'S
MOTION FOR PRELIMINARY
INJUNCTION
NO. 3:21-cv-05359-RJB

24

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    sexual orientation, or counseling a minor to wear certain clothes in order to change gender

2    identity, would clearly constitute unprofessional conduct under the law. *Cf.* Tingley Decl. ¶ 66.

3         *Fourth*, even if a more exacting version of the vagueness doctrine applied, the law would

4    meet it. The doctrine only requires fair notice and sufficient standards to guard against arbitrary

5    enforcement. *Kashem*, 941 F.3d at 369-70. The degree of vagueness permitted depends on the

6    nature of the enactment. *Id.* at 370. "[P]erfect clarity and precise guidance have never been

7    required even of regulations that restrict expressive activity." *Pickup*, 740 F.3d at 1233 (quoting

8    *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989)). The relevant inquiry is whether the

9    law is "so vague and indefinite as really to be no rule or standard at all," and whether "a person

10   of ordinary intelligence" would know whether his or her conduct runs afoul. *Fang Lin Ai v.*

11   *United States*, 809 F.3d 503, 514 (9th Cir. 2015). The standard of clarity is lower in a professional

12   context, where specialized knowledge is assumed. *Pickup*, 740 F.3d at 1234.

13        Here, to determine whether conduct by a health professional constitutes conversion

14   therapy, one need only ask: Is the goal of the regime to "change a[] [minor's] sexual orientation

15   or gender identity"? Wash. Rev. Code § 18.130.020(4)(a). If so, it is unprofessional conduct.[14]

16        *Pickup* recognized that the phrase "sexual orientation" has a commonly understood

17   meaning. 740 F.3d at 1234; *see also, e.g.*, *Masterpiece Cakeshop, Ltd.*, 138 S. Ct. at 1719;

18   *Obergefell v. Hodges*, 576 U.S. 644, 661 (2015). And as noted above, "gender identity" has a

19   generally understood meaning among health professionals, referring to an individual's deeply

20   felt sense of how they experience their own gender. *See, e.g.*, Glassgold Decl., Ex. C at 15

21   ("Gender identity refers to a person's deeply felt, inherent sense of being a girl, woman or

22   female; a boy, a man or male; a blend of male or female; or an alternative gender[.]"); *id.*, Ex. B

23

---

24       [14] Plaintiff suggests that the line for when a therapy seeks "change" is unclear. *E.g.*, Compl. ¶ 222. *First*,

25   this kind of very borderline issue could only be raised, if at all, in an as-applied challenge based on specific facts. *Second*, the law is not unclear. The common meaning of gender identity refers to a person's *own* sense of this identity. *See infra* at pp. 25–26. Therefore, efforts to help a minor come to terms with their own understanding, without loading the dice toward a particular externally-chosen identity, would be permitted. Efforts to steer a minor

26   into a particular identity that does not align with their own sense of identity, would not be.

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLANTIFF'S
MOTION FOR PRELIMINARY
INJUNCTION
NO.  3:21-cv-05359-RJB

25

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

at 14 n. 8 (similar).[15] Thus, in a recent case, eight justices of the Supreme Court signed on to opinions that referred to "sexual orientation" and "gender identity" as now-established terms. *See Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 1739 (2020); *id.* at 1758 (Alito, J., dissenting); *id.* at 1756 n.6 (noting that APA has defined "gender identity").

Plaintiff states that he has counseled minors on gender identity issues, and the phrase "gender identity" appears no less than 17 times in his declaration. *See* Tingley Decl. ¶ 19; *see generally id.* To paraphrase the Ninth Circuit, "it is hard to understand how therapists who identify themselves as [SOGICE] practitioners can credibly argue that they do not understand what practices qualify as [SOGICE]." *Pickup*, 740 F.3d at 1234. The terms in the law are "reasonably clear." *See Hoffman Ests.*, 455 U.S. at 505. To the extent Plaintiff has any confusion, he is assumed to have the ability "to clarify the meaning of the [law] by [his] own inquiry, or by resort to an administrative process," *id.* at 498. In sum, *Pickup* cannot be meaningfully distinguished, and, even if it could be, any facial vagueness challenge would fail.

### 3.    Plaintiff's Free Exercise Claims Fail

Like Plaintiff's other claims, his free exercise claims are foreclosed by binding authority. In *Welch v. Brown*, the same Ninth Circuit panel that decided *Pickup,* subsequently rejected a Free Exercise Clause challenge to California's SOCE Law. 834 F.3d 1041 (9th Cir. 2016), *as amended on denial of reh'g and reh'g en banc* (Oct. 3, 2016).

The Ninth Circuit recognized that the law only regulates conduct "*within the confines of the counselor-client relationship.*" *Id.* at 1044. The same is true here. The Legislature's intent was to regulate "the *professional* conduct of licensed health care providers." SB 5722 § 1(1) (2018) (emphasis added). Unlike California's law, the SOGICE Law even expressly exempts non-professional religious activity. *Id.* § 2(1)–(2); *Welch*, 834 F.3d at 1045. In *Welch*, California

---

[15] *See also, e.g., Webster's Online Dictionary* [*Webster's*], "gender identity," https://www.merriam-webster.com/dictionary/gender%20identity (last accessed June 17, 2021) (defining the term as "a person's internal sense of being male, female, some combination of male and female, or neither male nor female").

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLANTIFF'S
MOTION FOR PRELIMINARY
INJUNCTION
NO.  3:21-cv-05359-RJB

26

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

represented that its law would not apply to counselors "acting in their pastoral or religious capacity" who "don't hold themselves out as operating pursuant to their license." *Welch*, 843 F.3d at 1045. The SOGICE Law expressly provides this exemption, *see* SB 5722 § 2, but to the extent any uncertainty remains, Defendants represent that they interpret the law this way.[16] This interpretation is consistent with the limitation stated in chapter 18.225 Wash. Rev. Code, the chapter focused specifically on mental health counselors, marriage and family therapists, and social workers. That chapter (including the requirement that the practitioner obtain a license) expressly does not apply to these professions when practiced "[u]nder the auspices of a religious denomination, church, or religious organization." Wash. Rev. Code § 18.225.030(4). Section 18.225.030(4) reinforces that the Legislature only intended to regulate marriage and family therapists (and others) to the extent they act in a licensed professional capacity.

*Welch* recognized that California's SOCE Law is neutral with respect to religion. *See* 843 F.3d at 1045-47. Specifically, the court found that the law's object was not "to infringe upon or restrict practices because of their religious motivation." *Id.* (quoting *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993)). So too here. The SOGICE Law is facially neutral. *See Lukumi*, 508 U.S. at 533. As applied to Plaintiff, there is a specific exemption for religious activity.

Nor do the law's context and legislative history evince any intent to single out religious activities in practice. *See id.* at 534-40. Instead, "[t]he object of [the SOGICE Law] is the prevention of harm to minors, regardless of the motivations for seeking [SOGICE]." *See Welch*, 834 F.3d at 1047. Plaintiff makes no allegations of statements that can be imputed to the

---

[16] Plaintiff's allegation that he is prohibited from offering even religious counseling because he is a license holder is incorrect. *See* Compl. ¶ 51. He is only prohibited from offering conversion *therapy* in his capacity as a license holder. To draw an analogy, a doctor who is a member of a religious faith would not be permitted to offer medical advice that would be considered medically "unprofessional," even if such advice was under the "auspices" of a religious group. But she would be allowed to express advice or counsel in a capacity that would not constitute the practice of medicine. To the extent the line is unclear—and the State does not believe that it is—an as-applied challenge would be required. Such a challenge is not ripe. Plaintiff has not expressed a concrete plan, or shown a genuine threat of prosecution, for conduct he intends to undertake "under the auspices of" his church that he believes might violate the law.

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLANTIFF'S
MOTION FOR PRELIMINARY
INJUNCTION
NO. 3:21-cv-05359-RJB

27

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Legislature suggesting that religious practices were the principal or primary target of the law.[17]

And it would be very odd indeed for a law allegedly "inhibiting religion" to expressly exempt

"[r]eligious practices and counseling." SB 5722 § 2(2); *see, e.g.*, *Walz v. Tax Comm'n of City of*

*New York*, 397 U.S. 664, 673 (1970) (exemption for religious activity was "a reasonable and

balanced attempt to guard against" hostility to religion). Even if Plaintiff could show that some,

or even a substantial, amount of conversion therapy were religiously motivated as a practical

matter, this would not demonstrate that the Legislature's primary intent was to target religious

practices.[18] *See, e.g.*, *Welch*, 834 F.3d at 1047 (quoting *Stormans, Inc. v. Wiesman*, 794 F.3d

1064, 1077 (9th Cir. 2015)); *Olsen v. Mukasey*, 541 F.3d 827, 832 (8th Cir. 2008) ("General

applicability does not mean absolute universality."). Allegations of "disparate impact" are not

sufficient to state a Free Exercise claim. *See, e.g.*, *Bronx Household of Faith v. Bd. of Educ. of*

*City of New York*, 750 F.3d 184, 195-96 (2d Cir. 2014); *Prater v. City of Burnside, Ky.*, 289 F.3d

417, 429 (6th Cir. 2002). And unlike the ordinances at issue in *Lukumi*, there are no allegations

here that support a finding that the Legislature had in mind religious practices specifically, or

that it crafted a "religious gerrymander."[19] 508 U.S. at 535 (cleaned up).

The Supreme Court denied certiorari in *Welch*, so it controls.[20] *See Welch v. Brown*, 137

S. Ct. 2093 (2017). Washington's law is a "valid and neutral law of general applicability," *Emp.*

---

[17] To the extent he alleges some ambiguous rhetoric by one legislator, Compl. ¶ 64, this is not controlling as a matter of law. *See Chrysler Corp. v. Brown*, 441 U.S. 281, 311 (1979); *Conklin v. Univ. of Wash. Med.*, No. C18-0090RSL, 2018 WL 3156889, at *2 n.5 (W.D. Wash. June 28, 2018).

[18] Plaintiff himself acknowledges that his clients do not necessarily come in with a "religious motivation." *See* Compl. ¶¶ 122, 147.

[19] "It is the clear implication of the Supreme Court's opinion that, if the prohibition had applied across-the-board, affecting religious and secular practice equally, and had not been motivated by hostility to Santeria's religious practice, the prohibition would have been upheld, notwithstanding that it would have burdened the Santeria religion without similarly burdening other religions that do not practice animal sacrifice." *Bronx Household of Faith*, 750 F.3d at 196.

[20] The Supreme Court's recent decision *Fulton v. City of Philadelphia, Pa.*, No. 19-123, 2021 WL 2459253 (U.S. June 17, 2021), does not affect this case. The Court in *Fulton* held that Philadelphia violated the Free Exercise Clause by refusing to certify a Catholic adoption services provider that rejected prospective foster parents based on sexual orientation, but only because the city also provided a mechanism for individualized exemptions at the city's sole discretion. *See id.* at *1, *5-7. Therefore, Philadelphia's approach was not generally applicable under *Employment Div., Dept. of Human Resources of Oregon v. Smith*, 494 U.S. 872 (1990). Unlike the contract provision challenged in *Fulton*, the SOGICE Law contains no individualized exemptions. It applies the same to everyone. *Fulton* is inapplicable.

---

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLANTIFF'S
MOTION FOR PRELIMINARY
INJUNCTION
NO. 3:21-cv-05359-RJB

28

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

*Div., Dep't of Hum. Res. of Oregon v. Smith*, 494 U.S. 872, 879 (1990) (cleaned up).[21] As a matter of law, it does not violate the Free Exercise Clause. Plaintiff cannot evade health regulations that pertain to his license by reframing his treatment as a religious practice. This approach would create a loophole large enough to gut the *Smith* regime.

Finally, even if some form of heightened scrutiny applied, the SOGICE Law passes muster, for the reasons explained above, *supra* at pp. 20–23.

### 4.    Plaintiffs' Third-Party Claims Fail

Although he lacks third-party standing, the SOGICE Law also does not violate the free speech or free exercise rights of Plaintiff's minor clients for the same reasons the law does not violate Plaintiff's own rights. *See Pickup*, 740 F.3d at 1232 n.9; *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1027 n.5 (9th Cir. 1998). Plaintiff's clients are not in any way deprived of their ability to engage in an exchange of ideas concerning SOGICE.

### C.    Plaintiff Is Not Entitled to a Preliminary Injunction

### 1.    Plaintiff Has Not Established a Likelihood of Success on the Merits

For the reasons described above, Plaintiff cannot show either standing or a likelihood of success on the merits of his claims. The Court could deny his request on this basis alone, but Plaintiff also fails to show the other requisites for preliminary relief.

### 2.    Plaintiff Has Not Established the Other Requisites for a Preliminary Injunction

Plaintiff cannot show irreparable harm in the absence of a preliminary injunction or that the balance of equities is in his favor.

Plaintiff's only argument on irreparable harm is that his likelihood of success on the merits establishes irreparable harm. PI Mot. at 21. But he has not shown irreparable harm for several reasons. *First*, his claims are meritless. *Second*, even in the First Amendment context,

---

[21] Nor does the "hybrid rights exception" apply. *Contra* PI Mot. at 27-28. The Ninth Circuit recently cast doubt on the exception's existence and disavowed the binding nature of the prior decision Plaintiff relies upon here. *See Parents for Priv. v. Barr*, 949 F.3d 1210, 1236-38 (9th Cir.), *cert. denied*, 141 S. Ct. 894 (2020). Even if the exception exists, Plaintiff has not shown a fair probability of success on any companion claim. *See id.* at 1237.

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLANTIFF'S
MOTION FOR PRELIMINARY
INJUNCTION
NO. 3:21-cv-05359-RJB

29

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

the Supreme Court has stated that "as a matter of equitable discretion, a preliminary injunction does not follow as a matter of course from a plaintiff's showing of a likelihood of success on the merits." *Benisek v. Lamone*, 138 S. Ct. 1942, 1943-44 (2018) (per curiam) (assuming that plaintiffs were likely to succeed on the merits of First Amendment challenge, but reversing a preliminary injunction based on the equities and the public interest). *Third*, Plaintiff's "long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm." *Miller for & on Behalf of NLRB v. Cal. Pac. Med. Ctr.*, 991 F.2d 536, 544 (9th Cir. 1993), *on reh'g*, 19 F.3d 449 (9th Cir. 1994) (cleaned up); *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016). Plaintiff was well aware of the existence of the SOGICE Law going back to January 2018, having testified against it before the Legislature. *See* Senate Committee Hearing, https://www.tvw.org/watch/?eventID=2018011104 (video at 2:05:00).

Turning to the balance of equities, Plaintiff ignores the irreparable harm to the State if it cannot enforce a statute enacted by the Washington State Legislature. *See Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers). Most importantly, the State has a significant interest in regulating an ineffective and harmful practice affecting minors, and the public has an interest in protecting this vulnerable population from harms associated with SOGICE. *See supra* pp. 2–3 (describing harms and inefficacy of such efforts); *Sable Commc'ns*, 492 U.S. at 126; *see also, e.g.*, *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 460 (1978) ("[T]he State bears a special responsibility for maintaining standards among members of the licensed professions."). The State's interest in protecting minors from serious adverse health outcomes far outweighs Plaintiff's interest in practicing an ineffective and harmful therapy on his minor clients.

Plaintiff meets none of the requirements for preliminary injunctive relief.

## V.     CONCLUSION

The State respectfully asks the Court to grant its Motion to Dismiss and deny Plaintiff's Motion for Preliminary Injunction.

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLANTIFF'S
MOTION FOR PRELIMINARY
INJUNCTION
NO.  3:21-cv-05359-RJB

30

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    DATED this 25th day of June, 2021.

2

3                                     ROBERT W. FERGUSON
                                      Attorney General

4

5                                     /s/ Brendan Selby
                                      BRENDAN SELBY, WSBA #55325
6                                     JEFFREY C. GRANT, WSBA #11046
                                      CRISTINA SEPE, WSBA #53609
7                                     Assistant Attorneys General
                                      Complex Litigation Division
8                                     800 Fifth Avenue, Suite 2000
                                      Seattle, WA 98104
9                                     Brendan.Selby@atg.wa.gov
                                      Jeffrey.Grant@atg.wa.gov
10                                    Cristina.Sepe@atg.wa.gov

11                                    /s/ Joyce A. Roper
                                      JOYCE A. ROPER, WSBA #11322
12                                    Senior Assistant Attorney General
                                      Agriculture and Health Division
13                                    7141 Cleanwater Drive SW
                                      Olympia, WA 98501
14                                    Joyce.Roper@atg.wa.gov

15                                    Attorneys for Defendants

16

17

18

19

20

21

22

23

24

25

26

DEFENDANTS' MOTION TO DISMISS                    31              ATTORNEY GENERAL OF WASHINGTON
AND OPPOSITION TO PLANTIFF'S                                          Complex Litigation Division
MOTION FOR PRELIMINARY                                              800 5th Avenue, Suite 2000
INJUNCTION                                                            Seattle, WA 98104-3188
NO.  3:21-cv-05359-RJB                                                  (206) 464-7744

1

**<u>DECLARATION OF SERVICE</u>**

2

I hereby declare that on this day I caused the foregoing document to be electronically

3

filed with the Clerk of the Court using the Court's CM/ECF System which will send notification

4

to all counsel of record.

5

DATED this 25th day of June, 2021, at Seattle, Washington.

6

7

*/s/ Brendan Selby*

BRENDAN SELBY, WSBA #55325

8

Assistant Attorney General

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANTS' MOTION TO DISMISS
AND OPPOSITION TO PLANTIFF'S
MOTION FOR PRELIMINARY
INJUNCTION
NO.  3:21-CV-05359-RJB

i

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744