The Honorable Robert J. Bryan

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| BRIAN TINGLEY<br><br>  Plaintiff,<br><br>v.<br><br>ROBERT W. FERGUSON, et al.,<br><br>  Defendants. | NO. 3:21-cv-05359-RJB<br><br>DECLARATION OF<br>DOUGLAS C. HALDEMAN,<br>PH.D. |

I, Douglas C. Haldeman, Ph.D., declare as follows:

1. I have been retained by counsel for Defendants as an expert in connection with the above-referenced litigation. I have personal knowledge of the contents of this declaration, and if called upon to testify, I could and would testify competently to the contents of this declaration.

**I.    EXPERT BACKGROUND AND QUALIFICATIONS**

2. My background and experience are summarized in my curriculum vitae, which is attached as Exhibit A to this declaration. My curriculum vitae also includes a list of publications I have authored.

3. I am a licensed psychologist in the State of Washington. I maintained a full-time independent clinical practice in Seattle from 1983 to 2013. The majority of my full-time clinical practice involved individual, couple, family, and group counseling to the lesbian, bisexual, gay,

DECLARATION OF
DOUGLAS C. HALDEMAN
NO. 3:21-CV-05359-RJB

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

and transgender (LGBT) communities. Since 2013, I have been Professor and Program Director of the doctoral program in Clinical Psychology at John F. Kennedy University in Pleasant Hill, California.

4. I received my Doctorate in Counseling Psychology from the University of Washington in 1984. From 1988 to 2013, I served as a Clinical Instructor in the Department of Psychology at the University of Washington. In addition, I have been an active member of the American Psychological Association (APA) since 1985, and have served in a number of positions in APA Governance, including its Board of Directors, the American Psychological Foundation, and as Chair of the Board of the American Insurance Trust. I have been a member of the Washington State Psychological Association (WSPA) since 1984, and of the California Psychological Association (CPA) since 2007, serving as CPA President in 2017.

5. One of the primary foci of my 30 years of clinical practice has been to counsel people who have been harmed, both emotionally and physically, by undergoing "sexual orientation and gender identity change efforts" (SOGICE). I have written extensively about issues relating to SOGICE, including more than forty papers and chapters in scholarly journals and books. I have a book on the subject scheduled for publication later this year (*Sexual Orientation and Gender Identity Change Efforts: Evidence, Effects and Ethics*, Columbia University Press). All of my publications are summarized in my curriculum vitae (Exhibit A).

6. I have reviewed the declarations filed by the Plaintiff in support of the Plaintiff's Motion for Preliminary Injunction in this case.

## II. SEXUAL ORIENTATION AND GENDER IDENTITY CHANGE EFFORTS AND ETHICAL ISSUES

7. SOGICE are not accepted therapeutic practices among mainstream mental health organizations and mainstream mental health providers and academics.[1] This is because: (1) there is no valid evidence that SOGICE achieves the stated goal; and (2) there is significant and valid

---

[1] SOGICE, sexual orientation change efforts (SOCE), and gender identity change efforts (GICE) are also commonly referred to as conversion therapy.

DECLARATION OF
DOUGLAS C. HALDEMAN
NO. 3:21-CV-05359-RJB

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

evidence that SOGICE can cause serious harm, including depression, anxiety, suicidal ideation, and suicide. Professional psychological ethics proscribe the use of methods that are ineffective and potentially harmful. For these reasons, numerous leading professional organizations in mental health, medicine, social work, and nursing uniformly oppose SOGICE.

8. A review of the SOCE research literature reflects that the premise underlying treatments designed to change homosexual orientation is that homosexuality is a mental disorder that needs to be "cured." When homosexuality was declassified as a treatable mental disorder nearly forty years ago, it was assumed by many that the popularity of treatments intended to change sexual orientation would come to an end. While some of the most notorious aversive change therapies have largely fallen into disfavor, including the application of electric shock to the hands and/or genitals, or nausea-inducing drugs, some practitioners have continued to engage in other types of SOCE premised on the unscientific belief that homosexual orientation is undesirable, pathological, and the result of learned behavior, which can be reconditioned through various means. Likewise for GICE, which was founded on the notion that any gender identity that is not concordant with the sex assigned at birth is disordered and that a cisgender identity is preferable to a transgender or gender nonbinary identity.

9. Other SOGICE practitioners claim that their approaches are not based on a pathological view of same-sex attraction or gender identity, but simply are offered to provide an adult who "freely chooses" to change their sexual orientation or gender identity in order to conform to expectations of the individual's social world, including their family and/or culture. As discussed below, I would submit that: (1) the considerable social pressure of a homonegative and transnegative culture does not provide an individual "freedom of choice" with regard to same-sex attraction and gender diversity; (2) regardless, there are a number of treatments that a client may request which a psychologist is ethically prohibited from offering if said treatments are likely to be ineffective and/or harmful; and (3) evidence-based therapeutic alternatives to

DECLARATION OF
DOUGLAS C. HALDEMAN
NO. 3:21-CV-05359-RJB

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

SOGICE exist for those conflicted about their sexual orientation or gender identity that do not involve an *a priori* therapeutic goal of changing one's sexual orientation or gender identity.

### III.     SOGICE IS NOT EFFECTIVE

10.     Proponents of SOCE base their claims of success largely on anecdotal reports of shifts in sexual orientation, of competence in heterosexual expression, or of ability to refrain from engaging in same-sex behavior. These anecdotal claims are suspect for two reasons. First, they are subject to social desirability and never independently verified as true. Second, pro-SOCE testimonials are routinely presented in the period immediately following treatment, and often at the behest of their providers—an ethical violation in and of itself—and rarely subjected to long, or even medium-term follow-up assessment to establish treatment stability effects.

11.     In 2009, the APA appointed a Task Force to carefully examine all extant research on SOCE. The Task Force member who oversaw the evaluation of the methodologies underlying this research was a research design and methodology expert. The Task Force examined over one hundred studies spanning many decades, and concluded that there is no reliable evidence that SOCE is effective in changing a patient's sexual orientation. Am. Psychl. Ass'n, Task Force on Appropriate Therapeutic Responses to Sexual Orientation, *Report of the American Psychological Association Task Force on Appropriate Therapeutic Responses to Sexual Orientation*, (2009) (hereinafter the APA Task Force Report), *available at:* https://www.apa.org/pi/lgbt/resources/therapeutic-response.pdf.

12.     After a peer review of the conclusions of the APA Task Force Report, the APA passed a resolution in 2009 declaring that "there is insufficient evidence to support the use of psychological interventions to change sexual orientation." APA Task Force Report at 120. The resolution also pointed out that "the benefits reported by participants in sexual orientation change efforts can be gained through approaches that do not attempt to change sexual orientation." *Id.* at 121. Subsequently, the APA, like all the other major mental-health organizations, has resolved that SOGICE is unnecessary and place individuals at significant risk of harm. *See* Am. Psychl.

DECLARATION OF
DOUGLAS C. HALDEMAN
NO. 3:21-CV-05359-RJB

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Ass'n, *APA Resolution on Sexual Orientation Change Efforts* (2021), *available at:* https://www.apa.org/about/policy/resolution-sexual-orientation-change-efforts.pdf. (hereinafter the 2021 APA Resolution on SOCE); Am. Psychl. Ass'n, *APA Resolution on Gender Identity Change Efforts* (2021), *available at:* https://www.apa.org/about/policy/resolution-gender-identity-change-efforts.pdf (hereinafter the 2021 APA Resolution on GICE). A copy of the 2021 APA Resolution on SOCE is attached as Exhibit B, and a copy of the 2021 APA Resolution on GICE is attached as Exhibit C.

13. Those studies that purport to show the efficacy of SOCE are characterized by serious methodological flaws and conceptual weaknesses that render their results unreliable. *See* APA Task Force Report at 27–34 & App'x B; *infra* ¶ 17. Foremost among the methodological problems with these studies is known as sampling bias. The participants in these studies have been selected by, or identified exclusively by, referrals from practitioners of SOCE. Alternatively, these subjects self-selected to participate in studies from "ex-gay" organizations and practitioners. This method runs counter to the scientific standard of randomized subject inclusion, and renders any results suspect due to sampling bias.

14. In addition, the Task Force Report found that pro-SOCE studies rarely attempt to define what constitutes sexual orientation in the first place. Absent any sort of spectrum reflecting the subjects' own individual sexual orientation, for example, bisexual individuals who presumably already have capacity for heterosexual response may have been included in claims of "cures" of unwanted same-sex attraction.

15. The Task Force Report also found that pro-SOCE studies rarely attempt to define quantitatively what constitutes a change of sexual orientation. As sexual behavior is difficult to validate, pro-SOCE studies rely exclusively on self-report, which leaves them vulnerable to response bias. This means that the study participants, because of societal and/or cultural pressures from family or religious institutions, typically hold strong views that homosexuality is undesirable and therefore are likely to overstate their perceived success in changing their

DECLARATION OF
DOUGLAS C. HALDEMAN
NO. 3:21-CV-05359-RJB

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

authentic sexual orientations. Almost all such studies draw on a subject's retrospective analysis of the therapeutic experience, which is further influenced by pressures (from family and social desirability) often linked to membership in a culturally conservative community. Studies relying on a population-based (randomized) sampling method are far more robust and generalizable.

16. Finally, few of the SOCE studies offer any follow-up data. This is particularly relevant given the fact that any true shift in sexual orientation from SOCE may be transitory and not enduring post-"treatment." Relatedly, pro-SOCE studies frequently ignore the extraordinarily high rates at which participants drop out of research. The failure to follow up with the participants who have dropped out serves to distort the results of these studies, because they do not take into account the large number of individuals for whom the treatment was, at best, ineffective, and quite possibly harmful. Indeed, it is worth noting that even in these tremendously flawed studies, proponents of SOCE report only a 30% success rate at best.[2] Nevertheless, these studies are marketed as "scientific" to a public that is unable to critically evaluate them.

17. The methodological flaws in the studies purporting to show the efficacy of SOCE therapies were underscored by Dr. Robert Spitzer, the author of what had been considered to be the most well-known and authoritative study purporting to demonstrate that SOCE may work for some individuals under certain circumstances. Several years ago, Dr. Spitzer took the unusual step of recanting his 2001 study that had been published in the Archives of Sexual Behavior. Dr. Spitzer admitted that his study had been methodologically flawed and that there was no valid basis for his study's conclusion that SOCE had succeeded in changing the sexual orientation of any study participants. Indeed, Dr. Spitzer issued a public apology for having made unproven claims regarding the efficacy of SOCE and subjecting individuals to the harms of SOCE interventions. Dr. Spitzer gave a brief videotaped statement explaining the methodological flaws in his prior study and explaining his current view that SOCE causes harm. A video of

---

[2] Douglas Haldeman, *The practice and ethics of sexual orientation conversion therapy*, 62 J. of Consulting & Clinical Psychology 221 (1994).

DECLARATION OF
DOUGLAS C. HALDEMAN
NO. 3:21-CV-05359-RJB

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Dr. Spitzer's statement is available at http://youtu.be/TdOovBb2tqI, and a transcript of that statement (dated November 2, 2012) is available on the docket of *Welch v. Brown*, No. 2:12-cv-02484-WBS-KJN (E.D. Cal.) (Dkt. 40-3).

18. Subsequent research and updated resolutions from the APA further affirm that SOGICE is ineffective and harmful to many. In 2021, following the publication of population-based studies underscoring the harmful effects of SOGICE, the APA adopted a new resolution on the matter. *See* 2021 APA Resolution on SOCE (Exhibit B).[3] The APA stated that it "opposes SOCE because such efforts put individuals at significant risk of harm and [that the APA] encourages individuals, families, health professionals, and organizations to avoid SOCE." *Id.* Regarding youth, the APA acknowledged: "[S]exual minority youth and adults who have undergone SOCE are significantly more likely to experience suicidality and depression than those who have not undergone SOCE; and this elevated risk of suicidality, including multiple suicide attempts, persists when adjusting for other risk factors." (internal citations removed). *Id.*

19. Also in 2021, the APA also adopted a Resolution on Gender Identity Change Efforts, wherein the APA stated it "opposes GICE because such efforts put individuals at significant risk of harm and encourages individuals, families, health professionals, and organizations to avoid GICE." 2021 APA Resolution on GICE (Exhibit C).

### IV. SOGICE POSES A SIGNIFICANT RISK OF HARM

20. Motivation to change one's sexual orientation or gender identity is invariably rooted in social stigma about same-sex attraction and behavior or gender diversity. When this stigma is internalized, an individual may blame himself or herself for experiences of rejection, maltreatment or threat of isolation (loss of family, community of faith). SOGICE validates and reaffirms the internalization of what is essentially a social problem, namely anti-gay and anti-transgender/anti-gender nonbinary bias. SOGICE not only reinforces this societal rejection, it

---

[3] In 2021, the APA also adopted a Resolution on Gender Identity Change Efforts, wherein the APA stated it "opposes GICE because such efforts put individuals at significant risk of harm and encourages individuals, families, health professionals, and organizations to avoid GICE." 2021 APA Resolution on GICE (Exhibit C).

DECLARATION OF
DOUGLAS C. HALDEMAN
NO. 3:21-CV-05359-RJB

7

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

carries the false appearance of scientific acceptance by enshrining it as a legitimate form of psychological treatment. Because SOGICE reaffirms the devaluation of same-sex attracted people and relationships or gender diverse people, it frequently exacerbates the patient's distress and results in severe emotional harm. Harms from SOGICE can take the forms of depression, guilt, anxiety, low self-esteem, intimacy avoidance, sexual dysfunction, suicidal ideation, suicide attempts and suicide, and other negative consequences.

21. Recent population-based research further demonstrates the risk of harm to people who "freely chose" or were subjected to SOGICE. These negative outcomes include more mental health problems and generally lower levels of life satisfaction, suicidality, and a greater likelihood of engaging in high-risk sexual behaviors.[4]

22. Another recent study found dissociation and emotional numbness, an increase in compulsive behaviors such as substance abuse, and heightened depression and anxiety among SOCE participants.[5] Still another study found feelings of anger, and grief at having wasted time and resources on ineffective treatment, as well as feelings of betrayal at having been misled by licensed mental health SOCE providers.[6]

23. SOGICE poses a particularly high risk of harm to youth. A 2020 study found that, for lesbian, gay, bisexual, transgender, and queer or questioning (LGBTQ) youth respondents, those who had undergone SOGICE had "dramatically higher levels of suicidality than their LGBTQ peers not exposed to such experiences." It further stated that "SOGICE was the strongest predictor of multiple suicide attempts, even after adjustment for other known risk factors."[7]

---

[4] Caitlin Ryan et al., *Parent-Initiated Sexual Orientation Change Efforts With LGBT Adolescents: Implications for Young Adult Mental Health and Adjustment*, Journal of Homosexuality (2018).
[5] Jeanna Jacobsen & Rachel Wright, *Mental Health Implications in Mormon Women's Experiences With Same-Sex Attraction: A Qualitative Study*, 42 The Counseling Psychologist 664 (2014).
[6] John P. Dehlin et al., *Sexual Orientation Change Efforts Among Current or Former LDS Church Members*, Journal of Counseling Psychology (2015).
[7] Amy E. Green, et al., *Self-Reported Conversion Efforts and Suicidality Among US LGBTQ Youths and Young Adults, 2018*, 110 Am. J. Public Health 1221, 1224 (2020).

DECLARATION OF
DOUGLAS C. HALDEMAN
NO. 3:21-CV-05359-RJB

8

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

24. Another recent study showed that suicidal behavior on the part of youth exposed to SOCE persisted long into adulthood.[8] Sexual minorities exposed to SOCE had nearly twice the odds of lifetime suicidal ideation, compared with sexual minorities who did not experience SOCE.

25. Additionally, a patient's recognition that SOGICE has failed can cause further lead to severe emotional consequences. LGBT individuals—regardless of whether they attempt to change their orientation through SOCE or gender identity through GICE—are at heightened risk of expulsion from family, loss of position in society, rejection from familiar institutions, loss of faith in and membership in the community, and vulnerability to bias and discrimination. The failed attempt to change one's sexual orientation or gender identity—because it often is perceived to be a "failure" on the part of the patient—exacerbates these risks. This in turn can cause additional negative emotional consequences like those described above: depression, guilt, anxiety, low self-esteem, intimacy avoidance, sexual dysfunction, suicidal ideation, and other negative consequences derived not just from shame about being gay or transgender, but also from heightened shame and self-recrimination over being unable to change their sexual orientation or gender identity through SOGICE. In this way, SOGICE can substantially exacerbate internalized shame and depression.

26. My own experience as a mental health provider confirms the harms that SOGICE cause. For over thirty years, I have been working with adult patients in my clinical practice who have suffered through a variety of efforts to change their sexual orientation or gender identity and have been harmed as a result.

27. The potential consequences of SOGICE, such as severe depression and suicidal ideation, are sufficiently grave, and the power and information dynamics sufficiently imbalanced, that it would be appropriate to erect a complete barrier between patients and

---

[8] John R. Blosnich et al., *Sexual Orientation Change Efforts, Adverse Childhood Experiences, and Suicide Ideation and Attempt Among Sexual Minority Adults, United States, 2016–2018*, 110 Am. J. Public Health 1024 (2020).

DECLARATION OF
DOUGLAS C. HALDEMAN
NO. 3:21-CV-05359-RJB

9

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

therapists who would offer them the false hope of changing their sexual orientation or gender identity through SOGICE. One of the core ethical principles in every health care profession is the avoidance of harm to a patient.

28.     My conclusions regarding the harms caused by SOGICE have been reinforced in recent years. The APA Task Force Report concluded that SOCE interventions have no scientific basis. The APA Task Force Report undertook a comprehensive review of the relevant research literature and concluded that there was no reliable evidence to support the contention that SOCE therapies work. The APA Task Force Report also provided a detailed discussion and analysis of the harms associated with SOCE therapies. These conclusions have been further confirmed by subsequent resolutions from the APA regarding SOCE and GICE, as well as other rigorous, peer-reviewed studies (some of which are described above).

29.     There are many potential benefits for LGBT-individuals who seek therapy. Therapy can provide a safe place to discuss conflict, experience support, and develop hope. None of these benefits derives from the practice of SOGICE itself, but rather, from universal techniques of psychotherapy. These basic benefits can be provided by culturally competent care, without creating the risks of harm caused by SOGICE.

### V.     SOGICE DOES NOT ADVANCE CLIENT AUTONOMY

30.     Competent, ethical psychologists respect a client's right to self-determination. That does not mean, however, that a psychologist is ethically required to defer to a client's stated goals, without regard to medical and ethical guidelines. Nor does that mean that a psychologist must provide a patient with whatever form of therapy the client wants, regardless of the therapy's efficacy or potential harm, or that clients should be permitted to demand such therapy. For example, if an anorexic patient asks for help in losing more weight, competent psychologists do not defer to this goal out of respect for the patient's self-determination due to the known harm in doing so.

DECLARATION OF
DOUGLAS C. HALDEMAN
NO. 3:21-CV-05359-RJB

10

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

31. Psychology is a profession and a scientific discipline, not merely a service industry. Competent psychologists listen to a client's stated goals and experiences, and guide the client through the process of exploring the emotional basis for those goals and experiences using accepted therapeutic techniques. It is through this process that competent therapists assist clients in gaining understanding, and, based on that understanding, determining healthy and emotionally sound strategies for living their chosen lives.

32. When a patient consents to treatment with a predetermined outcome (improved self-esteem, weight loss, trauma recovery), it is expected that the provider of such service will rely on empirically validated methods to accomplish the treatment goal. First, however, it must be shown that the goal in question is realistic. As set forth above, there is no sound evidence base for the conclusion that sexual orientation can be changed through treatment, nor that there is any effective and safe way to accomplish this. SOGICE necessarily runs counter to established, ethical methods because it presupposes or prescribes an expected outcome that is unrealistic and therapeutically indefensible. Moreover, SOGICE excludes any accurate and honest exploration of the basis for the desire to be heterosexual or cisgender. Our first response to a patient requesting a change of their sexual orientation might be to ask, "why?"—not to enroll them in a potentially harmful course of treatment.

33. Professional guidelines and ethical principles admonish psychologists against the imposition of specific personal or cultural beliefs upon any patient. SOGICE presupposes an unrealistic outcome, and is often pursued at the expense of personal exploration of sexual orientation and gender identity. In this way, SOGICE thwarts client autonomy, rather than advances it. By this I mean that SOGICE, as an element of a homonegative, transnegative sociocultural context, reinforces the bond between the conflicted LGBT person and shame-based cultural views. Continuing to reinforce prejudicial and dangerous messages, SOGICE precludes a person's ability to consider other, more appropriate ways of understanding and expressing sexual orientation or gender identity.

DECLARATION OF
DOUGLAS C. HALDEMAN
NO. 3:21-CV-05359-RJB

11

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

34. Respecting client autonomy does not mean that SOGICE needs to be available and offered. It is inappropriate for a competent therapist to offer a purported "treatment" that does not work and creates a significant risk of serious harm. A competent therapist treating a client assists that client in understanding the source and emotional consequences of any conflicts between experience and belief, and in negotiating a healthy life course in light of accurate knowledge about what can be changed and what cannot.

35. The APA Task Force Report reaches this same conclusion regarding the appropriate manner of respecting client autonomy:

> We believe that simply providing SOCE to clients who request it does not necessarily increase self-determination but rather abdicates the responsibility of [mental healthcare providers] to provide competent assessment and interventions that have the potential for benefit with a limited risk of harm. We also believe that [mental healthcare providers] are more likely to maximize their clients' self-determination by providing effective psychotherapy that increases client's abilities to cope, understand, acknowledge, explore, and integrate sexual orientation concerns into a self-chosen life in which the client determines the ultimate manner in which he or she does or does not express sexual orientation.

APA Task Force Report at 69.

## VI. CONCLUSION

36. SOGICE methods designed to change an individual's sexual orientation or gender identity have not been empirically demonstrated to be either effective or safe. Rather, SOGICE needlessly exposes patients, and minors in particular, to risk of serious harms. Based on my 30 years of experience studying and writing about SOGICE in textbooks and peer reviewed journals, as well as my 30 years of clinical observations, I know that many individuals who attempted to change their sexual orientation or gender identity have experienced considerable psychological pain and harm as a result.

//

//

DECLARATION OF
DOUGLAS C. HALDEMAN
NO. 3:21-CV-05359-RJB

12

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  I declare under penalty of perjury under the laws of the United States that the foregoing
2  statements are true and accurate.
3  DATED this 24th day of June 2021, at Walnut Creek, California.

*Douglas C. Haldeman*
DOUGLAS C. HALDEMAN, PH.D.

DECLARATION OF
DOUGLAS C. HALDEMAN
NO. 3:21-CV-05359-RJB

13

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

**DECLARATION OF SERVICE**

I hereby declare that on this day I caused the foregoing document to be electronically filed with the Clerk of the Court using the Court's CM/ECF System which will send notification to all counsel of record.

DATED this 25th day of June, 2021, at Seattle, Washington.

*/s/ Brendan Selby*
BRENDAN SELBY, WSBA #55325
Assistant Attorney General

DECLARATION OF
DOUGLAS C. HALDEMAN
NO. 3:21-CV-05359-RJB

14

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744