1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10

11 BRIAN TINGLEY,

CASE NO. 3:21-cv-05359-RJB

12                                    Plaintiff,

ORDER GRANTING
DEFENDANTS' MOTION TO
DISMISS AND DENYING
PLAINTIFF'S MOTION FOR A
PRELIMINARY INJUNCTION

13          v.

ROBERT W. FERGUSON, in his official
capacity as Attorney General for the State
of Washington; UMAIR A. SHAH, in his
official capacity as Secretary of Health for
the State of Washington; and KRISTIN
PETERSON, in her official capacity as
Assistant Secretary of the Health Systems
Quality Assurance division of the
Washington State Department of Health;

14

15

16

17

18                                    Defendants,

19

20          and

EQUAL RIGHTS WASHINGTON,

21

                                    Intervenor Defendant.

22

23          This matter comes before the Court on Plaintiff's Motion for a Preliminary Injunction

24 (Dkt. 2), Intervenor Defendant Equal Rights Washington's Motion to Dismiss (Dkt. 26), and

Defendants' Motion to Dismiss (Dkt. 27).  The Court has considered the pleadings filed in support of and in opposition to the motions and the file herein and heard oral argument on 27 August 2021.

Plaintiff, Brian Tingley, is a licensed Marriage and Family Therapist.  Dkt. 2.  He brings this lawsuit and the pending motion for a preliminary injunction to enjoin enforcement of Wash. Rev. Code §§ 18.130.020 and 18.130.180, which prohibit licensed counselors from engaging in "conversion therapy" with a minor (the "Conversion Law").  Wash. Rev. Code § 18.130.180(27).

Defendants Robert Ferguson, Kristin Peterson, and Umair Shah ("State Defendants") and Intervenor Defendant Equal Rights Washington oppose Plaintiff's Motion for a Preliminary Injunction and move to dismiss his claims.  Dkts. 26 and 27.  For the following reasons, State Defendant's Motion to Dismiss (Dkt. 27) should be granted, and Intervenor Defendant's Motion to Dismiss (Dkt. 26) and Plaintiff's Motion for a Preliminary Injunction (Dkt. 2) should be denied as moot.

## I.      FACTS AND PROCEDURAL HISTORY

### A.  FACTS

When the Washington State Legislature enacted Senate Bill 5722, the precursor to the codified Conversion Law, it declared that "Washington has a compelling interest in protecting the physical and psychological well-being of minors, including lesbian, gay, bisexual, and transgender youth, and in protecting minors against exposure to serious harms caused by conversion therapy."  2018 Wash. Sess. Laws, ch 300 § 1.  The bill's legislative history also includes a health impact report, available at HIR-2017-18-SB5722.pdf (wa.gov).  The report summary includes the following findings:

- A fair amount of evidence that prohibiting the use of conversion therapy in the treatment of minors would decrease the risk of harm and improve health outcomes for LGBTQ individuals.
- Very strong evidence that LGBTQ adults and youth disproportionately experience many negative health outcomes, and therefore mitigating any emotional, mental, and physical harm among this population has potential to decrease health disparities.

The Conversion Law includes the following definitions:

"Conversion therapy" means a regime that seeks to change an individual's sexual orientation or gender identity.  The term includes efforts to change behaviors or gender expressions, or to eliminate or reduce sexual or romantic attractions or feelings toward individuals of the same sex.  The term includes, but is not limited to, practices commonly referred to as "reparative therapy."

Wash. Rev. Code § 18.130.020(4)(a).

"Conversion therapy" does not include counseling or psychotherapies that provide acceptance, support, and understanding of clients or the facilitation of clients' coping, social support, and identity exploration and development that do not seek to change sexual orientation or gender identity.

Wash. Rev. Code § 18.130.020(4)(b).

Furthermore, the Conversion Law states that "[p]erforming conversion therapy on a patient under age eighteen" constitutes "unprofessional conduct for any license holder under the jurisdiction of [Wash. Rev. Code 18.130]."  Wash. Rev. Code § 18.130.180(27).  A person found to be in violation of the law may be subject to professional sanctions.  Wash. Rev. Code § 18.130.050(15).  The Conversion Law does not apply to therapy provided "under the auspices of a religious denomination, church, or religious organization."  Wash. Rev. Code § 18.225.030(4).

Plaintiff is a Christian, but he does not practice under such auspices.  Dkt. 2 at 9.  His practice group consists of Christian counselors who seek to help clients achieve "personal and relational growth as well as healing for the wounded spirit, soul, and body through the healthy integration of relationship, psychological, and spiritual principles with clinical excellence."  *Id.*

1    Plaintiff asserts that most of his clients share his Christian faith, and that he does not seek to

2    impose his faith on any of his clients.  *Id.*

3           According to Plaintiff, some of his clients, including minor clients, have asked him to

4    assist them in reducing same-sex attraction, achieving comfort with their biological sex, or to

5    desist from sexual behaviors including addiction to pornography or ongoing sexual activity that

6    the client believes is wrong.  *Id.* at 5.  He claims that he is currently or recently has violated the

7    Conversion Law "[b]y counseling minors who have expressed a transgender identity to assist

8    them in achieving their self-chosen goal of changing that sense of identity to a gender identity

9    consistent with their biological sex" and "[b]y counseling minors who experience same-sex

10   attraction to assist them in achieving their self-chosen goal of changing their sexual attractions

11   by reducing same-sex attractions and increasing attraction to the opposite sex."  Dkt. 44 at 3.

12          In 2012, California enacted a similar law, enacted as Senate Bill 1172 ("SB 1172"),

13   which prohibits a mental health provider from engaging in sexual orientation change efforts with

14   a patient under 18 years of age.  Cal. Bus. & Prof. Code §§ 865.1, 865.2.  SB 1172 defines sexual

15   orientation change efforts as, "any practices by mental health providers that seek to change an

16   individual's sexual orientation.  This includes efforts to change behaviors or gender expressions,

17   or to eliminate or reduce sexual or romantic attractions or feelings toward individuals of the

18   same sex."  Cal. Bus. & Prof. Code § 865(b)(1).  Explicitly excluded from the definition are

19   "psychotherapies that: (A) provide acceptance, support, and understanding of clients or the

20   facilitation of clients' coping, social support, and identity exploration and development,

21   including sexual orientation-neutral interventions to prevent or address unlawful conduct or

22   unsafe sexual practices; and (B) do not seek to change sexual orientation."  Cal. Bus. & Prof.

23   Code § 865(b)(2).  In short, both Washington and California's laws explicitly prohibit counseling

24

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR
A PRELIMINARY INJUNCTION - 4

designed to change a minor's sexual orientation, but permit counseling designed to provide

support, understanding, and development.   There are, however, slight differences in the laws

regarding gender identity.   The California law does not specifically use the term "gender

identity," as does the Washington law, but it does prohibit "efforts to change . . . gender

expressions[.]"   *See* Cal. Bus. & Prof. Code §§ 865.1, 865.2; Wash. Rev. Code §§ 18.130.020,

18.130.180.

The Ninth Circuit affirmed dismissals of claims brought against the California conversion

law that are similar to Plaintiff's claims in this case.   *See Pickup v. Brown*, 740 F.3d 1208 (9th

Cir. 2014); *Welch v. Brown*, 834 F.3d 1041 (9th Cir. 2016).

## B. PROCEDURAL HISTORY

On May 13, 2021, Plaintiff filed the complaint (Dkt. 1) and the pending Motion for

Preliminary Injunction (Dkt. 2).   On May 25, 2021, the parties stipulated to set a briefing

schedule, which permitted Defendants to respond to the Motion for Preliminary Injunction and to

file a Motion to Dismiss by June 25, 2021 (Dkt. 11).   On May 27, 2021, Equal Rights

Washington filed a motion to intervene as a party defendant (Dkt. 16), which the Court granted

on June 28, 2021 (Dkt.33).   On June 25, 2021, Intervenor Defendant Equal Rights Washington

and State Defendants filed separate documents opposing Plaintiff's Motion for Preliminary

Injunction and moving to dismiss Plaintiff's claims.   Dkts. 26 and 27.   In addition to the motions

filed by the parties, The Trevor Project, Inc., American Foundation for Suicide Prevention, and

American Association of Suicidology filed an *amici curiae* brief in support of Defendants'

Motion to Dismiss and Opposition to Plaintiff's Motion for Preliminary Injunction.   Dkt. 34.

C.  **PENDING MOTIONS AND ORGANIZATION OF OPINION**

There are three pending motions before the Court:  Plaintiff's Motion for Preliminary Injunction (Dkt. 2), Intervenor Defendants' Motion to Dismiss (Dkt. 26), and State Defendants' Motion to Dismiss (Dkt. 27).  This Order will first consider State Defendants' Motion to Dismiss, which should be granted for the reasons stated below.  Because State Defendants' Motion to Dismiss should be granted and this case dismissed, both Intervenor Defendants' Motion to Dismiss and Plaintiff's Motion for Preliminary Injunction should be denied as moot.

## II.    DISCUSSION

A.  **STATE DEFENDANTS' MOTION TO DISMISS**

### 1.  STANDING AND RIPENESS

Plaintiff brings claims both in his individual capacity and on behalf of his minor patients who he claims seek therapy designed at changing their sexual orientation or gender identity. Defendants argue Plaintiff lacks standing and that his claims are not ripe.  While Plaintiff does have individual standing and his claims are ripe, he does not have standing to bring claims on behalf of his minor patients.

#### a.  STANDING AND RIPENESS – INDIVIDUAL CLAIMS

Defendants argue that Plaintiff fails to establish standing and that his claim is not ripe. Dkt. 27 at 11.  Neither argument is persuasive.

The Court "need not delve into the nuances of the distinction between the injury in fact prong of standing and the constitutional component of ripeness [because] in this case, the analysis is the same." *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc).  "Whether the question is viewed as one of standing or ripeness, [Article III of the United States] Constitution mandates that prior to our exercise of jurisdiction there exist a

constitutional 'case or controversy,' that the issues presented are 'definite and concrete, not

hypothetical or abstract.'"  *Id.*  To determine whether a plaintiff satisfies this jurisdictional

prerequisite, courts "consider whether the plaintiffs face 'a realistic danger of sustaining a direct

injury as a result of the statute's operation or enforcement,' *Babbit v. United Farm Workers Nat'l*

*Union*, 442 U.S. 289, 298 (1979), or whether the alleged injury is too 'imaginary' or

'speculative' to support jurisdiction." *Thomas*, 220 F.3d at 1139.

In the context of a First Amendment challenge, however, "the inquiry tilts dramatically

toward a finding of standing." *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1155 (9th Cir. 2000).  So,

while a general allegation of a "subjective chill" in First Amendment activity is insufficient to

demonstrate injury, *Laird v. Tatum*, 408 U.S. 1, 14–15 (1972), a plaintiff need not show that a

law has been enforced or that the government threatened enforcement against the plaintiff, *see*

*LSO*, 205 F.3d at 1155.  It is sufficient that a plaintiff shows a credible threat of enforcement.  *Id.*

at 1156.

Plaintiff claims that he has recently or is currently "counseling minors who have

expressed a transgender identity to assist them in achieving their self-chosen goal of changing

that sense of identity to a gender identity consistent with their biological sex," and "counseling

minors who experience same-sex attraction to assist them in achieving their self-chosen goal of

changing their sexual attractions by reducing same-sex attractions and increasing attraction to the

opposite sex." Dkt. 24 at 8; *see* Dkt. 1 at 22.  This counseling is prohibited under the Conversion

Law.  *See* Wash. Rev. Code 18.130.020(4)(a).  While State Defendants argue that Plaintiff does

not establish a credible threat of enforcement because the State typically only investigates

unprofessional conduct if a complaint is filed against a licensee and to date no complaint has

been filed against Plaintiff or any other licensee for violation of the Conversion Law, it also

acknowledges that it "intends to enforce the [Conversion] Law as it enforces other restrictions on unprofessional conduct." Dkt. 27 at 10. Plaintiff's claims that he engages in activity prohibited by the law that could realistically lead to enforcement action against him are sufficient to establish a realistic danger of enforcement. He need not wait for the law to actually be enforced against him, especially in this context because he brings a First Amendment challenge. Therefore, Plaintiff has standing and his claim is ripe.

### b. THIRD-PARTY STANDING

Plaintiff does not, however, have third-party standing to bring claims on behalf of his minor patients.

A plaintiff seeking to assert third-party standing must demonstrate: (1) "injury-in-fact," (2) "a close relation to the third party," and (3) "a hindrance to the third party's ability to protect his or her own interests." *Powers v. Ohio*, 499 U.S. 400, 410–11 (1991).

Plaintiff does not demonstrate that his minor patients are hindered in their ability to protect their own interests. His assertion that his patients may be hindered in their ability to bring their own claims is speculative. This conclusion is consistent with findings from other courts considering similar claims. *See, e.g.*, *Doyle v. Hogan*, Case No. 19-cv-0190-DKC, 2019 WL 3500924 (D. Md. Aug. 1, 2012); *vacated on other grounds*, 1 F.4th 249 (4th Cir. 2021); *King v. Gov. of the State of New Jersey*, 767 F.3d 216, 244 (3rd Cir. 2014).

### 2. STANDARD FOR MOTION TO DISMISS

Fed. R. Civ. P. 12(b) motions to dismiss may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d

1    1295 (9th Cir. 1983).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does

2    not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his

3    entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

4    elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554–

5    55 (2007) (internal citations omitted).  "Factual allegations must be enough to raise a right to

6    relief above the speculative level, on the assumption that all the allegations in the complaint are

7    true (even if doubtful in fact)."  *Id*. at 555.  The complaint must allege "enough facts to state a

8    claim to relief that is plausible on its face."  *Id*. at 547.

9    ### 3.  FIRST AMENDMENT

10        The statutory licensing requirement at issue here is nearly identical to a California

11   statutory licensing requirement that the Ninth Circuit previously upheld in *Pickup v. Brown*, 740

12   F.3d 1208 (9th Cir. 2014).  Plaintiff concedes that the laws at issue are substantively similar and

13   that "the Ninth Circuit's decision in *Pickup v. Brown* . . . is binding on this Court if it is still good

14   law."  Dkt. 43 at 14.  Therefore, this motion to dismiss depends squarely on that question:  is

15   *Pickup* good law, or, as Plaintiff argues, has *Pickup* been overruled?

16        In *Pickup*, the Ninth Circuit consolidated and considered together two challenges to the

17   California conversion law, Senate Bill 1172. 740 F.3d 1208.  As a threshold question, the court

18   found it must "determine whether SB 1172 is a regulation of conduct or speech," and two cases

19   guided its decision:  *National Association for the Advancement of Psychoanalysis v. Cal. Bd. of

20   Psychology ("NAAP")*, 228 F.3d 1043 (9th Cir. 2000), and *Conant v. Walters*, 309 F.3d 629 (9th

21   Cir. 2002), both of which provide helpful illustration for the question before the Court.  *Id.* at

22   1225.

23

24

1    In *NAAP*, the first case analyzed by that court, the Ninth Circuit upheld a licensing

2    scheme that required persons who provide psychological services to the public pay a fee and

3    meet educational and experiential requirements to obtain a license to practice.  740 F.3d at 1225

4    (citing *NAAP*, 228 F.3d at 1056).  The *NAAP* court reasoned that the licensing scheme, even if it

5    implicated speech, was a valid exercise of California's police power.  740 F.3d at 1226 (citing

6    *NAAP*, 228 F.3d at 1056).  Significant for the *Pickup* decision, the court in *NAAP* emphasized

7    that "psychoanalysis is the treatment of emotional suffering and depression, *not* speech."  740

8    F.3d at 1226 (citing *NAAP*, 228 F.3d at 1054).

9    In *Conant*, the Ninth Circuit considered federal policy permitting federal regulators to

10   revoke a doctor's license to prescribe controlled substances if the doctor recommended medical

11   marijuana to a patient.  *Id.* at 1226 (citing *Conant*, 309 F.3d at 632).  The court affirmed a district

12   court's order granting a permanent injunction enjoining that policy "where the basis for the

13   government's action is solely the physician's professional 'recommendation' of the use of

14   medical marijuana."  *Conant*, 309 F.3d at 632.  It emphasized that "neither we nor the parties

15   disputed the government's authority to prohibit doctors from *treating* patients with marijuana."

16   *Pickup*, 740 F.3d at 1226 (citing *Conant*, 309 F.3d at 632, 635–36).  As opposed to treatment,

17   however, the policy at issue regulated "recommending" marijuana, which the court found was

18   regulation of viewpoint-based speech because it "condemned expression of a particular

19   viewpoint, i.e., that medical marijuana would likely help a specific patient."  *Pickup*, 740 F.3d at

20   1226–27 (quoting *Conant*, 309 F.3d at 637).

21   Together, *NAAP* and *Conant* underscored the difference between the act of providing

22   treatment (conduct) and speech that may be otherwise involved with providing treatment,

23   including making recommendations or discussing treatment options.  *See id.*

24

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR
A PRELIMINARY INJUNCTION - 10

In *Pickup*, the court built on that logic to find that SB 1172 regulated "professional conduct" (treatment) and that, while professional conduct is entitled to some level of constitutional protection, it is not entitled the same protection as speech.  740 F.3d at 1227.  Professional conduct, the court found, falls on the side of a continuum of protection where the state's power to regulate "is subject to only rational basis review and must be upheld if it bears a rational relationship to a legitimate state interest."  *Id.* at 1229, 1231.  Notably, the *Pickup* court emphasized that SB 1172 "bans a form of treatment for minors; it does nothing to prevent licensed therapists from discussing the pros and cons of [sexual orientation change efforts] with their patients."  *Id.* at 1229.  This bore a rational relationship to "California's interest in 'protecting the physical and psychological well-being of minors, including lesbian, gay, bisexual and transgender youth, and in protecting its minors against exposure to serious harms caused by sexual orientation change efforts.'"  *Id.* at 1231 (quoting 2012 Cal. Legis. Serv. ch. 835, § 1(n)).  Therefore, SB 1172 withstood rational basis review and was found to be constitutional.  *Pickup*, 740 F.3d at 1232.

The same is true of the Conversion Law currently before the Court.  Plaintiff asserts that the Supreme Court overruled this holding in *NIFLA v. Becerra*, 138 S. Ct. 2361 (2018), and that *Pickup* is no longer good law.  For the following reasons, the Court disagrees.

In *NIFLA*, the Supreme Court considered challenges to a California law requiring licensed pregnancy-related clinics to provide notice of the existence of publicly-funded family-planning services, including for contraception and abortions, and requiring unlicensed pregnancy-related clinics to provide notice that they were not licensed.  138 S. Ct at 2361.  The Court struck down both notice requirements on the grounds that they unduly burdened protected

1  speech.  *Id.* at 2361–62.  *NIFLA*, however, does not overturn *Pickup*'s holding because *NIFLA*

2  considered professional *speech*, not conduct.

3        Central to the Supreme Court's decision in *NIFLA* was that it "has not recognized

4  'professional speech' as a separate category of speech."  *Id.* at 2371–72.  While the Supreme

5  Court did not find that no such category could exist, it disagreed with the Ninth's Circuit's

6  analysis and held that "[s]peech is not *unprotected* merely because it is uttered by

7  'professionals.'"  *Id.* (emphasis added).  The Court eventually found that both notice

8  requirements unduly burdened speech, but it also explicitly recognized that "under our

9  precedents, States may regulate professional conduct, even though that conduct incidentally

10  involves speech."  *Id.* at 2372; *see id.* at 2373 ("The licensed notice at issue here is not an

11  informed-consent requirement or any other regulation of professional conduct.").

12        The *NIFLA* decision is based on an analysis of speech, not conduct, and it does not

13  undermine the distinction between speech and conduct central to the holding in *Pickup*.

14  Conduct, albeit conduct of therapists whose job inextricably involves speech, was at issue in

15  *Pickup* and is at issue in this case.  The notice requirements at issue in *NIFLA* were speech.  The

16  prohibited conduct at issue here, performing conversion therapy, is analogous to doctor giving a

17  prescription for marijuana because it involves engaging in a specific act designed to provide

18  treatment.  In contrast, the speech at issue in *NIFLA*, notice requirements that regulated the

19  information a provider must give to its patients, is more analogous to a doctor recommending

20  that a patient use marijuana because both consider information that a provider may discuss with a

21  patient.  Both the California and Washington conversion laws specifically permit a therapist to

22  engage in that type of speech because they permit discussing various treatment options, including

23

24

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR
A PRELIMINARY INJUNCTION - 12

1    conversion therapy.  *See* Wash. Rev. Code 18.130.020(4); *see also* Cal. Bus. & Prof. Code §

2    865(b).

3          Furthermore, the Conversion Law does not apply to therapy provided "under the auspices

4    of a religious denomination, church, or religious organization."  Wash. Rev. Code §

5    18.225.030(4); *see* SB 5722 § 2 (SB 5722 "may not be construed to apply to . . . religious

6    practices or counseling under the auspices of a religious denomination, church, or organization

7    that do not constitute performing conversion therapy by licensed health care providers . . .  and

8    nonlicensed counselors acting under the auspices of a religious denomination, church, or

9    organization.").  So, like a doctor in *Conant* who may recommend medical marijuana, a licensed

10   therapist could recommend conversion therapy, it would just need to be provided by someone

11   else, someone under the auspices of a religious denomination.

12         Plaintiff argues that the Ninth Circuit's decision in *Pac. Coast Horseshoeing Sch., Inc. v.*

13   *Kirchmeyer*, 961 F.3d 1062 (9th Cir. 2020), demonstrates that *Pickup* is no longer good law and

14   compels a different conclusion because *Horseshoeing Sch.* noted in a citation that *NFLA*

15   "abrogated" *Pickup*.  That citation, however, is not dispositive.  *Horseshoeing Sch.* considered a

16   licensing restriction requiring a vocational school, in this case the only school for horseshoeing

17   in the State of California, to deny a prospective student's application if that applicant did not

18   have a high school diploma, a GED, or had not passed an exam provided by the U.S. Department

19   of Education.  *Id.* at 1065.  The court held that the restriction burdened plaintiffs' right to free

20   speech because it regulated the availability of educational messaging.  *Id.*  In a citation, the court

21   wrote that *NIFLA* "abrogated" *Pickup*.  *Id.* at 1068.  This citation, however, does not reflect or

22   consider the distinction between conduct and speech considered in *Pickup*.  Instead,

23   *Horseshoeing Sch.* rests on analysis of speech and found that "[t]here can be little question that

24

1   vocational training is speech protected by the First Amendment . . . and . . . 'an individual's right

2   to speak is implicated when information he or she possesses is subjected to "restraints on the way

3   in which the information might be used" or disseminated.'" *Id.* at 1069 (quoting *Sorrell v. IMS*

4   *Health Inc.*, 564 U.S. 552, 570 (2011)).

5         The Washington Conversion Law does not restrain the dissemination of information.  It

6   prohibits a licensed therapist from engaging in a specific type of conduct.  The holding from

7   *Pickup*, at least as it pertains to this case, was not overruled by *NIFLA*, and *Horeshoeing Sch.*

8   does not conclude otherwise.  Without "clearly inconsistent" higher precedent, the Court should

9   not depart from the Ninth Circuit's holding in *Pickup*.  *See Lair v. Bullock*, 697 F.3d 1200, 1206

10  (9th Cir. 2012); *Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003).  The Circuit well knows

11  how to clearly reverse a precedential opinion, and the citation in *Horseshoeing Sch.* did not do

12  that.

13        Furthermore, both the Ninth Circuit and the Supreme Court denied petitions by the

14  *Pickup* plaintiff to recall the court's decision in light of *NIFLA*.  *See Pickup v. Brown*, Case No.

15  12-17681, 2018 WL 11226270 (9th Cir. Nov. 6, 2018); *Pickup v. Newsom*, No. 18-1244, 2019

16  WL 1380186, *petition denied* May 20, 2019.  The Supreme Court also denied a similar petition

17  from the Third Circuit.  *King v. Murphy*, 139 S. Ct. 1567 (Apr. 15, 2019); *denying writ of*

18  *certiorari for King v. Gov. of the State of New Jersey*, 767 F.3d 216 (3rd Cir. 2014).  These

19  denials indicate that the "extraordinary circumstances" required to overturn precedent are not

20  present.  *See Pickup*, Case No. 12-17681, 2018 WL 11226270.

21        Therefore, as in *Pickup*, the Washington Conversion Law is subject to rational basis

22  review, it is rationally related to the State's asserted interest "in protecting the physical and

23  psychological well-being of minors, including lesbian, gay, bisexual, and transgender youth, and

24

1    in protecting its minors against exposure to serious harm caused by conversion therapy," and,

2    therefore, it does not unduly burden Plaintiff's First Amendment rights.  *See Pickup*, 740 F.3d at

3    1232.  The Conversion Law does not violate Plaintiff's First Amendment free speech rights.

4         **4.  DUE PROCESS**

5         Plaintiff asserts that the Conversion Law violates his Constitutional right to due process

6    because it is impermissibly vague.  Plaintiff argues that the line between identity exploration and

7    development, which is permitted, and seeking to change that person's gender identity or sexual

8    orientation, which is prohibited, is not clear.  Dkt. 2 at 24 – 25

9         The Ninth Circuit considered and rejected this argument in *Pickup*.  740 F.3d at 1233–34.

10   "A reasonable person would understand the statute to regulate only mental health treatment,

11   including psychotherapy, that aims to alter a minor patient's sexual orientation [or gender

12   identity]."  *Id*. at 1234.  The *Pickup* court also considered whether "sexual orientation" is a vague

13   term and found that it is not.  Similarly, Plaintiff argues that the terms "gender identity," "gender

14   expressions," "identity exploration," and "identity development" are vague.  Dkt. 2 at 25.

15        Ample definitions for these terms are available, including in the Washington Revised

16   Code.  *See* Wash. Rev. Code § 48.43.072(8)(a) ("'Gender expression'" means a person's gender-

17   related appearance and behavior, whether or not stereotypically associated with the person's

18   gender assigned at birth."); Wash. Rev. Code § 48.43.072(8)(b) ("'Gender identity' means a

19   person's internal sense of the person's own gender, regardless of the person's gender assigned at

20   birth."); *see also Exploration,* WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1983) ("the act

21   or an instance of exploring"); *Explore, id.* ("to investigate, study, or analyze"); *Development*, *id.*

22   ("the act, process, or result of developing").  Moreover, the Conversion Law "regulates licensed

23   mental health providers, who constitute a 'select group of persons having specialized

24

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR
A PRELIMINARY INJUNCTION - 15

1  knowledge,' [so] the standard for clarity is lower." *Id.* (quoting *United States v. Weitzenhoff*, 35

2  F.3d 1275, 1289 (9th Cir. 1993)).  These terms are not vague, and neither is the line between

3  permitted conduct, discussion and exploration of one's own identity, and prohibited conduct,

4  "seek[ing] to change an individual's sexual orientation or gender identity."  Wash. Rev. Code

5  18.130.020(4)(a).

6       Plaintiff also argues that the Conversion Law is impermissibly vague because the statute

7  permits "the attorney general, any prosecuting attorney . . . or any other person [to] maintain an

8  action . . . to enjoin the person from committing the violations."  Wash. Rev. Code 18.130.185.

9  Plaintiff argues that permitting "any other person" to bring an enforcement action "hands the

10  keys to the enforcement car to activists and ideologues."

11       This argument fails because Conversion Law gives clear notice of what activity Plaintiff

12  may and may not engage in.  He cannot claim that he would be subject to "arbitrary

13  enforcement" because he knows what activity puts him at risk of an enforcement action.  *See*

14  *United States v. Melgar-Diaz*, 2 F.4th 1263, 1269–70 (9th Cir. 2021).  It does not matter that he

15  does not have advance notice of who might bring that action.

16       **5.  FREE EXERCISE**

17       Plaintiff argues that the Conversion Law violates his right to "free exercise" of his right

18  to live his faith because the law has an "anti-religious target."  Dkts. 2 at 26 and 43 at 21–22.  In

19  *Welch v. Brown*, which was one of the consolidated cases the Ninth Circuit considered in *Pickup*,

20  the court considered and rejected a similar argument.  834 F.3d 1041, 1047–48 (9th Cir. 2016).

21  Plaintiff's free exercise claim should be dismissed for similar reasons.

22       "If the object of a law is to infringe upon or restrict practices because of their religious

23  motivation, the law is not neutral."  *Id.* at 1047 (quoting *Church of the Lukumi Babalu Aye, Inc.*

24

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR
A PRELIMINARY INJUNCTION - 16

*v. City of Hialeah*, 508 U.S. 520 (1993).  Like in *Welch*, however, the object of the Conversion

Law is not to infringe upon or restrict practices *because of* their religious motivation.  Its object

is to "protect[] the physical and psychological well-being of minors, including lesbian, gay,

bisexual, and transgender youth [by] protecting [] minors against exposure to serious harms

caused by conversion therapy."  2018 Wash. Sess. Laws, ch 300 §1.  The Conversion Law does

not, either in practice or intent, regulate the way in which Plaintiff or anyone else practices their

religion.  Instead, it "regulates conduct only *within the confines of the counselor-client

relationship*."  *Welch*, 834 F.3d at 1044.  Plaintiff is free to express and exercise his religious

beliefs; he is merely prohibited from engaging in a specific type of conduct while acting as a

counselor.

Plaintiff's final argument is that the "hybrid rights" exception applies to his free exercise

claim and requires a higher level of scrutiny than the Ninth Circuit applied in *Welch*.  It is not

clear that the hybrid rights exception "truly exists."  *Parents for Privacy v. Barr*, 949 F.3d 1210,

1236 (9th Cir. 2020).  Assuming it does exist, the doctrine would compel a higher level of

scrutiny for claims that implicate multiple constitutional rights, in this case free exercise and free

speech.  *See id.*  Because the Court already established that Plaintiff's claim does not implicate

free speech, the hybrid rights exception does not apply and does not undermine the holding from

*Welch*.

Accordingly, Plaintiff's free exercise claim fails as a matter of law.

### 6.  CONCLUSION

State Defendants' Motion to Dismiss should be granted for the foregoing reasons.

## B.  PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

Plaintiff's Motion for a Preliminary Injunction (Dkt. 2) should be denied as moot.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR
A PRELIMINARY INJUNCTION - 17

**C.  INTERVENOR DEFENDANTS' MOTION TO DISMISS**

Intervenor Defendants' Motion to Dismiss (Dkt. 26) should be denied as moot.

### III.   ORDER

Therefore, it is hereby **ORDERED** that:

- State Defendants' Motion to Dismiss (Dkt. 27) **IS GRANTED**;

- Plaintiff's Motion for Preliminary Injunction (Dkt. 2) **IS DENIED** as moot;

- Intervenor Defendants' Motion to Dismiss (Dkt. 26) **IS DENIED** as moot;

- This case **IS DISMISSED**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 30th day of August, 2021.

ROBERT J. BRYAN
United States District Judge

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION - 18