**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

| | |
|---|---|
| **BRIAN TINGLEY**,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>**NICHOLAS W. BROWN**, in his official capacity as Attorney General for the State of Washington; **DENNIS WORSHAM**, in his official capacity as Secretary of Health for the State of Washington; and **SHAWNA FOX**, in her official capacity as Assistant Secretary of the Health Systems Quality Assurance division of the Washington State Department of Health,<br><br>　　　　Defendants. | Case No. 3:21-cv-05359-RJB<br><br>**PLAINTIFF'S MOTION FOR RELIEF FROM JUDGMENT**<br><br>**NOTE FOR MOTION DATE:**<br>**June 17, 2026** |

Plaintiff's Mot. for Relief from J.
Case No. 3:21-cv-05359-RJB

i

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

# TABLE OF CONTENTS

Table of Authorities ................................................................................iii

Introduction................................................................................... 1

Background ................................................................................... 1

   A.    Tingley wants to counsel minors in ways that violate Washington's law.................................................................................. 1

   B.    The Ninth Circuit's decision in *Tingley* formed a key part of the circuit split that the Supreme Court has now resolved in Tingley's favor........ 3

   C.    After *Chiles*, Tingley wants to counsel contrary to Washington's law, but still cannot because of the final judgment against him. .................. 4

Argument..................................................................................... 5

I.   Tingley satisfies the six *Phelps* factors for relief under FRCP 60(b)(6)............ 5

   A.    *Chiles* directly contradicts the prior holding in this case on an unsettled legal question. .......................................................... 6

   B.    Tingley exhausted every available avenue for consideration of his claims. ............................................................................... 7

   C.    Relief from judgment does not harm reliance interests and would promote confidence in the judicial system. ........................................... 7

   D.    Tingley promptly seeks relief from judgment. ..................................... 8

   E.    *Chiles* controls the dispositive issue here.............................................. 8

   F.    No comity interests preclude relief...................................................... 11

II.   Justice favors relief from judgment.................................................................. 11

Conclusion ................................................................................... 13

Certificate of Service................................................................................ 15

Plaintiff's Mot. for Relief from J.
Case No. 3:21-cv-05359-RJB
    ii

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

# Table of Authorities

**Cases**

*Bynoe v. Baca,*
966 F.3d 972 (9th Cir. 2020) .............................................................................passim

*Catholic Charities of Jackson, Lenawee, & Hillsdale Counties. v. Whitmer,*
162 F.4th 686 (6th Cir. 2025) ................................................................. 10, 11

*Chiles v. Salazar,*
116 F.4th 1178 (10th Cir. 2024) ............................................................. 4, 9, 10

*Chiles v. Salazar,*
146 S.Ct. 1010 (2026) ..............................................................................passim

*Free Speech Coalition, Inc. v. Paxton,*
606 U.S. 461 (2025) ........................................................................................ 10

*Griswold v. Connecticut,*
381 U.S. 479 (1965) ........................................................................................ 13

*Henson v. Fidelity National Financial, Inc.,*
943 F.3d 434 (9th Cir. 2019) .................................................................passim

*Iancu v. Brunetti,*
588 U.S. 388 (2019) ........................................................................................ 10

*Jones v. Ryan,*
733 F.3d 825 (9th Cir. 2013) ........................................................................ 11

*King v. Governor of the State of New Jersey,*
767 F.3d 216 (3d Cir. 2014) ............................................................................ 6

*Liljeberg v. Health Services Acquisition Corp.,*
486 U.S. 847 (1988) ................................................................................. 12, 13

*Mitchum v. Foster,*
407 U.S. 225 (1972) ........................................................................................ 11

*Otto v. Boca Raton,*
981 F.3d 854 (11th Cir. 2020) .................................................................. 6, 10

*Phelps v. Alameida,*
569 F.3d 1120 (9th Cir. 2009) ...............................................................passim

Plaintiff's Mot. for Relief from J.
Case No. 3:21-cv-05359-RJB

iii

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

*Ratha v. Rubicon Resources,*
    168 F.4th 541 (2026) ............................................................................... 12

*Tingley v. Ferguson,*
    144 S.Ct. 33 (2023) .................................................................. 3, 4, 7, 10

*Tingley v. Ferguson,*
    47 F.4th 1055 (9th Cir. 2022) ....................................... 2, 6, 7, 9, 10

*Tingley v. Ferguson,*
    57 F.4th 1072 (9th Cir. 2023) ................................................... 2, 7

*United States v. Skrmetti,*
    605 U.S. 495 (2025) ............................................................................... 13


**Statutes**

42 U.S.C. § 1983 ..................................................................................... 11

Colo. Rev. Stat. 12–245–202(3.5) ..................................................... 9

RCW § 18.130.020 .............................................................................. 2, 9

RCW § 18.130.160 .................................................................................... 2


**Other Authorities**

*Chiles* Brief for Washington et al. Supporting Respondent, *Chiles v. Salazar,*
    No. 24–539 (U.S. Aug. 26, 2025) ..................................................... 10

Hilary Cass, *Independent Review of Gender Identity Services for Children and*
    *Young People: Final Report* 31 (2024) ............................................ 13

Kristina R. Olsen et al., *Gender Identity 5 Years After Social Transition,*
    150 Pediatrics e2021056082 (2022), perma.cc/ZLZ3-X3PW ........................... 13

Mandate, *Chiles v. Salazar,* No. 24–539 (U.S. May 4, 2026) ..................................... 8

Notice of Appeal, *Chiles v. Salazar,* No. 1:22-cv-02287-CNS-STV (D. Colo.
    Dec. 20, 2022) ........................................................................................ 4

Opening Brief of Appellant, *Chiles v. Salazar,* No. 22–1445 (10th Cir. Mar. 8,
    2023) ........................................................................................................ 9

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

Petition for Writ of Certiorari, *Chiles v. Salazar*, No. 24–539 (U.S. Nov. 8, 2024) ............................................................................................................ 4

Plaintiff's Mot. for Relief from J.
Case No. 3:21-cv-05359-RJB

v

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

## Introduction

In *Chiles v. Salazar*, the Supreme Court rejected the Ninth Circuit's decision in this case by an 8–1 vote. 146 S.Ct. 1010 (2026). The *Chiles* Court named *Tingley v. Ferguson* in its opinion, resolved the circuit split against the Ninth Circuit's *Tingley* decision, evaluated a Colorado law just like the one in *Tingley*, and adopted the very arguments Plaintiff Brian Tingley made in this case. Despite this legal vindication, the judgment here continues to bind Tingley, forcing him to self-censor and chill his speech. Tingley Supp. Decl. ¶ 13–14. The judgment, therefore, violates his constitutional rights and causes him ongoing, irreparable harm.

Enter Federal Rule of Civil Procedure 60(b)(6): a "grand reservoir of equitable power" allowing relief from judgment "to ensure that justice be done in light of all the facts." *Henson v. Fid. Nat'l Fin., Inc.*, 943 F.3d 434, 439–40 (9th Cir. 2019). In this case, justice means relieving Tingley from a legally incorrect judgment and allowing his case to proceed under *Chiles*. That's the only way to lift the burden on his protected speech and allow him to counsel his clients, as *Chiles* says he can.

In contrast, protecting Tingley prejudices no one. Washington's law discriminates based on viewpoint and thus "represents an egregious assault" on Tingley's "inalienable right to think and speak freely" when helping his clients achieve their goals. *Chiles*, 146 S.Ct. at 1029 (citation modified). Washington has no interest in seeing Tingly's rights violated. Justice and this circuit's Rule 60(b)(6) precedent justify relieving Tingley and allowing his case to proceed under a correct understanding of the law.

## Background

### A.    Tingley wants to counsel minors in ways that violate Washington's law.

Plaintiff Brian Tingley is a licensed Marriage and Family Therapist with 20 years' experience counseling clients. (Compl. ¶ 70, ECF No. 1; Tingley Decl. ¶ 3,

Plaintiff's Mot. for Relief from J.
Case No. 3:21-cv-05359-RJB

1

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

ECF No. 2–1, Tingley Supp. Decl. ¶1–2.) Tingley works with his clients to help them achieve the personal goals that they choose for themselves. (Compl. ¶ 79; Tingley Decl. ¶ 14; Tingley Supp. Decl. ¶ 4.) He counsels both adults and minors. (Tingley Supp. Decl. ¶ 3.) In all cases, his counseling consists of nothing but conversation: asking his clients questions, listening empathetically, and offering suggestions about how they can better understand themselves, their relationships, and their emotions. (Compl. ¶ 76; Tingley Decl. ¶ 13–14, 66; Tingley Supp. Decl. ¶ 4.) This allows clients to pursue the behavioral changes they desire and live the lives they want to live. (Tingley Decl. ¶ 14.)

Tingley's Christian faith informs his perspective. He never imposes his views on clients; rather, they come to him to work toward *their* chosen goals. (Compl. ¶ 27, 79–80; Tingley Decl. ¶ 9, 14–15; Tingley Supp. Decl. ¶ 4, 9.) Often, his clients choose to work with him because they share his Christian faith and desire a counselor who shares their worldview. (Compl. ¶ 71; Tingley Decl. ¶ 8; Tingley Supp. Decl. ¶ 9.)

As part of this worldview, Tingley and many of his clients believe that true flourishing comes from living consistently with who God created them to be, even more than pursuing their own feelings or desires. (Compl. ¶ 67–68, 127–130; Tingley Decl. ¶ 26–30, 32; Tingley Supp. Decl. ¶ 5–7.) This perspective holds in all facets of life, including issues of sex, gender, and sexuality. (Compl. ¶ 126–127, 129, 147; Tingley Decl. ¶ 23–24, 60.) Tingley's faith teaches that it is possible, by God's grace, to be transformed and to live consistently with God's commandments. (Compl. ¶ 127–129, 147; Tingley Decl. ¶ 31–32; Tingley Supp. Decl. ¶ 7.)

This worldview is often countercultural. Tingley's clients seek—and Tingley desires to provide—counseling consistent with those goals and beliefs. (Tingley Supp. Decl. ¶ 10–11, 13, 15; Tingley Supp. Decl. ¶ 10–12.)

But Washington makes Tingley's approach illegal when counseling minors. Washington's counseling ban prohibits conversations between a counselor and a

Plaintiff's Mot. for Relief from J.
Case No. 3:21-cv-05359-RJB

2

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

client under 18 if those conversations seek change related to "sexual orientation or gender identity," including "efforts to change behaviors or gender expressions, or to eliminate or reduce sexual or romantic attractions or feelings toward individuals of the same sex." RCW § 18.130.020. On the flip side, Washington expressly allows "counseling … that provide[s] acceptance, support, and understanding of clients or the facilitation of clients' coping, social support, and identity exploration and development that do[es] not seek to change sexual orientation or gender identity." *Id*. Violations of this law are severe, including fines up to $5,000 for each violation, suspension from practice, and even the loss of license and livelihood. RCW § 18.130.160.

**B.      The Ninth Circuit's decision in *Tingley* formed a key part of the circuit split that the Supreme Court has now resolved in Tingley's favor.**

In May 2021, Tingley challenged Washington's law on First and Fourteenth Amendment grounds because it restricted his ability to counsel minors to help them identify and act consistent with their faith on matters of gender identity and sexuality. Compl. ¶ 188–263. A few months later, the district court denied Tingley's preliminary-injunction motion and dismissed the case entirely with prejudice, holding that the challenged law satisfied rational-basis review. Order, ECF No. 47, at 14–15. Tingley appealed.

In September 2022, the Ninth Circuit affirmed, applying rational basis review. *Tingley v. Ferguson*, 47 F.4th 1055, 1079 (9th Cir. 2022). Tingley moved for rehearing en banc, which the Ninth Circuit denied with five judges dissenting. *Tingley*, 57 F.4th at 1073, 1082 (O'Scannlain, J., dissenting from the denial of rehearing en banc; Bumatay, J., dissenting from the denial of rehearing en banc).

Tingley then petitioned for certiorari, which the Supreme Court denied in December 2023, with Justices Thomas and Alito publishing dissents and Justice

Plaintiff's Mot. for Relief from J.
Case No. 3:21-cv-05359-RJB

3

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

Kavanaugh noting that he would grant the petition. *Tingley v. Ferguson*, 144 S.Ct. 33, 35 (2023) (Thomas, J., dissenting from the denial of certiorari; Alito, J., dissenting from the denial of certiorari). Justice Thomas's dissent expressed "no doubt" that the constitutionality of so-called conversion therapy bans would "come before the Court again." *Id.* at 35. And Justice Alito's dissent noted a "conflict in the Circuits" on the issue. *Id.*

Meanwhile, *Chiles v. Salazar*—a case challenging a nearly identical counseling law in Colorado—had been on appeal at the Tenth Circuit for nearly a year. Notice of Appeal, *Chiles v. Salazar*, No. 1:22-cv-02287-CNS-STV (D. Colo. Dec. 20, 2022), ECF No. 56. The Tenth Circuit ruled against the plaintiff in *Chiles*, mirroring and citing the Ninth Circuit's *Tingley* decision. *Chiles v. Salazar*, 116 F.4th 1178 (10th Cir. 2024).  Chiles then petitioned the Supreme Court for certiorari, which the Court granted in March 2025, setting the case for argument in the October 2025 term. Pet. for Writ of Cert., *Chiles v. Salazar*, No. 24–539 (U.S. Nov. 8, 2024); 145 S.Ct. 1328 (2025) (granting petition). On March 31, 2026, the Supreme Court ruled for Chiles—adopting the same reasoning that Tingley had advocated in this case. *Chiles*, 146 S.Ct. 1010.  The Supreme Court held that counseling conversations are protected speech and that laws like Colorado's censor that speech based on viewpoint. *Chiles,* 146 S.Ct. at 1029. The *Chiles* decision cited this case three times, wrapping up the 8–1 majority opinion with a quote from Justice Thomas's dissent from denial of certiorari in this case. *Chiles*, 146 S.Ct. at 1019–20, 1029.

**C.**      **After *Chiles*, Tingley wants to counsel contrary to Washington's law, but still cannot because of the final judgment against him.**

Since this Court entered judgment against Tingley, he's been actively chilling and self-censoring his speech in two distinct ways. (Tingley Supp. Decl. ¶ 28–29, 33, 40–44.) *First*, he's turned down prospective minor clients who want counseling that

Plaintiff's Mot. for Relief from J.
Case No. 3:21-cv-05359-RJB                          4

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

Washington prohibits: counseling directed at achieving the client's goal of avoiding same-sex behavior or developing comfort with their sex. (Tingley Supp. Decl. ¶ 23.) He's done this on at least six occasions, and he will continue to turn down counseling requests that put him at undue risk of violating the law. (Tingley Supp. Decl. ¶ 23.) *Second*, he's avoided saying on his website that he offers counseling for young people on gender and sexuality issues consistent with his Biblical worldview. (Tingley Supp. Decl. ¶ 36–40.) But he would like to. (Tingley Supp. Decl. ¶ 38–39.) The only reason he is not posting that statement or counseling on forbidden view-points is the judgment entered against him. (Tingley Supp. Decl. ¶ 40.)

## Argument

Under Federal Rule of Civil Procedure 60(b)(6), courts may relieve a party from final judgment for "any other reason that justifies relief." Tingley deserves relief under this catchall provision because of the intervening Supreme Court decision in *Chiles*. In a change-of-law situation like this, the Ninth Circuit considers six non-exclusive factors that balance how squarely the legal change affects the judgment against any applicable finality interests. *Henson*, 943 F.3d at 446; *Phelps v. Alameida*, 569 F.3d 1120, 1132–33 (9th Cir. 2009). The Court also looks at the totality of the circumstances and whether granting the motion promotes justice. *Henson*, 943 F.3d at 440, 446. Tingley here (I) satisfies the six *Phelps* factors and (II) justice overwhelmingly favors undoing the judgment against him.

**I.    Tingley satisfies the six *Phelps* factors for relief under FRCP 60(b)(6).**

Courts considers six non-exclusive factors "flexibly and in their totality" to evaluate a Rule 60(b)(6) request: "(1) the nature of the legal change…; (2) whether the movant exercised diligence…; (3) the parties' reliance interests in the finality of the judgment; (4) the delay between the finality of the judgment and the Rule 60(b)(6) motion; (5) the relationship between the change in law and the challenged judgment; and (6) whether there are concerns of comity that would be disturbed by

Plaintiff's Mot. for Relief from J.
Case No. 3:21-cv-05359-RJB                    5

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

reopening a case." *Bynoe v. Baca*, 966 F.3d 972, 983 (9th Cir. 2020). Tingley satisfies each factor.

## A.    *Chiles* directly contradicts the prior holding in this case on an unsettled legal question.

*Chiles* resolved the core legal questions here—whether the First Amendment protects counseling conversations and whether laws like Washington's discriminate based on viewpoint. *Chiles*, 146 S.Ct. at 1029. These issues were unsettled at the time of the Ninth Circuit's decision in this case. Indeed, there was a circuit split. *Compare Otto v. Boca Raton*, 981 F.3d 854 (11th Cir. 2020), *with King v. Governor of the State of New Jersey*, 767 F.3d 216 (3d Cir. 2014), *and Tingley*, 47 F.4th 1055, *both abrogated by Chiles*, 146 S.Ct. 1010; *see also Tingley v. Ferguson*, 144 S.Ct. 33, 35–36 (2023) (Justice Alito's dissent from denial of certiorari noting that "the Ninth Circuit's holding is based on the highly debatable view that its prior decision in *Pickup v. Brown* survived at least in part our decision in *National Institute of Family and Life Advocates v. Becerra*….")(citations omitted).

The first *Phelps* factor analyzes the nature of the legal claim, with changes to unsettled law favoring the movant. 943 F.3d at 446. In *Phelps*, the petitioner sought relief from judgment after 11 years of unsuccessfully trying to have his claims heard on the merits only to have the court side with him on the legal analysis "regarding the core disputed issue in [his] case . . . fifteen months after his appeal became final[.]" 569 F.3d at 1136. The court emphasized that later judgment's adoption of the petitioner's argument and found that the intervening decision's resolution of an unsettled issue favored granting relief from judgment. *Id.*

So too here. The *Chiles* court adopted the approach Tingley advocated—that counseling conversations are protected by the First Amendment, and that laws like Washington's discriminate based on viewpoint when applied to speech like his. Pl.'s Br. Supp. Mot. Prelim. Inj. 7–12, ECF No. 2. Indeed, *Chiles* flatly rejected the

Plaintiff's Mot. for Relief from J.
Case No. 3:21-cv-05359-RJB                    6

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

argument that counseling speech is unprotected conduct. *Chiles*, 146 S.Ct. at 1023. Because *Chiles* resolved the unsettled issues at the heart of this case, the first *Phelps* factor strongly favors relief from judgment. *See Phelps*, 569 F.3d at 1130–32.

**B.    Tingley exhausted every available avenue for consideration of his claims.**

For the second *Phelps* factor, courts evaluate whether the movant diligently pursued relief in his first case. *Bynoe*, 966 F.3d at 983. And Tingley did. He appealed the final judgment against him, lost at the Ninth Circuit, sought en banc review, and petitioned the Supreme Court for certiorari. *Tingley v. Ferguson*, 47 F.4th 1055 (9th Cir. 2022), *reh'g en banc denied*, 57 F.4th 1072 (9th Cir. 2023), *cert. denied*, 144 S.Ct. 33 (2023). Tingley could hardly do more. In fact, the movants in *Phelps* did roughly the same thing in a similar situation. 569 F.3d at 1136–37. The court deemed this a "sterling example of diligence" that set the second factor "strongly in his favor." *Id.* at 1137. Tingley acted with similar diligence.

**C.    Relief from judgment does not harm reliance interests and would promote confidence in the judicial system.**

For the third factor, courts evaluate "the extent of the parties' reliance interests on the judgment." *Bynoe,* 966 F.3d at 985. The mere "abstract interest in finality" does not preclude relief from judgment. *See id.* at 985–87 (internal quotation marks omitted).

Here, Washington has no legitimate reliance interest in violating Tingley's rights now that the Supreme Court has clarified how the First Amendment applies to its counseling law. Nor does anything else about this case create a reliance interest. After all, Tingley brought a pre-enforcement challenge. So traditional reliance issues do not come into play: the prior judgment did not involve any payment that must be undone, nor must Washington undo any action with respect to third parties. The judgment's primary effect falls on Tingley and his potential

Plaintiff's Mot. for Relief from J.
Case No. 3:21-cv-05359-RJB

7

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

clients who seek his counseling, many of whom desperately want help pursuing the goals that Washington's law forbids. Because the state has no cognizable reliance interests in continuing to suppress Tingley's free-speech rights, this factor favors relief.

**D.      Tingley promptly seeks relief from judgment.**

For the fourth factor, courts evaluate whether the movant acted quickly after the change in law. And here, Tingley's motion comes soon after the *Chiles* decision. *Bynoe*, 966 F.3d at 986 (finding that "delay" between the final judgment and 60(b)(6) motion "can be offset by a petitioner's diligence" in seeking reconsideration.) In fact, Tingley filed this motion within weeks of the Supreme Court issuing its mandate. *See* Mandate, *Chiles v. Salazar*, No. 24–539 (U.S. May 4, 2026). That timeline easily satisfies the requirement that "individuals seeking to have a new legal rule applied to their otherwise final case should petition the court for reconsideration with a degree of promptness." *Bynoe*, 966 F.3d at 986. To be sure, this motion comes nearly three years after final judgment. But that is of little moment since the effect of the judgment was to lock in the status quo—Mr. Tingley self-censoring and chilling his speech—rather than to alter the parties' positions. Now the Supreme Court has clarified that this result violates the First Amendment; no one is prejudiced by re-opening this case to do justice.

**E.      *Chiles* controls the dispositive issue here.**

For the fifth *Phelps* factor, courts consider whether the "original and intervening decisions at issue" are linked. *Henson*, 943 F.3d at 452. When the link is close, "the court will be more likely" to grant the 60(b)(6) motion. *Id.* (brackets omitted). Courts also consider whether the intervening change in law is "dispositive," though it need not necessarily "require a different outcome." *Bynoe*, 966 F.3d at 986. When a later "decision definitively resolve[s] a preexisting conflict in the law," this "weigh[s] in favor of granting relief under Rule 60(b)(6)." *Phelps*,

Plaintiff's Mot. for Relief from J.
Case No. 3:21-cv-05359-RJB                                    8

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

569 F.3d at 1139.

Here, Tingley checks all those boxes. This case and *Chiles* involve nearly identical statutes, nearly identical plaintiffs, nearly identical speech, and nearly identical claims and legal arguments. Both cases were brought by licensed counselors who seek to engage in voluntary, speech-only counseling with clients under 18 desiring to pursue government-forbidden goals.

The statutes are functionally equivalent. Washington's law prohibits counseling that "seeks to change an individual's sexual orientation or gender identity," including "efforts to change behaviors or gender expressions, or to eliminate or reduce sexual or romantic attractions or feelings toward individuals of the same sex," while allowing "counseling or psychotherapies that provide acceptance, support, and understanding of clients or the facilitation of clients' coping, social support, and identity exploration and development." RCW 18.130.020(4) (a)–(b). Likewise, Colorado's law bans "any practice or treatment … that attempts or purports to change an individual's sexual orientation or gender identity, including efforts to change behaviors or gender expressions or to eliminate or reduce sexual or romantic attraction or feelings toward individuals of the same sex," but it permits "practices or treatments that provide: (I) Acceptance, support, and understanding for the facilitation of an individual's coping, social support, and identity exploration and development." Colo. Rev. Stat. § 12-245-2023.5 (a)–(b).

Both plaintiffs made similar First Amendment arguments. *Compare* Opening Br. of Appellant at 16–34 (arguing that Washington's law restricts protected speech based on viewpoint), ECF No. 9, *with* Opening Br. of Appellant at 15–31, *Chiles*, No. 22–1445, ECF No. 010110823587 (10th Cir. Mar. 8, 2023) (arguing that Colorado's law does the same).

And both appellate courts upheld the challenged statutes under the same rational-basis reasoning. *Tingley*, 47 F.4th at 1078–1080; *Chiles v. Salazar*, 116

Plaintiff's Mot. for Relief from J.
Case No. 3:21-cv-05359-RJB                    9

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

F.4th 1178, 1214–15(10th Cir. 2024) (quoting *Tingley*, 47 F.4th at 1077, 1082–83) ("we join the Ninth Circuit in concluding a 'law[ ] prohibiting licensed therapists from practicing conversion therapies on minors .... is a regulation on conduct that incidentally [involves] speech.'")

When the Supreme Court denied certiorari in this case, *Chiles* had already been appealed to the Tenth Circuit. And the dissent from certiorari in this case expressly recognized that this issue would again come before the Supreme Court and exhorted the Court to decide it then. *Tingley*, 144 S.Ct. 33 (Thomas, J., dissenting from denial of certiorari). The Court did so in *Chiles*.

Further, the *Chiles* opinion itself cites the Ninth Circuit opinion in this case twice and even quotes the dissent from the denial of certiorari. *Chiles*, 146 S.Ct. at 1019–20, 1029. And Washington state characterizes the Colorado law as "materially similar" to its own in an amicus brief it filed alongside other states in *Chiles* Br. for Washington et al. Supp. Resp't, *Chiles v. Salazar*, No. 24–539, at 16 (U.S. Aug. 26, 2025).

And while Tingley need not prove that *Chiles* resolves this case in his favor, *Bynoe*, 966 F.3d at 986, it did. The Supreme Court held that the nearly identical law at issue there "censors speech based on viewpoint … an egregious assault" on the "inalienable right to think and speak freely[.]" *Chiles*, 146 S.Ct. at 1029 (cleaned up). Often, statutes that discriminate based on viewpoint are per se violations of the First Amendment. *Iancu v. Brunetti*, 588 U.S. 388, 393–99 (2019) (finding a viewpoint-based law unconstitutional without additional scrutiny). At a minimum, such laws must pass strict scrutiny. This "unforgiving" standard presents a formidable hurdle that is almost universally "fatal," and this case should be no exception. *Free Speech Coal., Inc. v. Paxton*, 606 U.S. 461, 484–85 (2025). Indeed, the only two times appellate courts applied strict scrutiny against laws like Washington's the laws failed. *Otto v. Boca Raton*, 981 F.3d at 868–70; *Cath.*

Plaintiff's Mot. for Relief from J.
Case No. 3:21-cv-05359-RJB

10

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

*Charities of Jackson, Lenawee, & Hillsdale Ctys. v. Whitmer*, 162 F.4th 686, 696 (6th Cir. 2025).

### F.    No comity interests preclude relief.

For the final *Phelps* factor, courts consider whether comity interests should preclude relief from the judgment. *Henson*, 943 F.3d at 453. For example, in *Jones v. Ryan*, the court held that comity concerns "weigh[ed] strongly" against a federal habeas petitioner who had been convicted by a state court when relief from judgment would upset the ruling on his habeas petition, which had been fully considered and denied on the merits, and would risk upending the state court's judgment against him. 733 F.3d 825, 840 (9th Cir. 2013).

But no interest like that arises here. This case has been in federal—not state—court from the outset, and Tingley has no prior state-court judgment at stake. So traditional comity concerns do not apply. As in *Henson*, "considerations of comity between the independently sovereign state and federal judiciaries … do not apply here at all, because this case does not involve a federal habeas petition that challenges a state conviction." *Henson*, 943 F.3d at 453 (cleaned up). To the contrary, First Amendment challenges to state laws like this one are brought under 42 U.S.C. § 1983. Such lawsuits simply do not raise comity concerns. *See Mitchum v. Foster*, 407 U.S. 225, 242 (1972) ("The very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law….") (internal quotation marks omitted). So this factor supports Tingley.

## II.    Justice favors relief from judgment.

Beyond the six *Phelps* factors, the Ninth Circuit also considers overall context and the interests of justice. *Bynoe*, 966 F.3d at 983. These considerations include whether there was a "relevant alteration to constitutional rights, "the injustice borne by the petitioner absent a re-opening of the judgment," and "whether the

Plaintiff's Mot. for Relief from J.
Case No. 3:21-cv-05359-RJB                    11

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

change in law resolved an unsettled legal question." *Id.* at 983–84.

Each of these factors also favors Tingley. Tingley's case deals with his constitutional rights (First and Fourteenth Amendment rights); he will suffer grave injustice if the judgment remains (the loss of his constitutional rights going forward); his prospective clients with state-forbidden goals are also suffering because they cannot access the helpful counseling they seek; and the law was unsettled at the time of the lower court's decision (see supra § I.A).

Past cases support Tingley's request for relief here. In *Ratha v. Rubicon Resources*, the plaintiffs lost because the court ruled that the statute did not allow private actions for plaintiffs' claims. 168 F.4th 541, 548–49 (2026). Fifteen days later, Congress amended that statute to expressly allow private actions for the conduct plaintiffs had alleged, thereby resolving a circuit split. *Id.* at 549, 555. The Ninth Circuit found that this change in law favored relief from judgment as it clearly indicated the proper interpretation of the law, which had been unclear before. *Id.* at 562. And in *Phelps*, the court emphasized that "the legal arguments that Phelps put forward … were rejected by the judges before whom he appeared, only to be fully embraced within a matter of months by judges authoring a more authoritative, controlling opinion in a different case." *Phelps*, 569 F.3d at 1123. In both situations, a plaintiff lost his case, and then a higher authority rejected the legal predicate and analysis of those decisions, effectively overruling them. So too here. The Supreme Court resolved a circuit split on First Amendment protections for counselor speech, effectively overturning the Ninth Circuit's decision in this case.

Basic justice also favors Tingley. Courts' "grand reservoir of equitable power" under 60(b)(6), *Henson*, 943 F.3d at 439–40, allows them to "vacate judgments whenever such action is appropriate to accomplish justice," provided the element of "extraordinary circumstances" is satisfied. *Liljeberg v. Health Servs. Acquisition*

Plaintiff's Mot. for Relief from J.
Case No. 3:21-cv-05359-RJB

12

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

*Corp.*, 486 U.S. 847, 863–64 (1988) (cleaned up). On this ledger, justice supports protecting constitutional rights, not violating them. And under *Chiles*, laws like Washington's—when applied to Tingley's speech—discriminate based on viewpoint and squarely "conflict[] with core First Amendment principles." *Chiles v. Salazar*, 146 S.Ct. 1010, 1029 (2026) (Kagan, concurring). Tingley, however, is subject to a judgment that is inconsistent with *Chiles* and that chills his speech.

The interests of justice go beyond just Tingley. Tingley has clients who want to receive his counseling (Tingley Supp. Decl. ¶ 45). Not only do these individuals have their own First Amendment rights to receive information *Griswold v. Connecticut*, 381 U.S. 479, 482 (1965), but they know best what counseling they need. And science backs up their intuition. As young people continue to struggle with gender confusion, more evidence indicates that pushing kids to identify as the opposite sex puts them on the path to medical interventions with unknown risks and serious known consequences, including sterilization. Kristina R. Olsen et al., *Gender Identity 5 Years After Social Transition*, 150 Pediatrics e2021056082 (2022), perma.cc/ZLZ3-X3PW; HHS Report at 89; Hilary Cass, *Independent Review of Gender Identity Services for Children and Young People: Final Report* 31 (2024); *United States v. Skrmetti*, 605 U.S. 495, 522 (2025). Now more than ever, young people who want to grow comfortable with their bodies and realign their identity with their sex need counselors like Tingley who will walk with them to achieve their goals. Justice dictates that Tingley's clients be able to receive the counseling they want. Removing the judgment against Tingley ensures they can.

## Conclusion

For the foregoing reasons, Plaintiff Brian Tingley respectfully requests that this Court grant his motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b)(6).

Plaintiff's Mot. for Relief from J.
Case No. 3:21-cv-05359-RJB

13

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

Respectfully submitted this 27th day of May, 2026.

By:  s/ *Katherine L. Anderson*

Katherine L. Anderson
(WA Bar No. 41707)
**Alliance Defending Freedom**
15100 N. 90th Street
Scottsdale, AZ 85260
480-444-00204 (T)
480-444-0028 (F)
kanderson@ADFlegal.org

Jonathan A. Scruggs** (AZ Bar No. 030505)
Roger G. Brooks* (NC Bar No. 16317)
Henry W. Frampton, IV** (SC Bar No. 75314)
**Alliance Defending Freedom**
15100 N. 90th Street
Scottsdale, AZ 85260
480-444-0020 (T)
480-444-0028 (F)
jscruggs@ADFlegal.org
rbrooks@ADFlegal.org
hframpton@ADFlegal.org

James A. Campbell** (VA Bar No. 100090)
**Alliance Defending Freedom**
44180 Riverside Pkwy.
Lansdowne, VA 20176
(571) 707-4655 (T)
jcampbell@ADFlegal.org

Suzanne E. Beecher* (CA Bar No. 329586)
**Alliance Defending Freedom**
440 First Street NW
Washington, D.C. 20001
(202) 644-9010 (T)
sbeecher@ADFlegal.org

*Admitted *Pro Hac Vice*
***Pro Hac Vice* applications filed concurrently

*Attorneys for Plaintiff*

**Certification**

I certify that this memorandum contains 4,181 words, in compliance with the Local Civil Rules.

Plaintiff's Mot. for Relief from J.
Case No. 3:21-cv-05359-RJB

14

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

**Certificate of Service**

I hereby certify that on May 27, 2026, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record who are registered users of the ECF system.

DATED: May 27, 2026

s/ *Katherine L. Anderson*

Katherine L. Anderson (WA Bar No. 41707)
**Alliance Defending Freedom**
15100 N. 90th Street
Scottsdale, AZ 85260
480-444-0020 (T)
480-444-0028 (F)
kanderson@ADFlegal.org

*Attorney for Plaintiff*

Plaintiff's Mot. for Relief from J.
Case No. 3:21-cv-05359-RJB

15

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020